## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### Fort Lauderdale Division

### CASE NO. 06-60873-CIV-COHN

**UNION PACIFIC RAILROAD COMPANY,**

> **Plaintiff,**

**v.**

**PARAGON LABORATORIES, INC., et al.**

> **Defendants.**



---

### UNION PACIFIC RAILROAD COMPANY'S AMENDED COMPLAINT AS TO DEFENDANTS GROUP CHEMICAL LIMITED, INC., DAVID J. ROSSNER a/k/a DAVID ROSSNER, GOLDSTAR PRODUCTS, INC., T.D.R.S. PROPERTIES, INC., SAFETY & HEALTH MUNICIPAL SUPPLIES, INC., SACHEM SAFETY PRODUCTS, INC., MICHAEL S. SHEEHAN, MARK ZIMMERMAN, INDUSTRIAL CHEM ENTERPRISE, INC., RON CAMILLO CORP. AND RON CAMILLO

---

No responsive pleadings having been filed by Defendants Group Chemical Limited, Inc., David J. Rossner a/k/a David Rossner, Goldstar Products, Inc., T.D.R.S. Properties, Inc., Safety & Health Municipal Supplies, Inc., Sachem Safety Products, Inc., Michael S. Sheehan, Mark Zimmerman, Industrial Chem Enterprise, Inc., Ron Camillo Corp. and Ron Camillo, Plaintiff, UNION PACIFIC RAILROAD COMPANY ("UNION PACIFIC") by and through its undersigned attorneys, hereby amends its Complaint as a matter of course pursuant to Rule 15(a), Federal Rules Civil Procedure, and  sues Defendants, Group Chemical Limited, Inc., David J. Rossner a/k/a David Rossner, Goldstar Products, Inc., T.D.R.S. Properties, Inc., Safety & Health Municipal Supplies, Inc., Sachem Safety

CASE NO. 06-60873-CIV-COHN

Products, Inc., Michael S. Sheehan, Mark Zimmerman, Industrial Chem Enterprise, Inc., Ron Camillo Corp. and Ron Camillo, and alleges as follows:

## JURISDICTION AND VENUE

1.      Plaintiff UNION PACIFIC is a foreign corporation with its principal place of business in Omaha, Nebraska.

2.      Defendant Paragon Laboratories, Inc. is or was a Florida corporation at all times material hereto, which upon information and belief was also known to have done business as Paragon Laboratories, Santa Fe Chemical Co. and Suncoast Chemical Company, with its principal place of business located within the Southern District of Florida.

3.      Defendant Group Chemical Limited, Inc. is or was a Florida corporation at all times material hereto, which upon information and belief was also known to have done business as Group Chemical, Santa Fe Chemical Co. and Suncoast Chemical Company, with its principal place of business located within the Southern District of Florida.

4.      Defendant Group Chemical Supply, Inc. is or was a Florida corporation at all times material hereto, with its principal place of business located within the Southern District of Florida.

5.      Defendant David J. Rossner a/k/a David J. Rossner is or was a Florida resident at all times material hereto.

6.      Defendant Goldstar Products, Inc. is or was a Florida corporation at all times material hereto, which upon information and belief was also known to have done business

as Goldstar Products and Liberty Industries, with its principal place of business located within the Southern District of Florida.

7.      Defendant T.D.R.S. Properties, Inc. is or was a Florida corporation at all times material hereto, with its principal place of business located within the Southern District of Florida.

8.      Defendant Safety & Health Municipal Supplies, Inc. is or was a Florida corporation at all times material hereto, with its principal place of business located within the Southern District of Florida.

9.      Defendant Sachem Safety Products, Inc. is or was a Florida corporation at all times material hereto, with its principal place of business located within the Southern District of Florida.

10.     Defendant Michael A. Sheehan is or was a Florida resident at all times material hereto.

11.     Defendant Granite Industries, Inc. is or was a Florida corporation at all times material hereto, with its principal place of business located within the Southern District of Florida.

12.     Defendant Cyn-Lex, Inc. is or was a Florida corporation at all times material hereto, with its principal place of business located within the Southern District of Florida.

13.     Defendant Cynthia Gentner is or was a Florida resident at all times material hereto.

CASE NO. 06-60873-CIV-COHN

14.     Defendant University Research, Inc. is or was a Florida corporation at all times material hereto, with its principal place of business located within the Southern District of Florida.

15.     Defendant Industrial Chem Enterprise, Inc. is or was a Florida corporation at all times material hereto, with its principal place of business located within the Southern District of Florida.

16.     Defendant Boris Vaysman is or was a Florida resident at all times material hereto.

17.     Defendant Mark Zimmerman is or was a Florida resident at all times material hereto.

18.     Defendant Frank Grieco is or was a Florida resident at all times material hereto.

19.     Defendant Suntrust Chemical Corp. is or was a Florida corporation at all times material hereto, with its principal place of business located within the Southern District of Florida.

20.     Defendant K.A.P.S. Chemicals, Inc. is or was a Florida corporation at all times material hereto, which upon information and belief was also known to have done business as Suntrust Chemical Corp., with its principal place of business located within the Southern District of Florida.

21.     Defendant Keith Paddyfoote is or was a Florida resident at all times material hereto.

22.     Defendant Selectra Labs, Inc. is or was a Florida corporation at all times material hereto, with its principal place of business located within the Southern District of Florida.

23.     Defendant Nicoy Bomar is or was a Florida resident at all times material hereto.

24.     Defendant Judy R. Lewis is or was a Florida resident at all times material hereto.

25.     Defendant Prudential Chemical, Inc. is or was a Florida corporation at all times material hereto, which upon information and belief was also known to have done business as Chemical Group, with its principal place of business located within the Southern District of Florida.

26.     Defendant Ira Goldberg is or was a Florida resident at all times material hereto.

27.     Defendant Ron Camillo Corp. is or was a Florida corporation at all times material hereto, which upon information and belief was also known to have done business as Enviro Chemical Research, with its principal place of business located within the Southern District of Florida.

28.     Defendant Ron Camillo is or was a Florida resident at all times material hereto, who upon information and belief was also known to have done business as Enviro Chemical Research.

29.   Defendant A-Jem Industries, Inc. Is or was a Florida corporation at all times material hereto, with its principal place of business located within the Southern District of Florida.

30.   Defendant Mark Anthony Cantrell is or was a Florida resident at all times material hereto.

31.   This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in that this action arises under the laws of the United States.

32.   Venue is proper in the Southern District of Florida, in that a substantial part of the events and omissions giving rise to this action occurred in this District.  28 U.S.C. §1391.

33.   This Court has supplemental jurisdiction over the several claims asserted herein which arise under the laws of the State of Florida, pursuant to 28 U.S.C. § 1367.

**GENERAL ALLEGATIONS COMMON TO ALL DEFENDANTS**

34.   Between 1998 and the present Defendants operated, and upon information and belief continue to operate, telemarketing businesses in which they sell cleaning products, lubricants and chemical products.

35.   UNION PACIFIC operates a railroad and maintains a purchasing department with employees stationed in several states in order to properly maintain and service its nationwide railroad network. As part of its maintenance and service work, UNION PACIFIC purchases cleaning products, lubricants, and chemical products in the ordinary course of business.

36.    Defendants' telemarketers contacted UNION PACIFIC and pitched themselves as approved suppliers to UNION PACIFIC's employees in order to confirm UNION PACIFIC's shipment addresses.

37.    In some instances, Defendants' telemarketers attempted to obtain a purchase order or requisition number from a UNION PACIFIC employee by means of deception or trickery by stating that another UNION PACIFIC employee had given approval for the purchase.

38.    In some instances, Defendants' telemarketers told unsuspecting UNION PACIFIC employees that a given shipment was a promotional shipment, promotional gift, or free gift for trying products, and offered such gifts as Sears gift cards, televisions, VCRs, jackets and paperweights.

39.    In some instances, Defendants' telemarketers stated that they were offering products at introductory prices, close to cost, or prices that were "too good to be true".

40.    In some instances, Defendants' telemarketers used a distress sales pitch such as "we have to close the business", while having regular prices that may be as much as ten times the normal market price.

41.    In some instances, Defendants' telemarketers used a high pressure sales pitch such as "you must order now before prices go up."

42.    Defendants' telemarketers tape recorded various UNION PACIFIC purchasing agents' acceptance of various shipments in order for Defendants to claim that

they had valid oral contracts to bill UNION PACIFIC and to ship products that were never ordered.

43.     Following Defendants' telemarketer's calls, Defendants typically forward an invoice and a demand for payment for products that were never ordered by UNION PACIFIC.  Even if UNION PACIFIC did not place an order with Defendants, Defendants shipped large quantities of expensive supplies accompanied by billing invoices warning that any legal action for nonpayment would be brought in Florida.

44.     Defendants charged excessive freight for its shipments.

45.     Defendants charged excessive restocking fees for returns by UNION PACIFIC.

46.     In some instances, Defendants billed the charges to UNION PACIFIC credit cards without authorization and failed to deliver goods that were being charged to UNION PACIFIC credit cards.

47.     In some instances, Defendants billed the charges to UNION PACIFIC without actually delivering the goods that were being billed to UNION PACIFIC.

48.     When UNION PACIFIC disputed bills, it was given a choice of either paying a reduced invoice price on unordered merchandise or returning the merchandise and paying a substantial restocking fee.

49.     At all times material, Defendants wrongfully utilized telemarketing tactics to coerce UNION PACIFIC to pay for expensive products it did not want or order.

CASE NO. 06-60873-CIV-COHN

50.     At all times material, Defendants misrepresented or failed to clearly disclose all relevant information regarding the cost of the goods, the restrictions and conditions on the purchase of those items, and its cancellation policy details.

51.     At all times material, Defendants have engaged in fraudulent and/or deceptive trade practices in its course of dealings with UNION PACIFIC.

## COUNT 1
## BREACH OF IMPLIED IN LAW CONTRACT (UNJUST ENRICHMENT) AGAINST PARAGON LABORATORIES, INC.

52.     UNION PACIFIC repeats and realleges paragraphs 1, 2, 5, and 31 through 51 hereof as if fully set forth herein.

53.     At all times material, David J. Rossner was or is a principal and/or officer in Defendant Paragon Laboratories, Inc., and directed and was responsible for the telemarketing and other practices employed by Paragon Laboratories, Inc.

54.     UNION PACIFIC has conferred a series of benefits, in the form of financial windfalls and monies advanced for non-delivered goods, overcharged goods, excessive restocking charges for unordered goods that were returned, and other benefits and/or consideration on Paragon Laboratories, Inc. ("Paragon").  Paragon is aware of the financial windfalls and benefits so conferred by UNION PACIFIC and has retained them.

55.     Paragon has damaged UNION PACIFIC in that it has wrongfully accepted and retained the windfalls and benefits conferred by UNION PACIFIC and has wrongfully failed to pay or reimburse those benefits back to UNION PACIFIC.

CASE NO. 06-60873-CIV-COHN

56.     Under the circumstances, it would be inequitable and unjust for Paragon to retain the benefits conferred by UNION PACIFIC upon them, and Paragon should be disgorged of any and all such unearned, undeserved and unwarranted benefits.

**WHEREFORE**, UNION PACIFIC demands judgment against Paragon Laboratories, Inc. for damages in an amount to be proven at trial, plus interest, costs and any and all such other and further relief as this Court deems just and proper.

## COUNT 2
### FRAUDULENT MISREPRESENTATION OF SALES TRANSACTIONS WITH THE INTENT TO DECEIVE AND DEFRAUD AGAINST PARAGON LABORATORIES, INC.

57.     UNION PACIFIC repeats and realleges paragraphs 1, 2, 5, and 31 through 51 hereof as if fully set forth herein.

58.     At all times material, David J. Rossner was or is a principal and/or officer in Defendant Paragon and directed and was responsible for the telemarketing and other practices employed by Paragon.

59.     At all times material, Paragon's telemarketers, conversed with UNION PACIFIC employees for the purpose of informing  and persuading UNION PACIFIC to purchase chemical products, cleaning products and lubricants.

60.     Paragon made such statements and representations either knowing them to be false, or with a reckless disregard as to whether they were true or false.

61.     Paragon made such statements and representations with the intention that UNION PACIFIC rely on them to its detriment.

CASE NO. 06-60873-CIV-COHN

62.     At all times material, as a direct and proximate result of Paragon's false statements, UNION PACIFIC has incurred unauthorized credit card charges for unordered and undelivered goods, excessive charges for unordered goods, overcharges for unordered goods, overcharges, excessive freight charges for shipments, and excessive restocking fees.

63.     As a direct and proximate result of all Paragon's false statements, UNION PACIFIC has been damaged. Specifically, UNION PACIFIC has suffered actual damages in connection with unauthorized credit card charges for unordered and undelivered goods, excessive charges for unordered goods, overcharges for unordered goods, overcharges, excessive freight charges for shipments, and excessive restocking fees.

64.     UNION PACIFIC's damages and injuries were a direct and proximate result of the above-described false statements made by Paragon to UNION PACIFIC.

**WHEREFORE**, UNION PACIFIC demands judgment against Paragon Laboratories, Inc. for damages in an amount to be proven at trial, plus interest, costs and any and all such other and further relief as this Court deems just and proper.

<u>**COUNT 3**</u>
**VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR**
**TRADE PRACTICES ACT BY PARAGON LABORATORIES, INC.**

65.     UNION PACIFIC repeats and realleges  paragraphs 1, 2, 5, and 31 through 51 hereof as if fully set forth herein.

66.     At all times material, David J. Rossner was or is a principal and/or officer in Defendant Paragon and directed and was responsible for the telemarketing and other practices employed by Paragon.

67.     At all times material, the purported sales by Paragon of chemical products, cleaning products and lubricants to UNION PACIFIC in this cause were "consumer transactions" within the scope of the Florida Deceptive and Unfair Trade Practices Act, §§ 501.201 to 501.213, Florida Statutes.

68.     In engaging in the conduct previously described, Paragon has committed unfair and deceptive trade practices in connection with the purported sale of chemical products, cleaning products and lubricants, including but not limited to: billing charges to UNION PACIFIC credit cards without authorization; failing to deliver the goods that were being charged to UNION PACIFIC credit cards; providing a choice of paying a reduced invoice price on the unordered merchandise or returning the merchandise and paying a substantial restocking fee when UNION PACIFIC disputed the bills; wrongfully utilizing telemarketing tactics to coerce UNION PACIFIC to pay for expensive products it did not want or order; and misrepresenting and/or failing to clearly disclose all relevant information regarding the cost of the goods, the restrictions and conditions on the purchase of these items, and Paragon's cancellation policy details.

69.     As a result of Paragon's unlawful conduct, UNION PACIFIC has suffered actual damages in connection with unauthorized credit card charges for unordered and undelivered goods, excessive charges for unordered goods, overcharges for unordered

goods, overcharges, excessive freight charges for shipments, and excessive restocking fees.

70.     Union Pacific has retained the services of the undersigned attorneys to bring this action, and has agreed to pay them a reasonable fee.  Such fee is claimed from Paragon pursuant to  § 501.2105 and § 501.211, Florida Statues.

**WHEREFORE,** UNION PACIFIC demands judgment against Paragon Laboratories, Inc. for damages, in an amount to be proven at trial, plus interest, costs, consequential damages, attorneys' fees pursuant to § 501.2105 and § 501.211, Florida Statutes, and any and all other relief that this Court deems just and proper.

## COUNT 4
### VIOLATION OF RICO BY PARAGON LABORATORIES, INC.
### 18 U.S.C. § 1961 et seq.

71.     UNION PACIFIC repeats and realleges  paragraphs 1, 2, 5, and 31 through 51 hereof as if fully set forth herein.

72.     At all times material, David J. Rossner was or is a principal and/or officer in Defendant Paragon and directed and was responsible for the telemarketing and other practices employed by Paragon.

73.     At all times material, Paragon's telemarketers, conversed with UNION PACIFIC employees for the purpose of informing  and persuading UNION PACIFIC to purchase chemical products, cleaning products and lubricants.

74.     Paragon, through its principals and/or officers, directed, authorized and/or participated in telemarketing practices which included statements and representations

either knowing them to be false, or with a reckless disregard as to whether they were true or false. Paragon made such statements and representations with the intention that UNION PACIFIC rely on them to its detriment.

75.     At all times material, as a direct and proximate result of Paragon's false statements, UNION PACIFIC has incurred unauthorized credit card charges for unordered and undelivered goods, excessive charges for unordered goods, overcharges for unordered goods, overcharges, excessive freight charges for shipments, and excessive restocking fees.

76.     This count arises under the Racketeer Influenced and Corrupt Practices Act, 18 U.S.C. § 1961 et seq.

77.     Paragon is an enterprise within the meaning of 18 U.S.C. § 1961(4), which is engaged in, or the activities of which affect, interstate commerce. The fraudulent misrepresentation detailed above were made by Paragon to Plaintiff.

78.     The fraudulent misrepresentation set forth above represented a scheme and artifice to defraud Plaintiff, which was facilitated by use of the United States Mail, caused by Paragon, and resulting in mail fraud within the meaning of 18 U.S.C. § 1341.

79.     Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(B).

80.     The fraudulent misrepresentation set forth above represented a scheme and artifice to defraud Plaintiff, which was facilitated by use of telephones, caused by Paragon, and resulting in wire fraud within the meaning of 18 U.S.C. § 1343.

81.     Wire fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(B).

82.     The fraudulent misrepresentation set forth above represented a scheme and artifice to defraud Plaintiff, which was facilitated by use of the financial institutions, caused by Paragon, and resulting in bank fraud within the meaning of 18 U.S.C. § 1344.

83.     Bank fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(B).

84.     Paragon and Paragon's agents, associates, and representatives, have conducted, and have conspired to conduct, the affairs of Paragon through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c), (d).

85.     As a direct and proximate cause result of these violations of 18 U.S.C. §1962(c), (d), Plaintiff has suffered actual damages as a result of injury to its business and property of at least $7,380.27.

86.     Paragon is liable to Plaintiff for treble damages, together with all costs of this action plus reasonable attorneys' fees, all as provided under 18 U.S.C. § 1964(c).

**WHEREFORE,** UNION PACIFIC demands judgment against Paragon Laboratories, Inc. for treble damages, in an amount to be proven at trial, plus interest, costs, attorneys' fees pursuant to 18 U.S.C. 1962(c), and any and all other relief that this Court deems just and proper.

<u>COUNT 5</u>
## BREACH OF IMPLIED IN LAW CONTRACT (UNJUST ENRICHMENT) AGAINST GROUP CHEMICAL LIMITED, INC.

87.     UNION PACIFIC repeats and realleges paragraphs 1, 3, 5, and 31 through 51 hereof as if fully set forth herein.

88.     At all times material, David J. Rossner was or is a principal and/or officer in Defendant Group Chemical Limited, Inc. ("Group Chemical") and directed and was responsible for the telemarketing and other practices employed by Group Chemical. Under the operation or management of David J. Rossner, the telemarketers for Group Chemical Limited, Inc. and Group Chemical Supply, Inc. conversed with Union Pacific employees for the purpose of informing and persuading Union Pacific to purchase chemical products, cleaning products, and lubricants through the use of improper and inappropriate rewards and/or incentives payable to and/or delivered directly to such employees' homes. Group Chemical Limited, Inc., as directed by David J. Rossner, participated in the telemarketing practices which included statements and representations either knowing them to be false, or with reckless disregard as to whether they were true or false. Such statements and representations were made with the intention that Union Pacific rely on them to its detriment.

89.     UNION PACIFIC has conferred a series of benefits, in the form of financial windfalls and monies advanced for non-delivered goods, overcharged goods, excessive restocking charges for unordered goods that were returned, and other benefits and/or consideration on Group Chemical. Group Chemical is aware of the financial windfalls and

benefits so conferred by UNION PACIFIC and has retained them.  See Transaction Detail relating to Group Chemical annexed hereto as part of Exhibit "A".

90.     Group Chemical has damaged UNION PACIFIC in that it has wrongfully accepted and retained the windfalls and benefits conferred by UNION PACIFIC and has wrongfully failed to pay or reimburse those benefits back to UNION PACIFIC.

91.     Under the circumstances, it would be inequitable and unjust for Group Chemical to retain the benefits conferred by UNION PACIFIC upon them, and Group Chemical should be disgorged of any and all such unearned, undeserved and unwarranted benefits.

**WHEREFORE**, UNION PACIFIC demands judgment against GROUP CHEMICAL LIMITED, INC. for damages in an amount to be proven at trial, plus interest, costs and any and all such other and further relief as this Court deems just and proper.

### COUNT 6
### FRAUDULENT MISREPRESENTATION OF SALES TRANSACTIONS WITH THE INTENT TO DECEIVE AND DEFRAUD AGAINST GROUP CHEMICAL LIMITED, INC.

92.     UNION PACIFIC repeats and realleges paragraphs 1, 3, 5, and 31 through 51 hereof as if fully set forth herein.

93.     At all times material, David J. Rossner was or is a principal and/or officer in Defendant Group Chemical and directed and was responsible for the telemarketing and other practices employed by Group Chemical.  Under the operation or management of David J. Rossner, the telemarketers for Group Chemical Limited, Inc. and Group Chemical Supply, Inc. conversed with Union Pacific employees for the purpose of informing and

persuading Union Pacific to purchase chemical products, cleaning products, and lubricants through the use of improper and inappropriate rewards and/or incentives payable to and/or delivered directly to such employees' homes.  Group Chemical Limited, Inc., as directed by David J. Rossner, participated in the telemarketing practices which included statements and representations either knowing them to be false, or with reckless disregard as to whether they were true or false.  Such statements and representations were made with the intention that Union Pacific rely on them to its detriment.

94.     At all times material, Group Chemical's telemarketers, conversed with UNION PACIFIC employees for the purpose of informing and persuading UNION PACIFIC to purchase chemical products, cleaning products and lubricants.

95.     Group Chemical made such statements and representations either knowing them to be false, or with a reckless disregard as to whether they were true or false.

96.     Group Chemical made such statements and representations with the intention that UNION PACIFIC rely on them to its detriment.

97.     At all times material, as a direct and proximate result of Group Chemical's false statements, UNION PACIFIC has incurred unauthorized credit card charges for unordered and undelivered goods, excessive charges for unordered goods, overcharges for unordered goods, overcharges, excessive freight charges for shipments, and excessive restocking fees.  See Transaction Detail relating to Group Chemical annexed hereto as Exhibit "A".

98.     As a direct and proximate result of all Group Chemical's false statements, UNION PACIFIC has been damaged. Specifically, UNION PACIFIC has suffered actual damages in connection with unauthorized credit card charges for unordered and undelivered goods, excessive charges for unordered goods, overcharges for unordered goods, overcharges, excessive freight charges for shipments, and excessive restocking fees. See Transaction Detail relating to Group Chemical annexed hereto as Exhibit "A".

99.     UNION PACIFIC's damages and injuries were a direct and proximate result of the above-described false statements made by Group Chemical to UNION PACIFIC.

**WHEREFORE**, UNION PACIFIC demands judgment against GROUP CHEMICAL LIMITED, INC. for damages in an amount to be proven at trial, plus interest, costs and any and all such other and further relief as this Court deems just and proper.

**COUNT 7**
**VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR**
**TRADE PRACTICES ACT BY GROUP CHEMICAL LIMITED, INC.**

100.    UNION PACIFIC repeats and realleges  paragraphs 1, 3, 5, and 31 through 51 hereof as if fully set forth herein.

101.    At all times material, David J. Rossner was or is a principal and/or officer in Defendant Group Chemical and directed and was responsible for the telemarketing and other practices employed by Group Chemical.  Under the operation or management of David J. Rossner, the telemarketers for Group Chemical Limited, Inc. and Group Chemical Supply, Inc. conversed with Union Pacific employees for the purpose of informing and persuading Union Pacific to purchase chemical products, cleaning products, and lubricants

through the use of improper and inappropriate rewards and/or incentives payable to and/or delivered directly to such employees' homes.  Group Chemical Limited, Inc., as directed by David J. Rossner, participated in the telemarketing practices which included statements and representations either knowing them to be false, or with reckless disregard as to whether they were true or false.  Such statements and representations were made with the intention that Union Pacific rely on them to its detriment.

102.   At all times material, the purported sales by Group Chemical of chemical products, cleaning products and lubricants to UNION PACIFIC in this cause were consumer transactions" within the scope of the Florida Deceptive and Unfair Trade Practices Act, §§ 501.201 to 501.213, Florida Statutes.

103.   In engaging in the conduct previously described, Group Chemical has committed unfair and deceptive trade practices in connection with the purported sale of chemical products, cleaning products and lubricants, including but not limited to: billing charges to UNION PACIFIC credit cards without authorization; failing to deliver the goods that were being charged to UNION PACIFIC credit cards; providing a choice of paying a reduced invoice price on the unordered merchandise or returning the merchandise and paying a substantial restocking fee when UNION PACIFIC disputed the bills; wrongfully utilizing telemarketing tactics to coerce UNION PACIFIC to pay for expensive products it did not want or order; and misrepresenting and/or failing to clearly disclose all relevant information regarding the cost of the goods, the restrictions and conditions on the purchase

of these items, and Group Chemical's cancellation policy details. See Transaction Detail relating to Group Chemical annexed hereto as Exhibit "A".

104.   As a result of Group Chemical's unlawful conduct, UNION PACIFIC has suffered actual damages in connection with unauthorized credit card charges for unordered and undelivered goods, excessive charges for unordered goods, overcharges for unordered goods, overcharges, excessive freight charges for shipments, and excessive restocking fees.

105.   Union Pacific has retained the services of the undersigned attorneys to bring this action, and has agreed to pay them a reasonable fee.  Such fee is claimed from Group Chemical pursuant to  § 501.2105 and § 501.211, Florida Statues.

**WHEREFORE,** UNION PACIFIC demands judgment against GROUP CHEMICAL LIMITED, INC. for damages, in an amount to be proven at trial, plus interest, costs, consequential damages, attorneys' fees pursuant to § 501.2105 and § 501.211, Florida Statutes, and any and all other relief that this Court deems just and proper.

**COUNTS 8a, 8b and 8c**
**VIOLATION OF RICO BY GROUP CHEMICAL LIMITED, INC.**
**18 U.S.C. § 1961 et seq.**
**FOR MAIL FRAUD, WIRE FRAUD AND BANK FRAUD**

106.   UNION PACIFIC repeats and realleges paragraphs 1, 3, 5, and 31 through 51 hereof as if fully set forth herein.

107.   At all times material, David J. Rossner was or is a principal and/or officer in Defendant Group Chemical and directed and was responsible for the telemarketing and other practices employed by Group Chemical Limited.   Under the operation or

management of David J. Rossner, the telemarketers for Group Chemical Limited, Inc. and Group Chemical Supply, Inc. conversed with Union Pacific employees for the purpose of informing and persuading Union Pacific to purchase chemical products, cleaning products, and lubricants through the use of improper and inappropriate rewards and/or incentives payable to and/or delivered directly to such employees' homes.  Group Chemical Limited, Inc., as directed by David J. Rossner, participated in the telemarketing practices which included statements and representations either knowing them to be false, or with reckless disregard as to whether they were true or false.  Such statements and representations were made with the intention that Union Pacific rely on them to its detriment.

108.   At all times material, Group Chemical's telemarketers, conversed with UNION PACIFIC employees for the purpose of informing  and persuading UNION PACIFIC to purchase chemical products, cleaning products and lubricants.

109.   Group Chemical, through its principals and/or officers, directed, authorized and/or participated in telemarketing practices which included statements and representations either knowing them to be false, or with a reckless disregard as to whether they were true or false.  Group Chemical made such statements and representations with the intention that UNION PACIFIC rely on them to its detriment.

110.   At all times material, as a direct and proximate result of Group Chemical's false statements, UNION PACIFIC has incurred unauthorized credit card charges for unordered and undelivered goods, excessive charges for unordered goods, overcharges

CASE NO. 06-60873-CIV-COHN

for unordered goods, overcharges, excessive freight charges for shipments, and excessive restocking fees.

111.   These counts arise under the Racketeer Influenced and Corrupt Practices Act, 18 U.S.C. § 1961 et seq.

112.   Group Chemical is an enterprise within the meaning of 18 U.S.C. § 1961(4), which is engaged in, or the activities of which affect, interstate commerce.   The fraudulent misrepresentations detailed above were made by Group Chemical to Plaintiff.

### COUNT 8a - MAIL FRAUD, 18 U.S.C § 1341
### VIOLATION OF 18 U.S.C. § 1961(B)

113.   The fraudulent misrepresentations set forth in paragraphs 107-112 represented a scheme and artifice to defraud Plaintiff, which was facilitated by use of the United States Mail, caused by Group Chemical, and resulting in mail fraud within the meaning of 18 U.S.C. § 1341.  Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(B).

114.  Group Chemical and Group Chemical's agents, associates, and representatives, have conducted, and have conspired to conduct, the affairs of Group Chemical through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c), (d).

### COUNT 8b - WIRE FRAUD, 18 U.S.C. § 1343
### VIOLATION OF 18 U.S.C. § 1961(B)

115.   The fraudulent misrepresentations set forth in paragraphs 107-112 represented a scheme and artifice to defraud Plaintiff, which was facilitated by use of telephones, caused by Group Chemical, and resulting in wire fraud within the meaning of

CASE NO. 06-60873-CIV-COHN

18 U.S.C. § 1343.  Wire fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(B).

116.   Group Chemical and Group Chemical's agents, associates, and representatives, have conducted, and have conspired to conduct, the affairs of Group Chemical through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c), (d).

## COUNT 8c - BANK FRAUD, 18 U.S.C. § 1344
### VIOLATION OF U.S.C. § 1961(B)

117.   The fraudulent misrepresentations set forth in paragraphs 107-112 represented a scheme and artifice to defraud Plaintiff, which was facilitated by use of the financial institutions, caused by Group Chemical, and resulting in bank fraud within the meaning of 18 U.S.C. § 1344.

118.   Bank fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(B).

119.   Group Chemical and Group Chemical's agents, associates, and representatives, have conducted, and have conspired to conduct, the affairs of Group Chemical through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c), (d).

120.   As a direct and proximate result of the violations of 18 U.S.C. §1962(c), (d), set forth in Counts 8a, 8b and 8c, Plaintiff has suffered actual damages as a result of injury to its business and  property of at least $5,185.49.

121.   Group Chemical is liable to Plaintiff for treble damages, together with all costs of this action plus reasonable attorneys' fees, all as provided under 18 U.S.C. § 1964(c).

**WHEREFORE,** UNION PACIFIC demands judgment against GROUP CHEMICAL LIMITED, INC. for treble damages, in an amount to be proven at trial, plus interest, costs, attorneys' fees pursuant to 18 U.S.C. 1962(c), and any and all other relief that this Court deems just and proper.

## COUNT 9
### BREACH OF IMPLIED IN LAW CONTRACT (UNJUST ENRICHMENT) AGAINST GROUP CHEMICAL SUPPLY, INC.

122.    UNION PACIFIC repeats and realleges paragraphs 1, 4, 5, and 31 through 51 hereof as if fully set forth herein.

123.    At all times material, David J. Rossner was or is a principal and/or officer in Defendant Group Chemical Supply, Inc. ("Chemical Supply") and directed and was responsible for the telemarketing and other practices employed by Chemical Supply.

124.    UNION PACIFIC has conferred a series of benefits, in the form of financial windfalls and monies advanced for non-delivered goods, overcharged goods, excessive restocking charges for unordered goods that were returned, and other benefits and/or consideration on Chemical Supply. Chemical Supply is aware of the financial windfalls and benefits so conferred by UNION PACIFIC and have retained them.

125.    Chemical Supply has damaged UNION PACIFIC in that it has wrongfully accepted and retained the windfalls and benefits conferred by UNION PACIFIC and have wrongfully failed to pay or reimburse those benefits back to UNION PACIFIC.

126.    Under the circumstances, it would be inequitable and unjust for Chemical Supply to retain the benefits conferred by UNION PACIFIC upon them, and Chemical Supply should be disgorged of any and all such unearned, undeserved and unwarranted benefits.

**WHEREFORE**, UNION PACIFIC demands judgment against GROUP CHEMICAL SUPPLY, INC. for damages in an amount to be proven at trial, plus interest, costs and any and all such other and further relief as this Court deems just and proper.

## <u>COUNT 10</u>
### FRAUDULENT MISREPRESENTATION OF SALES TRANSACTIONS WITH THE INTENT TO DECEIVE AND DEFRAUD AGAINST GROUP CHEMICAL SUPPLY, INC.

127.    UNION PACIFIC repeats and realleges paragraphs 1, 4, 5, and 31 through 51 hereof as if fully set forth herein.

128.    At all times material, David J. Rossner was or is a principal and/or officer in Defendant Chemical Supply and directed and was responsible for the telemarketing and other practices employed by Chemical Supply.

129.    At all times material, Chemical Supply's telemarketers, conversed with UNION PACIFIC employees for the purpose of informing and persuading UNION PACIFIC to purchase chemical products, cleaning products and lubricants.

130.    Chemical Supply made such statements and representations either knowing them to be false, or with a reckless disregard as to whether they were true or false.

131.    Chemical Supply made such statements and representations with the intention that UNION PACIFIC rely on them to its detriment.

132.   At all times material, as a direct and proximate result of Chemical Supply's false statements, UNION PACIFIC has incurred unauthorized credit card charges for unordered and undelivered goods, excessive charges for unordered goods, overcharges for unordered goods, overcharges, excessive freight charges for shipments, and excessive restocking fees.

133.   As a direct and proximate result of all Chemical Supply's false statements, UNION PACIFIC has been damaged. Specifically, UNION PACIFIC has suffered actual damages in connection with unauthorized credit card charges for unordered and undelivered goods, excessive charges for unordered goods, overcharges for unordered goods, overcharges, excessive freight charges for shipments, and excessive restocking fees.

134.   UNION PACIFIC's damages and injuries were a direct and proximate result of the above-described false statements made by Chemical Supply  to UNION PACIFIC.

**WHEREFORE**, UNION PACIFIC demands judgment against GROUP CHEMICAL SUPPLY, INC. for damages in an amount to be proven at trial, plus interest, costs and any and all such other and further relief as this Court deems just and proper.

### COUNT 11
### VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR
### TRADE PRACTICES ACT BY GROUP CHEMICAL SUPPLY, INC.

135.   UNION PACIFIC repeats and realleges  paragraphs 1, 4, 5, and 31 through 51 hereof as if fully set forth herein.

136.   At all times material, David J. Rossner was or is a principal and/or officer in Defendant Chemical Supply and directed and was responsible for the telemarketing and other practices employed by Chemical Supply.

137.   At all times material, the purported sales by Chemical Supply of chemical products, cleaning products and lubricants to UNION PACIFIC in this cause were "consumer transactions" within the scope of the Florida Deceptive and Unfair Trade Practices Act, §§ 501.201 to 501.213, Florida Statutes.

138.   In engaging in the conduct previously described, Chemical Supply has committed unfair and deceptive trade practices in connection with the purported sale of chemical products, cleaning products and lubricants, including but not limited to: billing charges to UNION PACIFIC credit cards without authorization; failing to deliver the goods that were being charged to UNION PACIFIC credit cards; providing a choice of paying a reduced invoice price on the unordered merchandise or returning the merchandise and paying a substantial restocking fee when UNION PACIFIC disputed the bills; wrongfully utilizing telemarketing tactics to coerce UNION PACIFIC to pay for expensive products it did not want or order; and misrepresenting and/or failing to clearly disclose all relevant information regarding the cost of the goods, the restrictions and conditions on the purchase of these items, and Chemical Supply 's cancellation policy details.

139.   As a result of Chemical Supply's unlawful conduct, UNION PACIFIC has suffered actual damages in connection with unauthorized credit card charges for unordered and undelivered goods, excessive charges for unordered goods, overcharges for

unordered goods, overcharges, excessive freight charges for shipments, and excessive restocking fees.

140.   Union Pacific has retained the services of the undersigned attorneys to bring this action, and has agreed to pay them a reasonable fee.   Such fee is claimed from Chemical Supply pursuant to § 501.2105 and § 501.211, Florida Statues.

**WHEREFORE,** UNION PACIFIC demands judgment against GROUP CHEMICAL SUPPLY, INC. for damages, in an amount to be proven at trial, plus interest, costs, consequential damages, attorneys' fees pursuant to § 501.2105 and § 501.211, Florida Statutes, and any and all other relief that this Court deems just and proper.

### COUNT 12
### VIOLATION OF RICO BY GROUP CHEMICAL SUPPLY, INC.
### 18 U.S.C. § 1961 et seq.

141.   UNION PACIFIC repeats and realleges  paragraphs 1, 4, 5, and 31 through 51 hereof as if fully set forth herein.

142.   At all times material, David J. Rossner was or is a principal and/or officer in Defendant Chemical Supply and directed and was responsible for the telemarketing and other practices employed by Chemical Supply.

143.   At all times material, Chemical Supply's telemarketers, conversed with UNION PACIFIC employees for the purpose of informing and persuading UNION PACIFIC to purchase chemical products, cleaning products and lubricants.

144.   Chemical Supply, through its principals and/or officers, directed, authorized and/or participated in telemarketing practices which included statements and

representations either knowing them to be false, or with a reckless disregard as to whether they were true or false.  Chemical Supply made such statements and representations with the intention that UNION PACIFIC rely on them to its detriment.

145.    At all times material, as a direct and proximate result of Chemical Supply's false statements, UNION PACIFIC has incurred unauthorized credit card charges for unordered and undelivered goods, excessive charges for unordered goods, overcharges for unordered goods, overcharges, excessive freight charges for shipments, and excessive restocking fees.

146.    This count arises under the Racketeer Influenced and Corrupt Practices Act, 18 U.S.C. § 1961 et seq.

147.    Chemical Supply is an enterprise within the meaning of 18 U.S.C. § 1961(4), which is engaged in, or the activities of which affect, interstate commerce.  The fraudulent misrepresentation detailed above were made by Chemical Supply to Plaintiff.

148.    The fraudulent misrepresentation set forth above represented a scheme and artifice to defraud Plaintiff, which was facilitated by use of the United States Mail, caused by Chemical Supply, and resulting in mail fraud within the meaning of 18 U.S.C. § 1341.

149.    Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(B).

150.    The fraudulent misrepresentation set forth above represented a scheme and artifice to defraud Plaintiff, which was facilitated by use of telephones, caused by Chemical Supply, and resulting in wire fraud within the meaning of 18 U.S.C. § 1343.

151.   Wire fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(B).

152.   The fraudulent misrepresentation set forth above represented a scheme and artifice to defraud Plaintiff, which was facilitated by use of the financial institutions, caused by Chemical Supply, and resulting in bank fraud within the meaning of 18 U.S.C. § 1344.

153.   Bank fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(B).

154.   Chemical Supply and Chemical Supply's agents, associates, and representatives, have conducted, and have conspired to conduct, the affairs of Chemical Supply through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c), (d).

155.   As a direct and proximate cause result of these violations of 18 U.S.C. 1962(c), (d), Plaintiff has suffered actual damages as a result of injury to its business and property of at least $5,185.49.

156.   Chemical Supply is liable to Plaintiff for treble damages, together with all costs of this action plus reasonable attorneys' fees, all as provided under 18 U.S.C. § 1964(c).

**WHEREFORE,** UNION PACIFIC demands judgment against GROUP CHEMICAL SUPPLY, INC.  for treble damages, in an amount to be proven at trial, plus interest, costs, attorneys' fees pursuant to 18 U.S.C. 1962(c), and any and all other relief that this Court deems just and proper.

## COUNT 13
## VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR
## TRADE PRACTICES ACT BY DAVID J. ROSSNER

157.   UNION PACIFIC repeats and realleges  paragraphs 1 through 5 and 31 through 51 hereof as if fully set forth herein.

158.   At all times material, David J. Rossner was or is a principal and/or officer in Defendants Paragon Laboratories, Inc., Group Chemical Limited, Inc., Group Chemical Supply, Inc., and directed and was responsible for the telemarketing and other practices employed by Paragon Laboratories, Inc., Group Chemical Limited, Inc., and Group Chemical Supply, Inc.  Under the operation or management of David J. Rossner, the telemarketers for Paragon Laboratories, Inc., Group Chemical Limited, Inc. and Group Chemical Supply, Inc. conversed with Union Pacific employees for the purpose of informing and persuading Union Pacific to purchase chemical products, cleaning products, and lubricants through the use of improper and inappropriate rewards and/or incentives payable to and/or delivered directly to such employees' homes.  Paragon Laboratories, Inc., Group Chemical Limited, Inc. and Group Chemical Supply, Inc., as directed by David J. Rossner, participated in the telemarketing practices which included statements and representations either knowing them to be false, or with reckless disregard as to whether they were true or false.  Such statements and representations were made with the intention that Union Pacific rely on them to its detriment.

159.    At all times material, David J. Rossner ("ROSSNER") maintained institutional control of Paragon Laboratories, Inc., Group Chemical Limited, Inc. and Group Chemical Supply, Inc..

160.    Upon information and belief, ROSSNER exclusively designed, developed and implemented the telemarketing tactics utilized by Paragon Laboratories, Inc., Group Chemical Limited, Inc. and Group Chemical Supply, Inc., and he directed and controlled the telemarketers who contacted UNION PACIFIC regarding the purported sale of chemical products, cleaning products and lubricants.

161.    ROSSNER participated directly in the deceptive practices or acts of Paragon Laboratories, Inc., Group Chemical Limited, Inc. and Group Chemical Supply, Inc. and/or possessed the authority to control the deceptive practices or acts perpetrated by Paragon Laboratories, Inc., Group Chemical Limited, Inc. and Group Chemical Supply, Inc. In connection with the purported sale of chemical products, cleaning products and lubricants to UNION PACIFIC, including but not limited to: billing charges to UNION PACIFIC credit cards without authorization; failing to deliver the goods that were being charged to UNION PACIFIC credit cards; providing a choice of paying a reduced invoice on the unordered merchandise or returning the merchandise and paying a substantial restocking fee when UNION PACIFIC disputed the bills; wrongfully utilizing telemarketing tactics to coerce UNION PACIFIC to pay for expensive products it did not want to order, and misrepresenting and/or failing to clearly disclose all relevant information regarding the cost of the goods, the restrictions and conditions on the purchase of these items, and the

cancellation policy details of Paragon Laboratories, Inc., Group Chemical Limited, Inc. and Group Chemical Supply, Inc. See Transaction Detail relating to Paragon Group Chemical and Chemical Supply annexed hereto as part of Exhibit "A".

162.    ROSSNER's actions constitute a violation of the Florida Deceptive Trade Practices Act, §501.201, *et seq.*, Florida Statutes.

163.    UNION PACIFIC has retained the services of the undersigned attorneys to bring this action, and has agreed to pay them a reasonable fee. Such fee is claimed from ROSSNER pursuant to §501.2105 and §501.211, Florida Statutes.

**WHEREFORE**, UNION PACIFIC demands judgment against DAVID J. ROSSNER for damages, in an amount to be proven at trial, plus interest, costs, consequential damages, attorneys' fees pursuant to §501.2105 and §501.211, Florida Statutes, and any and all other relief that this Court deems just and proper.

## COUNTS 14a, 14b and 14c
## VIOLATION OF RICO BY DAVID J. ROSSNER
## 18 U.S.C. § 1961 et seq.

164.    UNION PACIFIC repeats and realleges paragraphs 1 through 5 and 31 through 51 hereof as if fully set forth herein.

165.    At all times material, ROSSNER was or is a principal and/or officer in Defendants Paragon Laboratories, Inc., Group Chemical Limited, Inc., and Group Chemical Supply, Inc., and directed and was responsible for the telemarketing and other practices employed by Paragon Laboratories, Inc., Group Chemical Limited, Inc., and Group Chemical Supply, Inc. Under the operation or management of David J. Rossner, the

telemarketers for Paragon Laboratories, Inc., Group Chemical Limited, Inc. and Group Chemical Supply, Inc. conversed with Union Pacific employees for the purpose of informing and persuading Union Pacific to purchase chemical products, cleaning products, and lubricants through the use of improper and inappropriate rewards and/or incentives payable to and/or delivered directly to such employees' homes. Paragon Laboratories, Inc., Group Chemical Limited, Inc. and Group Chemical Supply, Inc., as directed by David J. Rossner, participated in the telemarketing practices which included statements and representations either knowing them to be false, or with reckless disregard as to whether they were true or false. Such statements and representations were made with the intention that Union Pacific rely on them to its detriment.

166.   At all times material, ROSSNER's telemarketers, conversed with UNION PACIFIC employees for the purpose of informing  and persuading UNION PACIFIC to purchase chemical products, cleaning products and lubricants.

167.   ROSSNER directed, authorized and/or participated in telemarketing practices which included statements and representations either knowing them to be false, or with a reckless disregard as to whether they were true or false. ROSSNER made or caused such statements and representations with the intention that UNION PACIFIC rely on them to its detriment.

168.   At all times material, as a direct and proximate result of ROSSNER's false statements, UNION PACIFIC has incurred unauthorized credit card charges for unordered

and undelivered goods, excessive charges for unordered goods, overcharges for unordered goods, overcharges, excessive freight charges for shipments, and excessive restocking fees.

169.   These counts arise under the Racketeer Influenced and Corrupt Practices Act, 18 U.S.C. § 1961 et seq.

170.   ROSSNER is an enterprise within the meaning of 18 U.S.C. § 1961(4), which is engaged in, or the activities of which affect, interstate commerce. The fraudulent misrepresentations detailed above were made by ROSSNER to Plaintiff.

## COUNT 14a - MAIL FRAUD, 18 U.S.C. § 1341
## VIOLATION OF 18 U.S.C. § 1961(B)

171.   The fraudulent misrepresentations set forth in paragraph 165-170 represented a scheme and artifice to defraud Plaintiff, which was facilitated by use of the United States Mail, caused by ROSSNER, and resulting in mail fraud within the meaning of 18 U.S.C. § 1341.  Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(B).

172.   ROSSNER and ROSSNER's agents, associates, and representatives, have conducted, and have conspired to conduct, the affairs of ROSSNER through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c), (d).

## COUNT 14b - WIRE FRAUD, 18 U.S.C. § 1343
## VIOLATION OF 18 U.S.C. § 1961(B)

173.   The fraudulent misrepresentations set forth in paragraphs 165-170 represented a scheme and artifice to defraud Plaintiff, which was facilitated by use of

telephones, caused by ROSSNER, and resulting in wire fraud within the meaning of 18 U.S.C. § 1343. Wire fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(B).

174. ROSSNER and ROSSNER's agents, associates, and representatives, have conducted, and have conspired to conduct, the affairs of ROSSNER through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c), (d).

## COUNT 14c - WIRE FRAUD, 18 U.S.C. § 1344
### VIOLATION OF 18 U.S.C. § 1961(B)

175. The fraudulent misrepresentations set forth in paragraphs 165-170 represented a schemeand artifice to defraud Plaintiff, which was facilitated by use of the financial institutions, caused by ROSSNER, and resulting in bank fraud within the meaning of 18 U.S.C. § 1344.

176. Bank fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(B).

177. ROSSNER and ROSSNER's agents, associates, and representatives, have conducted, and have conspired to conduct, the affairs of ROSSNER through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c), (d).

178. As a direct and proximate result of these violations of 18 U.S.C. §1962(c), (d), set forth in Counts 14a, 14b and 14c, Plaintiff has suffered actual damages as a result of injury to its business and property of at least $12,565.76.

179. ROSSNER is liable to Plaintiff for treble damages, together with all costs of this action plus reasonable attorneys' fees, all as provided under 18 U.S.C. § 1964(c).

CASE NO. 06-60873-CIV-COHN

**WHEREFORE,** UNION PACIFIC demands judgment against DAVID J. ROSSNER for treble damages, in an amount to be proven at trial, plus interest, costs, attorneys' fees pursuant to 18 U.S.C. 1962(c), and any and all other relief that this Court deems just and proper.

## COUNT 15
## BREACH OF IMPLIED IN LAW CONTRACT (UNJUST ENRICHMENT) AGAINST GOLDSTAR PRODUCTS, INC.

180.   UNION PACIFIC repeats and realleges paragraphs 1, 6, 10, and 31 through 51 hereof as if fully set forth herein.

181.   At all times material, Michael A. Sheehan was or is a principal and/or officer in Defendant Goldstar Products, Inc. ("Goldstar") and directed and was responsible for the telemarketing and other practices employed by Goldstar.   Under the operation or management of Michael A. Sheehan, the telemarketers for Goldstar conversed with Union Pacific employees for the purpose of informing and persuading Union Pacific to purchase chemical products, cleaning products and lubricants through the use of improper and inappropriate rewards and/or incentives payable to and/or delivered directly to such employees' homes.   Goldstar, as directed by Michael A. Sheehan, participated in the telemarketing practices which included statements and representations either knowing them to be false, or with reckless disregard as to whether they were true or false.   Such statements and representations were made with the intention that Union Pacific rely on them to its detriment.

182.   UNION PACIFIC has conferred a series of benefits, in the form of

financial windfalls and monies advanced for non-delivered goods, overcharged goods, excessive restocking charges for unordered goods that were returned, and other benefits and/or consideration on Goldstar. Goldstar is aware of the financial windfalls and benefits so conferred by UNION PACIFIC and have retained them.  See Transaction Detail relating to Goldstar annexed hereto as part of Exhibit "A".

183.   Goldstar has damaged UNION PACIFIC in that it has wrongfully accepted and retained the windfalls and benefits conferred by UNION PACIFIC and have wrongfully failed to pay or reimburse those benefits back to UNION PACIFIC.

184.   Under the circumstances, it would be inequitable and unjust for Goldstar to retain the benefits conferred by UNION PACIFIC upon them, and Goldstar should be disgorged of any and all such unearned, undeserved and unwarranted benefits.

**WHEREFORE**, UNION PACIFIC demands judgment against GOLDSTAR PRODUCTS, INC. for damages in an amount to be proven at trial, plus interest, costs and any and all such other and further relief as this Court deems just and proper.

## COUNT 16
**FRAUDULENT MISREPRESENTATION OF SALES TRANSACTIONS WITH THE INTENT TO DECEIVE AND DEFRAUD AGAINST GOLDSTAR PRODUCTS, INC.**

185.   UNION PACIFIC repeats and realleges paragraphs 1, 6, 10, and 31 through 51 hereof as if fully set forth herein.

186.   At all times material, Michael A. Sheehan was or is a principal and/or officer in Defendant Goldstar and directed and was responsible for the telemarketing and other practices employed by Goldstar.   Under the operation or management of Michael A.

Sheehan, the telemarketers for Goldstar conversed with Union Pacific employees for the purpose of informing and persuading Union Pacific to purchase chemical products, cleaning products and lubricants through the use of improper and inappropriate rewards and/or incentives payable to and/or delivered directly to such employees' homes. Goldstar, as directed by Michael A. Sheehan, participated in the telemarketing practices which included statements and representations either knowing them to be false, or with reckless disregard as to whether they were true or false. Such statements and representations were made with the intention that Union Pacific rely on them to its detriment.

187.   At all times material, Goldstar's telemarketers, conversed with UNION PACIFIC employees for the purpose of informing  and persuading UNION PACIFIC to purchase chemical products, cleaning products and lubricants.

188.   Goldstar made such statements and representations either knowing them to be false, or with a reckless disregard as to whether they were true or false.

189.   Goldstar made such statements and representations with the intention that UNION PACIFIC rely on them to its detriment.

190.   At all times material, as a direct and proximate result of Goldstar's false statements, UNION PACIFIC has incurred unauthorized credit card charges for unordered and undelivered goods, excessive charges for unordered goods, overcharges for unordered goods, overcharges, excessive freight charges for shipments, and excessive restocking fees. See Transaction Detail relating to Goldstar annexed hereto as part of Exhibit "A".

191.   As a direct and proximate result of all Goldstar's false statements, UNION PACIFIC has been damaged.  Specifically, UNION PACIFIC has suffered actual damages in connection with unauthorized credit card charges for unordered and undelivered goods, excessive charges for unordered goods, overcharges for unordered goods, overcharges, excessive freight charges for shipments, and excessive restocking fees.  See Transaction Detail relating to Goldstar annexed hereto as part of Exhibit "A".

192.   UNION PACIFIC's damages and injuries were a direct and proximate result of the above-described false statements made by Goldstar to UNION PACIFIC.

**WHEREFORE**, UNION PACIFIC demands judgment against GOLDSTAR PRODUCTS, INC. for damages in an amount to be proven at trial, plus interest, costs and any and all such other and further relief as this Court deems just and proper.

## COUNT 17
### VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT BY GOLDSTAR PRODUCTS, INC.

193.   UNION PACIFIC repeats and realleges  paragraphs 1, 6, 10, and 31 through 51 hereof as if fully set forth herein.

194.   At all times material, Michael A. Sheehan was or is a principal and/or officer in Defendant Goldstar and directed and was responsible for the telemarketing and other practices employed by Goldstar.   Under the operation or management of Michael A. Sheehan, the telemarketers for Goldstar conversed with Union Pacific employees for the purpose of informing and persuading Union Pacific to purchase chemical products, cleaning products and lubricants through the use of improper and inappropriate rewards

and/or incentives payable to and/or delivered directly to such employees' homes. Goldstar, as directed by Michael A. Sheehan, participated in the telemarketing practices which included statements and representations either knowing them to be false, or with reckless disregard as to whether they were true or false. Such statements and representations were made with the intention that Union Pacific rely on them to its detriment.

195. At all times material, the purported sales by Goldstar of chemical products, cleaning products and lubricants to UNION PACIFIC in this cause were "consumer transactions" within the scope of the Florida Deceptive and Unfair Trade Practices Act, §§ 501.201 to 501.213, Florida Statutes.

196. In engaging in the conduct previously described, Goldstar has committed unfair and deceptive trade practices in connection with the purported sale of chemical products, cleaning products and lubricants, including but not limited to: billing charges to UNION PACIFIC credit cards without authorization; failing to deliver the goods that were being charged to UNION PACIFIC credit cards; providing a choice of paying a reduced invoice price on the unordered merchandise or returning the merchandise and paying a substantial restocking fee when UNION PACIFIC disputed the bills; wrongfully utilizing telemarketing tactics to coerce UNION PACIFIC to pay for expensive products it did not want or order; and misrepresenting and/or failing to clearly disclose all relevant information regarding the cost of the goods, the restrictions and conditions on the purchase of these items, and Goldstar's cancellation policy details. See Transaction Detail relating to Goldstar annexed hereto as part of Exhibit "A".

197.   As a result of Goldstar's unlawful conduct, UNION PACIFIC has suffered actual damages in connection with unauthorized credit card charges for unordered and undelivered goods, excessive charges for unordered goods, overcharges for unordered goods, overcharges, excessive freight charges for shipments, and excessive restocking fees.

198.   Union Pacific has retained the services of the undersigned attorneys to bring this action, and has agreed to pay them a reasonable fee.  Such fee is claimed from Goldstar  pursuant to  § 501.2105 and § 501.211, Florida Statues.

**WHEREFORE,** UNION PACIFIC demands judgment against GOLDSTAR PRODUCTS, INC. for damages, in an amount to be proven at trial, plus interest, costs, consequential damages, attorneys' fees pursuant to § 501.2105 and § 501.211, Florida Statutes, and any and all other relief that this Court deems just and proper.

**COUNTS 18a, 18b and 18c**
**VIOLATION OF RICO BY GOLDSTAR PRODUCTS, INC.**
**18 U.S.C. § 1961 et seq.**
**FOR MAIL FRAUD, WIRE FRAUD AND BANK FRAUD**

199.   UNION PACIFIC repeats and realleges  paragraphs 1, 6, 10, and 31 through 51 hereof as if fully set forth herein.

200.   At all times material, Michael A. Sheehan was or is a principal and/or officer in Defendant Goldstar and directed and was responsible for the telemarketing and other practices employed by Goldstar.   Under the operation or management of Michael A. Sheehan, the telemarketers for Goldstar conversed with Union Pacific employees for the purpose of informing and persuading Union Pacific to purchase chemical products,

cleaning products and lubricants through the use of improper and inappropriate rewards and/or incentives payable to and/or delivered directly to such employees' homes. Goldstar, as directed by Michael A. Sheehan, participated in the telemarketing practices which included statements and representations either knowing them to be false, or with reckless disregard as to whether they were true or false. Such statements and representations were made with the intention that Union Pacific rely on them to its detriment.

201. At all times material, Goldstar's telemarketers, conversed with UNION PACIFIC employees for the purpose of informing and persuading UNION PACIFIC to purchase chemical products, cleaning products and lubricants.

202. Goldstar, through its principals and/or officers, directed, authorized and/or participated in telemarketing practices which included statements and representations either knowing them to be false, or with a reckless disregard as to whether they were true or false. Goldstar made such statements and representations with the intention that UNION PACIFIC rely on them to its detriment.

203. At all times material, as a direct and proximate result of Goldstar's false statements, UNION PACIFIC has incurred unauthorized credit card charges for unordered and undelivered goods, excessive charges for unordered goods, overcharges for unordered goods, overcharges, excessive freight charges for shipments, and excessive restocking fees. See Transaction Detail relating to Goldstar annexed hereto as part of Exhibit "A".

204.    These counts arise under the Racketeer Influenced and Corrupt Practices Act, 18 U.S.C. § 1961 et seq.

205.    Goldstar is an enterprise within the meaning of 18 U.S.C. § 1961(4), which is engaged in, or the activities of which affect, interstate commerce.  The fraudulent misrepresentations detailed above were made by Goldstar to Plaintiff.

**COUNT 18a - MAIL FRAUD, 18 U.S.C. § 1341**
**VIOLATION OF 18 U.S.C. § 1961(B)**

206.    The fraudulent misrepresentations set forth in paragraphs 200-205 represented a scheme and artifice to defraud Plaintiff, which was facilitated by use of the United States Mail, caused by Goldstar, and resulting in mail fraud within the meaning of 18 U.S.C. § 1341.  Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(B).

207.    Goldstar and Goldstar's agents, associates, and representatives, have conducted, and have conspired to conduct, the affairs of Goldstar through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c), (d).

**COUNT 18b - WIRE FRAUD, 18 U.S.C. § 1343**
**VIOLATION OF 18 U.S.C. § 1961(B)**

208.    The fraudulent misrepresentations set forth in paragraphs 200-205 represented a scheme and artifice to defraud Plaintiff, which was facilitated by use of telephones, caused by Goldstar, and resulting in wire fraud within the meaning of 18 U.S.C. § 1343.  Wire fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(B).

209.    Goldstar and Goldstar's agents, associates, and representatives, have conducted, and have conspired to conduct, the affairs of Goldstar through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c), (d).

### COUNT 18c - BANK FRAUD, 18 U.S.C. § 1344
### VIOLATION OF 18 U.S.C. § 1961(B)

210.    The fraudulent misrepresentations set forth in paragraphs 200-205 represented a scheme and artifice to defraud Plaintiff, which was facilitated by use of the financial institutions, caused by Goldstar, and resulting in bank fraud within the meaning of 18 U.S.C. § 1344.

211.    Bank fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(B).

212.    Goldstar and Goldstar's agents, associates, and representatives, have conducted, and have conspired to conduct, the affairs of Goldstar through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c), (d).

213.    As a direct and proximate result of these violations of 18 U.S.C. §1962(c), (d), set forth in Counts 18a, 18b and 18c, Plaintiff has suffered actual damages as a result of injury to its business and  property of at least $815,479.11.

214.    Goldstar is liable to Plaintiff for treble damages, together with all costs of this action plus reasonable attorneys' fees, all as provided under 18 U.S.C. § 1964(c).

**WHEREFORE,** UNION PACIFIC demands judgment against GOLDSTAR PRODUCTS, INC. for treble damages, in an amount to be proven at trial, plus interest,

costs, attorneys' fees pursuant to 18 U.S.C. 1962(c), and any and all other relief that this Court deems just and proper.

## COUNT 19
### VIOLATION OF TELEMARKETING RULES BY GOLDSTAR PRODUCTS, INC.
### 15 U.S.C. § 6102 et seq.

215. UNION PACIFIC repeats and realleges paragraphs 1, 6, 10, and 31 through 51 hereof as if fully set forth herein.

216. At all times material, Michael A. Sheehan was or is a principal and/or officer in Defendant Goldstar and directed and was responsible for the telemarketing and other practices employed by Goldstar. Under the operation or management of Michael A. Sheehan, the telemarketers for Goldstar conversed with Union Pacific employees for the purpose of informing and persuading Union Pacific to purchase chemical products, cleaning products and lubricants through the use of improper and inappropriate rewards and/or incentives payable to and/or delivered directly to such employees' homes. Goldstar, as directed by Michael A. Sheehan, participated in the telemarketing practices which included statements and representations either knowing them to be false, or with reckless disregard as to whether they were true or false. Such statements and representations were made with the intention that Union Pacific rely on them to its detriment.

217. At all times material, Goldstar's telemarketers, conversed with UNION PACIFIC employees for the purpose of informing and persuading UNION PACIFIC to purchase chemical products, cleaning products and lubricants.

218.   Goldstar made such statements and representations either knowing them to be false, or with a reckless disregard as to whether they were true or false, in violation of 16 C.F.R. §§ 310.2 and 310.3.

219.   Goldstar made such statements and representations with the intention that UNION PACIFIC rely on them to its detriment.

220.   This count arises under the Telemarketing and Consumer Fraud Abuse and Prevention Act, 15 U.S.C. §§ 6101-6108, implemented by 16 C.F.R. § 310.10, wherein damages claimed exceed $50,000.00.

221.   At all times material, as a direct and proximate result of Goldstar's false statements, UNION PACIFIC has incurred unauthorized credit card charges for unordered and undelivered goods, excessive charges for unordered goods, overcharges for unordered goods, overcharges, excessive freight charges for shipments, and excessive restocking fees.  See Transaction Detail relating to Goldstar annexed hereto as part of Exhibit "A".

222.   As a direct and proximate result of all Goldstar's false statements, UNION PACIFIC has been damaged. Specifically, UNION PACIFIC has suffered actual damages in connection with unauthorized credit card charges for unordered and undelivered goods, excessive charges for unordered goods, overcharges for unordered goods, overcharges, excessive freight charges for shipments, and excessive restocking fees.  See Transaction Detail relating to Goldstar annexed hereto as part of Exhibit "A".

223.   UNION PACIFIC's damages and injuries were a direct and proximate result of the above-described false statements made by Goldstar to UNION PACIFIC.

**WHEREFORE**, UNION PACIFIC demands judgment against GOLDSTAR PRODUCTS, INC. for damages in an amount to be proven at trial, plus interest, costs and any and all such other and further relief as this Court deems just and proper.

## COUNT 20
### BREACH OF IMPLIED IN LAW CONTRACT (UNJUST ENRICHMENT) AGAINST T.D.R.S. PROPERTIES, INC.

224.   UNION PACIFIC repeats and realleges paragraphs 1, 7, 10, and 31 through 51 hereof as if fully set forth herein.

225.   At all times material, Michael A. Sheehan was or is a principal and/or officer in Defendant T.D.R.S. Properties, Inc. ("T.D.R.S.") and directed and was responsible for the telemarketing and other practices employed by T.D.R.S.   Under the operation or management of Michael A. Sheehan, the telemarketers for T.D.R.S. conversed with Union Pacific employees for the purpose of informing and persuading Union Pacific to purchase chemical products, cleaning products and lubricants through the use of improper and inappropriate rewards and/or incentives payable to and/or delivered directly to such employees' homes.   T.D.R.S., as directed by Michael A. Sheehan, participated in the telemarketing practices which included statements and representations either knowing them to be false, or with reckless disregard as to whether they were true or false.   Such statements and representations were made with the intention that Union Pacific rely on them to its detriment.

226.   UNION PACIFIC has conferred a series of benefits, in the form of financial windfalls and monies advanced for non-delivered goods, overcharged goods, excessive restocking charges for unordered goods that were returned, and other benefits and/or consideration on T.D.R.S.  T.D.R.S. is aware of the financial windfalls and benefits so conferred by UNION PACIFIC and have retained them.  See Transaction Detail relating to T.D.R.S. annexed hereto as part of Exhibit "A".

227.   T.D.R.S. has damaged UNION PACIFIC in that it has wrongfully accepted and retained the windfalls and benefits conferred by UNION PACIFIC and have wrongfully failed to pay or reimburse those benefits back to UNION PACIFIC.

228.   Under the circumstances, it would be inequitable and unjust for T.D.R.S. to retain the benefits conferred by UNION PACIFIC upon them, and T.D.R.S. should be disgorged of any and all such unearned, undeserved and unwarranted benefits.

**WHEREFORE**, UNION PACIFIC demands judgment against T.D.R.S. PROPERTIES, INC. for damages in an amount to be proven at trial, plus interest, costs and any and all such other and further relief as this Court deems just and proper.

### COUNT 21
### FRAUDULENT MISREPRESENTATION OF SALES TRANSACTIONS WITH THE INTENT TO DECEIVE AND DEFRAUD AGAINST T.D.R.S. PROPERTIES, INC.

229.   UNION PACIFIC repeats and realleges paragraphs 1, 7, 10, and 31 through 51 hereof as if fully set forth herein.

230.   At all times material, Michael A. Sheehan was or is a principal and/or officer in Defendant T.D.R.S. and directed and was responsible for the telemarketing and other

practices employed by T.D.R.S.  Under the operation or management of Michael A. Sheehan, the telemarketers for T.D.R.S. conversed with Union Pacific employees for the purpose of informing and persuading Union Pacific to purchase chemical products, cleaning products and lubricants through the use of improper and inappropriate rewards and/or incentives payable to and/or delivered directly to such employees' homes. T.D.R.S., as directed by Michael A. Sheehan, participated in the telemarketing practices which included statements and representations either knowing them to be false, or with reckless disregard as to whether they were true or false.  Such statements and representations were made with the intention that Union Pacific rely on them to its detriment.

231.   At all times material, T.D.R.S.'s telemarketers, conversed with UNION PACIFIC employees for the purpose of informing and persuading UNION PACIFIC to purchase chemical products, cleaning products and lubricants.

232.   T.D.R.S. made such statements and representations either knowing them to be false, or with a reckless disregard as to whether they were true or false.

233.   T.D.R.S. made such statements and representations with the intention that UNION PACIFIC rely on them to its detriment.

234.   At all times material, as a direct and proximate result of T.D.R.S.'s false statements, UNION PACIFIC has incurred unauthorized credit card charges for unordered and undelivered goods, excessive charges for unordered goods, overcharges for

unordered goods, overcharges, excessive freight charges for shipments, and excessive restocking fees.  See Transaction Detail relating to T.D.R.S. annexed hereto as part of Exhibit "A".

235.    As a direct and proximate result of all T.D.R.S.'s false statements, UNION PACIFIC has been damaged. Specifically, UNION PACIFIC has suffered actual damages in connection with unauthorized credit card charges for unordered and undelivered goods, excessive charges for unordered goods, overcharges for unordered goods, overcharges, excessive freight charges for shipments, and excessive restocking fees.  See Transaction Detail relating to T.D.R.S. annexed hereto as part of Exhibit "A".

236.    UNION PACIFIC's damages and injuries were a direct and proximate result of the above-described false statements made by T.D.R.S. to UNION PACIFIC.

**WHEREFORE**, UNION PACIFIC demands judgment against T.D.R.S. PROPERTIES, INC. for damages in an amount to be proven at trial, plus interest, costs and any and all such other and further relief as this Court deems just and proper.

## COUNT 22
### VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR
### TRADE PRACTICES ACT BY T.D.R.S. PROPERTIES, INC.

237.    UNION PACIFIC repeats and realleges paragraphs 1, 7, 10, and 31 through 51 hereof as if fully set forth herein.

238.    At all times material, Michael A. Sheehan was or is a principal and/or officer in Defendant T.D.R.S. and directed and was responsible for the telemarketing and other practices employed by T.D.R.S.   Under the operation or management of Michael A.

Sheehan, the telemarketers for T.D.R.S. conversed with Union Pacific employees for the purpose of informing and persuading Union Pacific to purchase chemical products, cleaning products and lubricants through the use of improper and inappropriate rewards and/or incentives payable to and/or delivered directly to such employees' homes. T.D.R.S., as directed by Michael A. Sheehan, participated in the telemarketing practices which included statements and representations either knowing them to be false, or with reckless disregard as to whether they were true or false.  Such statements and representations were made with the intention that Union Pacific rely on them to its detriment.

239.   At all times material, the purported sales by T.D.R.S. of chemical products, cleaning products and lubricants to UNION PACIFIC in this cause were "consumer transactions" within the scope of the Florida Deceptive and Unfair Trade Practices Act, §§ 501.201 to 501.213, Florida Statutes.

240.   In engaging in the conduct previously described, T.D.R.S. has committed unfair and deceptive trade practices in connection with the purported sale of chemical products, cleaning products and lubricants, including but not limited to: billing charges to UNION PACIFIC credit cards without authorization; failing to deliver the goods that were being charged to UNION PACIFIC credit cards; providing a choice of paying a reduced invoice price on the unordered merchandise or returning the merchandise and paying a substantial restocking fee when UNION PACIFIC disputed the bills; wrongfully utilizing telemarketing tactics to coerce UNION PACIFIC to pay for expensive products it did not

want or order; and misrepresenting and/or failing to clearly disclose all relevant information regarding the cost of the goods, the restrictions and conditions on the purchase of these items, and T.D.R.S.'s cancellation policy details.   See Transaction Detail relating to T.D.R.S. annexed hereto as part of Exhibit "A".

241.   As a result of T.D.R.S.'s unlawful conduct, UNION PACIFIC has suffered actual damages in connection with unauthorized credit card charges for unordered and undelivered goods, excessive charges for unordered goods, overcharges for unordered goods, overcharges, excessive freight charges for shipments, and excessive restocking fees.

242.   Union Pacific has retained the services of the undersigned attorneys to bring this action, and has agreed to pay them a reasonable fee.   Such fee is claimed from T.D.R.S. pursuant to  § 501.2105 and § 501.211, Florida Statues.

**WHEREFORE,** UNION PACIFIC demands judgment against T.D.R.S. PROPERTIES, INC. for damages, in an amount to be proven at trial, plus interest, costs, consequential damages, attorneys' fees pursuant to § 501.2105 and § 501.211, Florida Statutes, and any and all other relief that this Court deems just and proper.

### COUNTS 23a, 23b and 23c
### VIOLATION OF RICO BY T.D.R.S. PROPERTIES, INC.
### 18 U.S.C. § 1961 et seq.
### FOR MAIL FRAUD, WIRE FRAUND AND BANK FRAUD

243.   UNION PACIFIC repeats and realleges paragraphs 1, 7, 10, and 31 through 51 hereof as if fully set forth herein.

244.   At all times material, Michael A. Sheehan was or is a principal and/or officer in Defendant T.D.R.S. and directed and was responsible for the telemarketing and other practices employed by T.D.R.S.   Under the operation or management of Michael A. Sheehan, the telemarketers for T.D.R.S. conversed with Union Pacific employees for the purpose of informing and persuading Union Pacific to purchase chemical products, cleaning products and lubricants through the use of improper and inappropriate rewards and/or incentives payable to and/or delivered directly to such employees' homes. T.D.R.S., as directed by Michael A. Sheehan, participated in the telemarketing practices which included statements and representations either knowing them to be false, or with reckless disregard as to whether they were true or false.   Such statements and representations were made with the intention that Union Pacific rely on them to its detriment.

245.   At all times material, T.D.R.S.'s telemarketers, conversed with UNION PACIFIC employees for the purpose of informing and persuading UNION PACIFIC to purchase chemical products, cleaning products and lubricants.

246.   T.D.R.S., through its principals and/or officers, directed, authorized and/or participated in telemarketing practices which included statements and representations either knowing them to be false, or with a reckless disregard as to whether they were true or false.   T.D.R.S. made such statements and representations with the intention that UNION PACIFIC rely on them to its detriment.

247.   At all times material, as a direct and proximate result of T.D.R.S.'s false statements, UNION PACIFIC has incurred unauthorized credit card charges for unordered and undelivered goods, excessive charges for unordered goods, overcharges for unordered goods, overcharges, excessive freight charges for shipments, and excessive restocking fees.  See Transaction Detail relating to T.D.R.S. annexed hereto as part of Exhibit "A".

248.   These counts arise under the Racketeer Influenced and Corrupt Practices Act, 18 U.S.C. § 1961 et seq.

249.   T.D.R.S. is an enterprise within the meaning of 18 U.S.C. § 1961(4), which is engaged in, or the activities of which affect, interstate commerce.   The fraudulent misrepresentations detailed above were made by T.D.R.S. to Plaintiff.

## COUNT 23a MAIL FRAUD, 18 U.S.C. § 1341
### VIOLATION OF 18 U.S.C. § 1961(B)

250.   The fraudulent misrepresentations set forth in paragraphs 244-249 represented a scheme and artifice to defraud Plaintiff, which was facilitated by use of the United States Mail, caused by T.D.R.S., and resulting in mail fraud within the meaning of 18 U.S.C. § 1341.  Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(B).

251.   T.D.R.S. and T.D.R.S.'s agents, associates, and representatives, have conducted, and have conspired to conduct, the affairs of T.D.R.S. through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c), (d).

### COUNT 23b - WIRE FRAUD, 18 U.S.C. § 1343
### VIOLATION OF 18 U.S.C. § 1961(B)

252.   The fraudulent misrepresentations set forth in paragraphs 244-249 represented a scheme and artifice to defraud Plaintiff, which was facilitated by use of telephones, caused by T.D.R.S., and resulting in wire fraud within the meaning of 18 U.S.C. § 1343.  Wire fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(B).

253.   T.D.R.S. and T.D.R.S.'s agents, associates, and representatives, have conducted, and have conspired to conduct, the affairs of T.D.R.S. through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c), (d).

### COUNT 23c - BANK FRAUD, 18 U.S.C. § 1344
### VIOLATION OF 18 U.S.C. § 1961(B)

254.   The fraudulent misrepresentations set forth in paragraphs 244-249 represented a scheme and artifice to defraud Plaintiff, which was facilitated by use of the financial institutions, caused by T.D.R.S., and resulting in bank fraud within the meaning of 18 U.S.C. § 1344.

255.   Bank fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(B).

256.   T.D.R.S. and T.D.R.S.'s agents, associates, and representatives, have conducted, and have conspired to conduct, the affairs of T.D.R.S. through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c), (d).

257.    As a direct and proximate result of these violations of 18 U.S.C. §1962(c), (d), set forth in Counts 23a, 23b and 23c, Plaintiff has suffered actual damages as a result of injury to its business and  property of at least $815,479.11.

258.    T.D.R.S. is liable to Plaintiff for treble damages, together with all costs of this action plus reasonable attorneys' fees, all as provided under 18 U.S.C. § 1964(c).

**WHEREFORE,**   UNION   PACIFIC   demands   judgment   against   T.D.R.S. PROPERTIES, INC. for treble damages, in an amount to be proven at trial, plus interest, costs, attorneys' fees pursuant to 18 U.S.C. 1962(c), and any and all other relief that this Court deems just and proper.

**COUNT 24**
**VIOLATION OF TELEMARKETING RULES BY T.D.R.S. PROPERTIES, INC.**
**15 U.S.C. § 6102 et seq.**

259.    UNION PACIFIC repeats and realleges paragraphs 1, 7, 10, and 31 through 51 hereof as if fully set forth herein.

260.    At all times material, Michael A. Sheehan was or is a principal and/or officer in Defendant T.D.R.S. and directed and was responsible for the telemarketing and other practices employed by T.D.R.S.   Under the operation or management of Michael A. Sheehan, the telemarketers for T.D.R.S. conversed with Union Pacific employees for the purpose of informing and persuading Union Pacific to purchase chemical products, cleaning products and lubricants through the use of improper and inappropriate rewards and/or incentives payable to and/or delivered directly to such employees' homes. T.D.R.S., as directed by Michael A. Sheehan, participated in the telemarketing practices

which included statements and representations either knowing them to be false, or with reckless disregard as to whether they were true or false.   Such statements and representations were made with the intention that Union Pacific rely on them to its detriment.

261.   At all times material, T.D.R.S.'s telemarketers, conversed with UNION PACIFIC employees for the purpose of informing  and persuading UNION PACIFIC to purchase chemical products, cleaning products and lubricants.

262.   T.D.R.S. made such statements and representations either knowing them to be false, or with a reckless disregard as to whether they were true or false, in violation of 16 C.F.R. §§ 310.2 and 310.3.

263.   T.D.R.S. made such statements and representations with the intention that UNION PACIFIC rely on them to its detriment.

264.   This count arises under the Telemarketing and Consumer Fraud Abuse and Prevention Act, 15 U.S.C. §§ 6101-6108, implemented by 16 C.F.R. § 310.10, wherein damages claimed exceed $50,000.00.

265.   At all times material, as a direct and proximate result of T.D.R.S.'s false statements, UNION PACIFIC has incurred unauthorized credit card charges for unordered and undelivered goods, excessive charges for unordered goods, overcharges for unordered goods, overcharges, excessive freight charges for shipments, and excessive restocking fees.

266.    As a direct and proximate result of all T.D.R.S.'s false statements, UNION PACIFIC has been damaged.  Specifically, UNION PACIFIC has suffered actual damages in connection with unauthorized credit card charges for unordered and undelivered goods, excessive charges for unordered goods, overcharges for unordered goods, overcharges, excessive freight charges for shipments, and excessive restocking fees.

267.    UNION PACIFIC's damages and injuries were a direct and proximate result of the above-described false statements made by T.D.R.S. to UNION PACIFIC.

**WHEREFORE**, UNION PACIFIC demands judgment against T.D.R.S. PROPERTIES, INC. for damages in an amount to be proven at trial, plus interest, costs and any and all such other and further relief as this Court deems just and proper.

**COUNT 25**
**BREACH OF IMPLIED IN LAW CONTRACT (UNJUST ENRICHMENT)**
**AGAINST SAFETY & HEALTH MUNICIPAL SUPPLIES, INC.**

268.    UNION PACIFIC repeats and realleges paragraphs 1, 8, 10, and 31 through 51 hereof as if fully set forth herein.

269.    At all times material, Michael A. Sheehan was or is a principal and/or officer in Defendant Safety & Health Municipal Supply, Inc. ("Safety & Health") and directed and was responsible for the telemarketing and other practices employed by Safety & Health. Under the operation or management of Michael A. Sheehan, the telemarketers for Safety & Health conversed with Union Pacific employees for the purpose of informing and persuading Union Pacific to purchase chemical products, cleaning products and lubricants through the use of improper and inappropriate rewards and/or incentives payable to and/or

delivered directly to such employees' homes. Safety & Health, as directed by Michael A. Sheehan, participated in the telemarketing practices which included statements and representations either knowing them to be false, or with reckless disregard as to whether they were true or false. Such statements and representations were made with the intention that Union Pacific rely on them to its detriment.

270.    UNION PACIFIC has conferred a series of benefits, in the form of financial windfalls and monies advanced for non-delivered goods, overcharged goods, excessive restocking charges for unordered goods that were returned, and other benefits and/or consideration on Safety & Health. Safety & Health is aware of the financial windfalls and benefits so conferred by UNION PACIFIC and have retained them. See Transaction Detail relating to Safety & Health annexed hereto as part of Exhibit "A".

271.    Safety & Health has damaged UNION PACIFIC in that it has wrongfully accepted and retained the windfalls and benefits conferred by UNION PACIFIC and have wrongfully failed to pay or reimburse those benefits back to UNION PACIFIC.

272.    Under the circumstances, it would be inequitable and unjust for Safety & Health to retain the benefits conferred by UNION PACIFIC upon them, and Safety & Health should be disgorged of any and all such unearned, undeserved and unwarranted benefits.

**WHEREFORE**, UNION PACIFIC demands judgment against SAFETY & HEALTH MUNICIPAL SUPPLIES, INC. for damages in an amount to be proven at trial, plus interest, costs and any and all such other and further relief as this Court deems just and proper.

CASE NO. 06-60873-CIV-COHN

## COUNT 26
### FRAUDULENT MISREPRESENTATION OF SALES TRANSACTIONS WITH THE INTENT TO DECEIVE AND DEFRAUD AGAINST SAFETY & HEALTH MUNICIPAL SUPPLIES, INC.

273.    UNION PACIFIC repeats and realleges paragraphs 1, 8, 10, and 31 through 51 hereof as if fully set forth herein.

274.    At all times material, Michael A. Sheehan was or is a principal and/or officer in Defendant Safety & Health and directed and was responsible for the telemarketing and other practices employed by Safety & Health.  Under the operation or management of Michael A. Sheehan, the telemarketers for Safety & Health conversed with Union Pacific employees for the purpose of informing and persuading Union Pacific to purchase chemical products, cleaning products and lubricants through the use of improper and inappropriate rewards and/or incentives payable to and/or delivered directly to such employees' homes. Safety & Health, as directed by Michael A. Sheehan, participated in the telemarketing practices which included statements and representations either knowing them to be false, or with reckless disregard as to whether they were true or false.  Such statements and representations were made with the intention that Union Pacific rely on them to its detriment.

275.    At all times material, Safety & Health's telemarketers, conversed with UNION PACIFIC employees for the purpose of informing and persuading UNION PACIFIC to purchase chemical products, cleaning products and lubricants.

276.    Safety & Health made such statements and representations either knowing them to be false, or with a reckless disregard as to whether they were true or false.

Page 62 of  219

277.   Safety & Health made such statements and representations with the intention that UNION PACIFIC rely on them to its detriment.

278.   At all times material, as a direct and proximate result of Safety & Health's false statements, UNION PACIFIC has incurred unauthorized credit card charges for unordered and undelivered goods, excessive charges for unordered goods, overcharges for unordered goods, overcharges, excessive freight charges for shipments, and excessive restocking fees.  See Transaction Detail relating to Safety & Health annexed hereto as part of Exhibit "A".

279.   As a direct and proximate result of all Safety & Health's false statements, UNION PACIFIC has been damaged. Specifically, UNION PACIFIC has suffered actual damages in connection with unauthorized credit card charges for unordered and undelivered goods, excessive charges for unordered goods, overcharges for unordered goods, overcharges, excessive freight charges for shipments, and excessive restocking fees.  See Transaction Detail relating to Safety & Health annexed hereto as part of Exhibit "A".

280.   UNION PACIFIC's damages and injuries were a direct and proximate result of the above-described false statements made by Safety & Health to UNION PACIFIC.

**WHEREFORE**, UNION PACIFIC demands judgment against SAFETY & HEALTH MUNICIPAL SUPPLIES, INC. for damages in an amount to be proven at trial, plus interest, costs and any and all such other and further relief as this Court deems just and proper.

CASE NO. 06-60873-CIV-COHN

## COUNT 27
### VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR TRADE
### PRACTICES ACT BY SAFETY & HEALTH MUNICIPAL SUPPLIES, INC.

281.    UNION PACIFIC repeats and realleges paragraphs 1, 8, 10, and 31 through 51 hereof as if fully set forth herein.

282.    At all times material, Michael A. Sheehan was or is a principal and/or officer in Defendant Safety & Health and directed and was responsible for the telemarketing and other practices employed by Safety & Health.  Under the operation or management of Michael A. Sheehan, the telemarketers for Safety & Health conversed with Union Pacific employees for the purpose of informing and persuading Union Pacific to purchase chemical products, cleaning products and lubricants through the use of improper and inappropriate rewards and/or incentives payable to and/or delivered directly to such employees' homes. Safety & Health, as directed by Michael A. Sheehan, participated in the telemarketing practices which included statements and representations either knowing them to be false, or with reckless disregard as to whether they were true or false.  Such statements and representations were made with the intention that Union Pacific rely on them to its detriment.

283.    At all times material, the purported sales by Safety & Health of chemical products, cleaning products and lubricants to UNION PACIFIC in this cause were "consumer transactions" within the scope of the Florida Deceptive and Unfair Trade Practices Act, §§ 501.201 to 501.213, Florida Statutes.

284.    In engaging in the conduct previously described, Safety & Health has committed unfair and deceptive trade practices in connection with the purported sale of chemical products, cleaning products and lubricants, including but not limited to: billing charges to UNION PACIFIC credit cards without authorization; failing to deliver the goods that were being charged to UNION PACIFIC credit cards; providing a choice of paying a reduced invoice price on the unordered merchandise or returning the merchandise and paying a substantial restocking fee when UNION PACIFIC disputed the bills; wrongfully utilizing telemarketing tactics to coerce UNION PACIFIC to pay for expensive products it did not want or order; and misrepresenting and/or failing to clearly disclose all relevant information regarding the cost of the goods, the restrictions and conditions on the purchase of these items, and Safety & Health's cancellation policy details.  See Transaction Detail relating to Safety & Health annexed hereto as part of Exhibit "A".

285.    As a result of Safety & Health's unlawful conduct, UNION PACIFIC has suffered actual damages in connection with unauthorized credit card charges for unordered and undelivered goods, excessive charges for unordered goods, overcharges for unordered goods, overcharges, excessive freight charges for shipments, and excessive restocking fees.

286.    Union Pacific has retained the services of the undersigned attorneys to bring this action, and has agreed to pay them a reasonable fee.  Such fee is claimed from Safety & Health pursuant to § 501.2105 and § 501.211, Florida Statues.

CASE NO. 06-60873-CIV-COHN

**WHEREFORE,** UNION PACIFIC demands judgment against SAFETY & HEALTH MUNICIPAL SUPPLIES, INC. for damages, in an amount to be proven at trial, plus interest, costs, consequential damages, attorneys' fees pursuant to § 501.2105 and § 501.211, Florida Statutes, and any and all other relief that this Court deems just and proper.

**COUNTS 28a, 28b and 28c**
**VIOLATION OF RICO BY SAFETY & HEALTH MUNICIPAL SUPPLIES, INC.**
**18 U.S.C. § 1961 et seq.**
**FOR MAIL FRAUD, WIRE FRAUD AND BANK FRAUD**

287.   UNION PACIFIC repeats and realleges paragraphs 1, 8, 10, and 31 through 51 hereof as if fully set forth herein.

288.   At all times material, Michael A. Sheehan was or is a principal and/or officer in Defendant Safety & Health and directed and was responsible for the telemarketing and other practices employed by Safety & Health.   Under the operation or management of Michael A. Sheehan, the telemarketers for Safety & Health conversed with Union Pacific employees for the purpose of informing and persuading Union Pacific to purchase chemical products, cleaning products and lubricants through the use of improper and inappropriate rewards and/or incentives payable to and/or delivered directly to such employees' homes. Safety & Health, as directed by Michael A. Sheehan, participated in the telemarketing practices which included statements and representations either knowing them to be false, or with reckless disregard as to whether they were true or false.   Such statements and representations were made with the intention that Union Pacific rely on them to its detriment.

289.    At all times material, Safety & Health's telemarketers, conversed with UNION PACIFIC employees for the purpose of informing and persuading UNION PACIFIC to purchase chemical products, cleaning products and lubricants.

290.    Safety & Health, through its principals and/or officers, directed, authorized and/or participated in telemarketing practices which included statements and representations either knowing them to be false, or with a reckless disregard as to whether they were true or false.  Safety & Health made such statements and representations with the intention that UNION PACIFIC rely on them to its detriment.

291.    At all times material, as a direct and proximate result of Safety & Health's false statements, UNION PACIFIC has incurred unauthorized credit card charges for unordered and undelivered goods, excessive charges for unordered goods, overcharges for unordered goods, overcharges, excessive freight charges for shipments, and excessive restocking fees.  See Transaction Detail relating to Safety & Health annexed hereto as part of Exhibit "A".

292.    These counts arise under the Racketeer Influenced and Corrupt Practices Act, 18 U.S.C. § 1961 et seq.

293.    Safety & Health  is an enterprise within the meaning of 18 U.S.C. § 1961(4), which is engaged in, or the activities of which affect, interstate commerce.  The fraudulent misrepresentations detailed above were made by Safety & Health to Plaintiff.

CASE NO. 06-60873-CIV-COHN

## COUNT 28a - MAIL FRAUD, 18 U.S.C. § 1341
### VIOLATION OF 18 U.S.C. § 1961(B)

294.   The fraudulent misrepresentations set forth in paragraphs 288-293 represented a scheme and artifice to defraud Plaintiff, which was facilitated by use of the United States Mail, caused by Safety & Health, and resulting in mail fraud within the meaning of 18 U.S.C. § 1341.  Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(B).

295.   Safety & Health and Safety & Health's agents, associates, and representatives, have conducted, and have conspired to conduct, the affairs of Safety & Health through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c), (d).

## COUNT 28b - WIRE FRAUD, 18 U.S.C. § 1343
### VIOLATION OF 18 U.S.C. § 1961(B)

296.   The fraudulent misrepresentations set forth in paragraphs 288-293 represented a scheme and artifice to defraud Plaintiff, which was facilitated by use of telephones, caused by Safety & Health, and resulting in wire fraud within the meaning of 18 U.S.C. § 1343.  Wire fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(B).

297.   Safety & Health and Safety & Health's agents, associates, and representatives, have conducted, and have conspired to conduct, the affairs of Safety & Health through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c), (d).

CASE NO. 06-60873-CIV-COHN

## COUNT 28c- BANK FRAUD, 18 U.S.C. § 1344
### VIOLATION OF 18 U.S.C. § 1961(B)

298.    The fraudulent misrepresentations set forth in paragraphs 288-293 represented a scheme and artifice to defraud Plaintiff, which was facilitated by use of the financial institutions, caused by Safety & Health, and resulting in bank fraud within the meaning of 18 U.S.C. § 1344.

299.    Bank fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(B).

300.    Safety & Health and Safety & Health's agents, associates, and representatives, have conducted, and have conspired to conduct, the affairs of Safety & Health through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c), (d).

301.    As a direct and proximate result of these violations of 18 U.S.C. §1962(c), (d), set forth in Counts 28a, 28b and 28c, Plaintiff has suffered actual damages as a result of injury to its business and  property of at least $56,613.08.

302.    Safety & Health is liable to Plaintiff for treble damages, together with all costs of this action plus reasonable attorneys' fees, all as provided under 18 U.S.C. § 1964(c).

**WHEREFORE,** UNION PACIFIC demands judgment against SAFETY & HEALTH MUNICIPAL SUPPLIES, INC. for treble damages, in an amount to be proven at trial, plus interest, costs, attorneys' fees pursuant to 18 U.S.C. 1962(c), and any and all other relief that this Court deems just and proper.

CASE NO. 06-60873-CIV-COHN

**COUNT 29**
**VIOLATION OF TELEMARKETING RULES BY**
**SAFETY & HEALTH MUNICIPAL SUPPLIES, INC.**
**15 U.S.C. § 6102 et seq.**

303.    UNION PACIFIC repeats and realleges paragraphs 1, 8, 10, and 31 through 51 hereof as if fully set forth herein.

304.    At all times material, Michael A. Sheehan was or is a principal and/or officer in Defendant Safety & Health and directed and was responsible for the telemarketing and other practices employed by Safety & Health.  Under the operation or management of Michael A. Sheehan, the telemarketers for Safety & Health conversed with Union Pacific employees for the purpose of informing and persuading Union Pacific to purchase chemical products, cleaning products and lubricants through the use of improper and inappropriate rewards and/or incentives payable to and/or delivered directly to such employees' homes. Safety & Health, as directed by Michael A. Sheehan, participated in the telemarketing practices which included statements and representations either knowing them to be false, or with reckless disregard as to whether they were true or false.  Such statements and representations were made with the intention that Union Pacific rely on them to its detriment.

305.    At all times material, Safety & Health's telemarketers, conversed with UNION PACIFIC employees for the purpose of informing  and persuading UNION PACIFIC to purchase chemical products, cleaning products and lubricants.

306.     Safety & Health made such statements and representations either knowing them to be false, or with a reckless disregard as to whether they were true or false, in violation of 16 C.F.R. §§ 310.2 and 310.3.

307.     Safety & Health such statements and representations with the intention that UNION PACIFIC rely on them to its detriment.

308.     This count arises under the Telemarketing and Consumer Fraud Abuse and Prevention Act, 15 U.S.C. §§ 6101-6108, implemented by 16 C.F.R. § 310.10, wherein damages claimed exceed $50,000.00.

309.     At all times material, as a direct and proximate result of Safety & Health's false statements, UNION PACIFIC has incurred unauthorized credit card charges for unordered and undelivered goods, excessive charges for unordered goods, overcharges for unordered goods, overcharges, excessive freight charges for shipments, and excessive restocking fees.  See Transaction Detail relating to Safety & Health annexed hereto as part of Exhibit "A".

310.     As a direct and proximate result of all Safety & Health's false statements, UNION PACIFIC has been damaged. Specifically, UNION PACIFIC has suffered actual damages in connection with unauthorized credit card charges for unordered and undelivered goods, excessive charges for unordered goods, overcharges for unordered goods, overcharges, excessive freight charges for shipments, and excessive restocking fees.  See Transaction Detail relating to Safety & Health annexed hereto as part of Exhibit "A".

311.   UNION PACIFIC's damages and injuries were a direct and proximate result of the above-described false statements made by Safety & Health  to UNION PACIFIC.

**WHEREFORE**, UNION PACIFIC demands judgment against SAFETY & HEALTH MUNICIPAL SUPPLIES, INC. for damages in an amount to be proven at trial, plus interest, costs and any and all such other and further relief as this Court deems just and proper.

## COUNT 30
### BREACH OF IMPLIED IN LAW CONTRACT (UNJUST ENRICHMENT) AGAINST SACHEM SAFETY PRODUCTS, INC.

312.   UNION PACIFIC repeats and realleges paragraphs 1, 9, 10, and 31 through 51 hereof as if fully set forth herein.

313.   At all times material, Michael A. Sheehan was or is a principal and/or officer in Defendant Sachem Safety Products, Inc. ("Sachem") and directed and was responsible for the telemarketing and other practices employed by Sachem.  Under the operation or management of Michael A. Sheehan, the telemarketers for Sachem conversed with Union Pacific employees for the purpose of informing and persuading Union Pacific to purchase chemical products, cleaning products and lubricants through the use of improper and inappropriate rewards and/or incentives payable to and/or delivered directly to such employees' homes.  Sachem, as directed by Michael A. Sheehan, participated in the telemarketing practices which included statements and representations either knowing them to be false, or with reckless disregard as to whether they were true or false.  Such statements and representations were made with the intention that Union Pacific rely on them to its detriment.

314.   UNION PACIFIC has conferred a series of benefits, in the form of financial windfalls and monies advanced for non-delivered goods, overcharged goods, excessive restocking charges for unordered goods that were returned, and other benefits and/or consideration on Sachem.  Sachem is aware of the financial windfalls and benefits so conferred by UNION PACIFIC and have retained them.  See Transaction Detail relating to Sachem annexed hereto as part of Exhibit "A".

315.   Sachem  has damaged UNION PACIFIC in that it has wrongfully accepted and retained the windfalls and benefits conferred by UNION PACIFIC and have wrongfully failed to pay or reimburse those benefits back to UNION PACIFIC.

316.   Under the circumstances, it would be inequitable and unjust for Sachem to retain the benefits conferred by UNION PACIFIC upon them, and Sachem should be disgorged of any and all such unearned, undeserved and unwarranted benefits.

**WHEREFORE**, UNION PACIFIC demands judgment against SACHEM SAFETY PRODUCTS, INC. for damages in an amount to be proven at trial, plus interest, costs and any and all such other and further relief as this Court deems just and proper.

## COUNT 31
### FRAUDULENT MISREPRESENTATION OF SALES TRANSACTIONS WITH THE INTENT TO DECEIVE AND DEFRAUD AGAINST SACHEM SAFETY PRODUCTS, INC.

317.   UNION PACIFIC repeats and realleges paragraphs 1, 9, 10, 31 through 51, and 313 hereof as if fully set forth herein.

318.   At all times material, Sachem's telemarketers, conversed with UNION PACIFIC employees for the purpose of informing  and persuading UNION PACIFIC to

purchase chemical products, cleaning products and lubricants.  Under the operation or management of Michael A. Sheehan, the telemarketers for Sachem conversed with Union Pacific employees for the purpose of informing and persuading Union Pacific to purchase chemical products, cleaning products and lubricants through the use of improper and inappropriate rewards and/or incentives payable to and/or delivered directly to such employees' homes.  Sachem, as directed by Michael A. Sheehan, participated in the telemarketing practices which included statements and representations either knowing them to be false, or with reckless disregard as to whether they were true or false.  Such statements and representations were made with the intention that Union Pacific rely on them to its detriment.

319.   Sachem made such statements and representations either knowing them to be false, or with a reckless disregard as to whether they were true or false.

320.   Sachem made such statements and representations with the intention that UNION PACIFIC rely on them to its detriment.

321.   At all times material, as a direct and proximate result of Sachem's false statements, UNION PACIFIC has incurred unauthorized credit card charges for unordered and undelivered goods, excessive charges for unordered goods, overcharges for unordered goods, overcharges, excessive freight charges for shipments, and excessive restocking fees.  See Transaction Detail relating to Sachem annexed hereto as part of Exhibit "A".

322.   As a direct and proximate result of all Sachem's false statements, UNION PACIFIC has been damaged. Specifically, UNION PACIFIC has suffered actual damages in connection with unauthorized credit card charges for unordered and undelivered goods, excessive charges for unordered goods, overcharges for unordered goods, overcharges, excessive freight charges for shipments, and excessive restocking fees.  See Transaction Detail relating to Sachem annexed hereto as part of Exhibit "A".

323.   UNION PACIFIC's damages and injuries were a direct and proximate result of the above-described false statements made by Sachem to UNION PACIFIC.

**WHEREFORE**, UNION PACIFIC demands judgment against SACHEM SAFETY PRODUCTS, INC. for damages in an amount to be proven at trial, plus interest, costs and any and all such other and further relief as this Court deems just and proper.

## COUNT 32
## VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR
## TRADE PRACTICES ACT BY SACHEM SAFETY PRODUCTS, INC.

324.   UNION PACIFIC repeats and realleges paragraphs 1, 9, 10, and 31 through 51 hereof as if fully set forth herein.

325.   At all times material, Michael A. Sheehan was or is a principal and/or officer in Defendant Sachem and directed and was responsible for the telemarketing and other practices employed by Sachem.   Under the operation or management of Michael A. Sheehan, the telemarketers for Sachem conversed with Union Pacific employees for the purpose of informing and persuading Union Pacific to purchase chemical products, cleaning products and lubricants through the use of improper and inappropriate rewards

and/or incentives payable to and/or delivered directly to such employees' homes. Sachem, as directed by Michael A. Sheehan, participated in the telemarketing practices which included statements and representations either knowing them to be false, or with reckless disregard as to whether they were true or false. Such statements and representations were made with the intention that Union Pacific rely on them to its detriment.

326.   At all times material, the purported sales by Sachem of chemical products, cleaning products and lubricants to UNION PACIFIC in this cause were "consumer transactions" within the scope of the Florida Deceptive and Unfair Trade Practices Act, §§ 501.201 to 501.213, Florida Statutes.

327.   In engaging in the conduct previously described, Sachem has committed unfair and deceptive trade practices in connection with the purported sale of chemical products, cleaning products and lubricants, including but not limited to: billing charges to UNION PACIFIC credit cards without authorization; failing to deliver the goods that were being charged to UNION PACIFIC credit cards; providing a choice of paying a reduced invoice price on the unordered merchandise or returning the merchandise and paying a substantial restocking fee when UNION PACIFIC disputed the bills; wrongfully utilizing telemarketing tactics to coerce UNION PACIFIC to pay for expensive products it did not want or order; and misrepresenting and/or failing to clearly disclose all relevant information regarding the cost of the goods, the restrictions and conditions on the purchase of these items, and Sachem 's cancellation policy details. See Transaction Detail relating to Sachem annexed hereto as part of Exhibit "A".

328.    As a result of Sachem's unlawful conduct, UNION PACIFIC has suffered actual damages in connection with unauthorized credit card charges for unordered and undelivered goods, excessive charges for unordered goods, overcharges for unordered goods, overcharges, excessive freight charges for shipments, and excessive restocking fees.

329.    Union Pacific has retained the services of the undersigned attorneys to bring this action, and has agreed to pay them a reasonable fee.  Such fee is claimed from Sachem  pursuant to  § 501.2105 and § 501.211, Florida Statues.

**WHEREFORE,** UNION PACIFIC demands judgment against SACHEM SAFETY PRODUCTS, INC. for damages, in an amount to be proven at trial, plus interest, costs, consequential damages, attorneys' fees pursuant to § 501.2105 and § 501.211, Florida Statutes, and any and all other relief that this Court deems just and proper.

**COUNTS 33a, 33b and 33c**
**VIOLATION OF RICO BY SACHEM SAFETY PRODUCTS, INC.**
**18 U.S.C. § 1961 et seq.**
**FOR MAIL FRAUD, WIRE FRAUD AND BANK FRAUD**

330.    UNION PACIFIC repeats and realleges paragraphs 1, 9, 10, and 31 through 51 hereof as if fully set forth herein.

331.    At all times material, Michael A. Sheehan was or is a principal and/or officer in Defendant Sachem and directed and was responsible for the telemarketing and other practices employed by Sachem.   Under the operation or management of Michael A. Sheehan, the telemarketers for Sachem conversed with Union Pacific employees for the purpose of informing and persuading Union Pacific to purchase chemical products,

cleaning products and lubricants through the use of improper and inappropriate rewards and/or incentives payable to and/or delivered directly to such employees' homes. Sachem, as directed by Michael A. Sheehan, participated in the telemarketing practices which included statements and representations either knowing them to be false, or with reckless disregard as to whether they were true or false. Such statements and representations were made with the intention that Union Pacific rely on them to its detriment.

332. At all times material, Sachem's telemarketers, conversed with UNION PACIFIC employees for the purpose of informing and persuading UNION PACIFIC to purchase chemical products, cleaning products and lubricants.

333. Sachem, through its principals and/or officers, directed, authorized and/or participated in telemarketing practices which included statements and representations either knowing them to be false, or with a reckless disregard as to whether they were true or false. Sachem made such statements and representations with the intention that UNION PACIFIC rely on them to its detriment.

334. At all times material, as a direct and proximate result of Sachem's false statements, UNION PACIFIC has incurred unauthorized credit card charges for unordered and undelivered goods, excessive charges for unordered goods, overcharges for unordered goods, overcharges, excessive freight charges for shipments, and excessive restocking fees. See Transaction Detail relating to Sachem annexed hereto as part of Exhibit "A".

CASE NO. 06-60873-CIV-COHN

335.    These counts arise under the Racketeer Influenced and Corrupt Practices Act, 18 U.S.C. § 1961 et seq.

336.    Sachem is an enterprise within the meaning of 18 U.S.C. § 1961(4), which is engaged in, or the activities of which affect, interstate commerce.  The fraudulent misrepresentation detailed above were made by Sachem to Plaintiff.

<u>COUNT 33a - MAIL FRAUD, 18 U.S.C. § 1341</u>
<u>VIOLATION OF 18 U.S.C. § 1961(B)</u>

337.    The fraudulent misrepresentations set forth in paragraphs 331-336 represented a scheme and artifice to defraud Plaintiff, which was facilitated by use of the United States Mail, caused by Sachem, and resulting in mail fraud within the meaning of 18 U.S.C. § 1341.  Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(B).

338.    Sachem and Sachem's agents, associates, and representatives, have conducted, and have conspired to conduct, the affairs of Sachem through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c), (d).

<u>COUNT 33b - WIRE FRAUD, 18 U.S.C. § 1343</u>
<u>VIOLATION OF 18 U.S.C. § 1961(B)</u>

339.    The fraudulent misrepresentations set forth in paragraphs 331-336 represented a scheme and artifice to defraud Plaintiff, which was facilitated by use of telephones, caused by Sachem, and resulting in wire fraud within the meaning of 18 U.S.C. § 1343.  Wire fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(B).

340.    Sachem and Sachem's agents, associates, and representatives, have conducted, and have conspired to conduct, the affairs of Sachem through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c), (d).

### COUNT 33c - BANK FRAUD, 18 U.S.C. § 1344
### VIOLATION OF 18 U.S.C. § 1961(B)

341.    The fraudulent misrepresentations set forth in paragraphs 331-336 represented a scheme and artifice to defraud Plaintiff, which was facilitated by use of the financial institutions, caused by Sachem, and resulting in bank fraud within the meaning of 18 U.S.C. § 1344.

342.    Bank fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(B).

343.    Sachem and Sachem's agents, associates, and representatives, have conducted, and have conspired to conduct, the affairs of Sachem through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c), (d).

344.    As a direct and proximate result of these violations of 18 U.S.C. §1962(c), (d), as set forth in Counts 33a, 33b and 33c, Plaintiff has suffered actual damages as a result of injury to its business and  property of at least $18,309.68.

345.    Sachem is liable to Plaintiff for treble damages, together with all costs of this action plus reasonable attorneys' fees, all as provided under 18 U.S.C. § 1964(c).

**WHEREFORE,** UNION PACIFIC demands judgment against SACHEM SAFETY PRODUCTS, INC. for treble damages, in an amount to be proven at trial, plus interest,

costs, attorneys' fees pursuant to 18 U.S.C. 1962(c), and any and all other relief that this Court deems just and proper.

## COUNT 34
## VIOLATION OF TELEMARKETING RULES BY MICHAEL A. SHEEHAN
## 15 U.S.C. § 6102 et seq.

346.   UNION PACIFIC repeats and realleges paragraphs 1, 6 through 10, and 31 through 51 hereof as if fully set forth herein.

347.   At all times material, Michael A. Sheehan ("SHEEHAN") was or is a principal and/or officer in Defendants Goldstar Products, Inc., T.D.R.S. Properties, Inc., Safety & Health Municipal Supplies, Inc., Sachem Safety Products, Inc., and directed and was responsible for the telemarketing and other practices employed by Goldstar Products, Inc., T.D.R.S. Properties, Inc., Safety & Health Municipal Supplies, Inc., and Sachem Safety Products, Inc.   Under the operation or management of Michael A. Sheehan, the telemarketers for Goldstar, T.D.R.S., Safety & Health and Sachem conversed with Union Pacific employees for the purpose of informing and persuading Union Pacific to purchase chemical products, cleaning products and lubricants through the use of improper and inappropriate rewards and/or incentives payable to and/or delivered directly to such employees' homes.  These companies, as directed by Michael A. Sheehan, participated in the telemarketing practices which included statements and representations either knowing them to be false, or with reckless disregard as to whether they were true or false. Such statements and representations were made with the intention that Union Pacific rely on them to its detriment.

348.   At all times material, SHEEHAN maintained institutional control of Goldstar Products, Inc., T.D.R.S. Properties, Inc., Safety & Health Municipal Supplies, Inc., and Sachem Safety Products, Inc.

349.   Upon information and belief, SHEEHAN exclusively designed, developed and implemented the telemarketing tactics utilized by Goldstar Products, Inc., T.D.R.S. Properties, Inc., Safety & Health Municipal Supplies, Inc., and Sachem Safety Products, Inc. and he directed and controlled the telemarketers who contacted UNION PACIFIC regarding the purported sale of chemical products, cleaning products and lubricants.

350.   At all times material, SHEEHAN's telemarketers, conversed with UNION PACIFIC employees for the purpose of informing and persuading UNION PACIFIC to purchase chemical products, cleaning products and lubricants.

351.   SHEEHAN's telemarketers made such statements and representations either knowing them to be false, or with a reckless disregard as to whether they were true or false, in violation of 16 C.F.R. §§ 310.2 and 310.3.

352.   SHEEHAN's telemarketers made such statements and representations with the intention that UNION PACIFIC rely on them to its detriment.

353.   This count arises under the Telemarketing and Consumer Fraud Abuse and Prevention Act, 15 U.S.C. §§ 6101-6108, implemented by 16 C.F.R. § 310.10, wherein damages claimed exceed $50,000.00.

354.   At all times material, as a direct and proximate result of SHEEHAN's telemarketers false statements, UNION PACIFIC has incurred unauthorized credit card

charges for unordered and undelivered goods, excessive charges for unordered goods, overcharges for unordered goods, overcharges, excessive freight charges for shipments, and excessive restocking fees. See Transaction Detail relating to SHEEHAN annexed hereto as part of Exhibit "A".

355.   As a direct and proximate result of all SHEEHAN's telemarketer's false statements, UNION PACIFIC has been damaged. Specifically, UNION PACIFIC has suffered actual damages in connection with unauthorized credit card charges for unordered and undelivered goods, excessive charges for unordered goods, overcharges for unordered goods, overcharges, excessive freight charges for shipments, and excessive restocking fees. See Transaction Detail relating to SHEEHAN annexed hereto as part of Exhibit "A".

356.   UNION PACIFIC's damages and injuries were a direct and proximate result of the above-described false statements made by Sachem to UNION PACIFIC.

**WHEREFORE**, UNION PACIFIC demands judgment against MICHAEL A. SHEEHAN for damages in an amount to be proven at trial, plus interest, costs and any and all such other and further relief as this Court deems just and proper.

## COUNT 35
## VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR
## TRADE PRACTICES ACT BY MICHAEL A. SHEEHAN

357.   UNION PACIFIC repeats and realleges paragraphs 1, 6 through 10, and 31 through 51 hereof as if fully set forth herein.

358.   At all times material, SHEEHAN was or is a principal and/or officer in Defendants Goldstar Products, Inc., T.D.R.S. Properties, Inc., Safety & Health Municipal Supplies, Inc., and Sachem Safety Products, Inc., and directed and was responsible for the telemarketing and other practices employed by Goldstar Products, Inc., T.D.R.S. Properties, Inc., Safety & Health Municipal Supplies, Inc., and Sachem Safety Products, Inc.  Under the operation or management of Michael A. Sheehan, the telemarketers for Goldstar, T.D.R.S., Safety & Health and Sachem conversed with Union Pacific employees for the purpose of informing and persuading Union Pacific to purchase chemical products, cleaning products and lubricants through the use of improper and inappropriate rewards and/or incentives payable to and/or delivered directly to such employees' homes.  These companies, as directed by Michael A. Sheehan, participated in the telemarketing practices which included statements and representations either knowing them to be false, or with reckless disregard as to whether they were true or false.   Such statements and representations were made with the intention that Union Pacific rely on them to its detriment.

359.   At all times material, SHEEHAN maintained institutional control of Goldstar Products, Inc., T.D.R.S. Properties, Inc., Safety & Health Municipal Supplies, Inc., and Sachem Safety Products, Inc.

360.   Upon information and belief, SHEEHAN exclusively designed, developed and implemented the telemarketing tactics utilized by Goldstar Products, Inc., T.D.R.S. Properties, Inc., Safety & Health Municipal Supplies, Inc., and Sachem Safety Products,

Inc. and he directed and controlled the telemarketers who contacted UNION PACIFIC regarding the purported sale of chemical products, cleaning products and lubricants.

361.    SHEEHAN participated directly in the deceptive practices or acts of Goldstar Products, Inc., T.D.R.S. Properties, Inc., Safety & Health Municipal Supplies, Inc., and Sachem Safety Products, Inc. and/or possessed the authority to control the deceptive practices or acts perpetrated by Goldstar Products, Inc., T.D.R.S. Properties, Inc., Safety & Health Municipal Supplies, Inc., and Sachem Safety Products, Inc. in connection with the purported sale of chemical products, cleaning products and lubricants to UNION PACIFIC, including but not limited to: billing charges to UNION PACIFIC credit cards without authorization; failing to deliver the goods that were being charged to UNION PACIFIC credit cards; providing a choice of paying a reduced invoice on the unordered merchandise or returning the merchandise and paying a substantial restocking fee when UNION PACIFIC disputed the bills; wrongfully utilizing telemarketing tactics to coerce UNION PACIFIC to pay for expensive products it did not want to order, and misrepresenting and/or failing to clearly disclose all relevant information regarding the cost of the goods, the restrictions and conditions on the purchase of these items, and the cancellation policy details of Goldstar Products, Inc., T.D.R.S. Properties, Inc., Safety & Health Municipal Supplies, Inc., and Sachem Safety Products, Inc.  See Transaction Detail relating to SHEEHAND annexed hereto as part of Exhibit "A".

362.    SHEEHAN's actions constitute a violation of the Florida Deceptive Trade Practices Act, §501.201, *et seq.*, Florida Statutes.

CASE NO. 06-60873-CIV-COHN

363.   UNION PACIFIC has retained the services of the undersigned attorneys to bring this action, and has agreed to pay them a reasonable fee.  Such fee is claimed from SHEEHAN pursuant to §501.2105 and §501.211, Florida Statutes.

**WHEREFORE**, UNION PACIFIC demands judgment against MICHAEL A. SHEEHAN for damages, in an amount to be proven at trial, plus interest, costs, consequential damages, attorneys' fees pursuant to §501.2105 and §501.211, Florida Statutes, and any and all other relief that this Court deems just and proper.

### COUNTS 36a, 36b and 36c
### VIOLATION OF RICO BY MICHAEL A. SHEEHAN
### 18 U.S.C. § 1961 et seq.
### FOR MAIL FRAUD, WIRE FRAUD AND BANK FRAUD

364.   UNION PACIFIC repeats and realleges paragraphs 1, 6 through 10, and 31 through 51 hereof as if fully set forth herein.

365.   At all times material, SHEEHAN was or is a principal and/or officer Defendants Goldstar Products, Inc., T.D.R.S. Properties, Inc., Safety & Health Municipal Supplies, Inc., and Sachem Safety Products, Inc., and directed and was responsible for the telemarketing and other practices employed by Goldstar Products, Inc., T.D.R.S. Properties, Inc., Safety & Health Municipal Supplies, Inc., Sachem Safety Products, Inc. Under the operation or management of Michael A. Sheehan, the telemarketers for Goldstar, T.D.R.S., Safety & Health and Sachem conversed with Union Pacific employees for the purpose of informing and persuading Union Pacific to purchase chemical products, cleaning products and lubricants through the use of improper and inappropriate rewards and/or incentives payable to and/or delivered directly to such employees' homes.  These

companies, as directed by Michael A. Sheehan, participated in the telemarketing practices which included statements and representations either knowing them to be false, or with reckless disregard as to whether they were true or false. Such statements and representations were made with the intention that Union Pacific rely on them to its detriment.

366.   At all times material, SHEEHAN's telemarketers, conversed with UNION PACIFIC employees for the purpose of informing  and persuading UNION PACIFIC to purchase chemical products, cleaning products and lubricants.

367.   SHEEHAN directed, authorized and/or participated in telemarketing practices which included statements and representations either knowing them to be false, or with a reckless disregard as to whether they were true or false.  SHEEHAN made or caused such statements and representations with the intention that UNION PACIFIC rely on them to its detriment.

368.   At all times material, as a direct and proximate result of SHEEHAN's false statements, UNION PACIFIC has incurred unauthorized credit card charges for unordered and undelivered goods, excessive charges for unordered goods, overcharges for unordered goods, overcharges, excessive freight charges for shipments, and excessive restocking fees.

369.   These counts arise under the Racketeer Influenced and Corrupt Practices Act, 18 U.S.C. § 1961 et seq.

CASE NO. 06-60873-CIV-COHN

370.    SHEEHAN is an enterprise within the meaning of 18 U.S.C. § 1961(4), which is engaged in, or the activities of which affect, interstate commerce.   The fraudulent misrepresentation detailed above were made by SHEEHAN to Plaintiff.

## COUNT 36a - MAIL FRAUD, 18 U.S.C. § 1341
## VIOLATION OF 18 U.S.C. § 1961(B)

371.    The fraudulent misrepresentations set forth in paragraphs 365-370 represented a scheme and artifice to defraud Plaintiff, which was facilitated by use of the United States Mail, caused by SHEEHAN, and resulting in mail fraud within the meaning of 18 U.S.C. § 1341.  Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(B).

372.    SHEEHAN and SHEEHAN's agents, associates, and representatives, have conducted, and have conspired to conduct, the affairs of SHEEHAN through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c), (d).

## COUNT 36b - WIRE FRAUD, 18 U.S.C. § 1343
## VIOLATION OF 18 U.S.C. § 1961(B)

373.    The fraudulent misrepresentations set forth in paragraphs 365-370 represented a scheme and artifice to defraud Plaintiff, which was facilitated by use of telephones, caused by SHEEHAN, and resulting in wire fraud within the meaning of 18 U.S.C. § 1343.  Wire fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(B).

374.    SHEEHAN and SHEEHAN's agents, associates, and representatives, have conducted, and have conspired to conduct, the affairs of SHEEHAN through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c), (d).

## COUNT 36c - BANK FRAUD, 18 U.S.C. § 1344
## VIOLATION OF 18 U.S.C. § 1961(B)

375.    The fraudulent misrepresentations set forth in paragraphs 365-370 represented a scheme and artifice to defraud Plaintiff, which was facilitated by use of the financial institutions, caused by SHEEHAN, and resulting in bank fraud within the meaning of 18 U.S.C. § 1344.

376.    Bank fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(B).

377.    SHEEHAN and SHEEHAN's agents, associates, and representatives, have conducted, and have conspired to conduct, the affairs of SHEEHAN through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c), (d).

378.    As a direct and proximate result of these violations of 18 U.S.C. §1962(c), (d), as set forth in Counts 36a, 36b and 36c, Plaintiff has suffered actual damages as a result of injury to its business and  property of at least $890,401.87.

379.    SHEEHAN is liable to Plaintiff for treble damages, together with all costs of this action plus reasonable attorneys' fees, all as provided under 18 U.S.C. § 1964(c).

**WHEREFORE,** UNION PACIFIC demands judgment against MICHAEL A. SHEEHAN for treble damages, in an amount to be proven at trial, plus interest, costs,

attorneys' fees pursuant to 18 U.S.C. 1962(c), and any and all other relief that this Court deems just and proper.

## COUNT 37
### BREACH OF IMPLIED IN LAW CONTRACT (UNJUST ENRICHMENT) AGAINST GRANITE INDUSTRIES, INC.

380.    UNION PACIFIC repeats and realleges paragraphs 1, 11, 13, and 31 through 51 hereof as if fully set forth herein.

381.    At all times material, Cynthia Gentner was or is a principal and/or officer in Defendant Granite Industries, Inc. ("Granite") and directed and was responsible for the telemarketing and other practices employed by Granite.

382.    UNION PACIFIC has conferred a series of benefits, in the form of financial windfalls and monies advanced for non-delivered goods, overcharged goods, excessive restocking charges for unordered goods that were returned, and other benefits and/or consideration on Granite.  Granite is aware of the financial windfalls and benefits so conferred by UNION PACIFIC and have retained them.

383.    Granite has damaged UNION PACIFIC in that it has wrongfully accepted and retained the windfalls and benefits conferred by UNION PACIFIC and have wrongfully failed to pay or reimburse those benefits back to UNION PACIFIC.

384.    Under the circumstances, it would be inequitable and unjust for Granite to retain the benefits conferred by UNION PACIFIC upon them, and Granite should be disgorged of any and all such unearned, undeserved and unwarranted benefits.

**WHEREFORE**, UNION PACIFIC demands judgment against GRANITE INDUSTRIES, INC. for damages in an amount to be proven at trial, plus interest, costs and any and all such other and further relief as this Court deems just and proper.

## COUNT 38
## FRAUDULENT MISREPRESENTATION OF SALES TRANSACTIONS WITH THE INTENT TO DECEIVE AND DEFRAUD AGAINST GRANITE INDUSTRIES, INC.

385.    UNION PACIFIC repeats and realleges paragraphs 1, 11, 13, and 31 through 51 hereof as if fully set forth herein.

386.    At all times material, Cynthia Gentner was or is a principal and/or officer in Defendant Granite and directed and was responsible for the telemarketing and other practices employed by Granite.

387.    At all times material, Granite's telemarketers, conversed with UNION PACIFIC employees for the purpose of informing and persuading UNION PACIFIC to purchase chemical products, cleaning products and lubricants.

388.    Granite made such statements and representations either knowing them to be false, or with a reckless disregard as to whether they were true or false.

389.    Granite made such statements and representations with the intention that UNION PACIFIC rely on them to its detriment.

390.    At all times material, as a direct and proximate result of Granite's false statements, UNION PACIFIC has incurred unauthorized credit card charges for unordered and undelivered goods, excessive charges for unordered goods, overcharges for

unordered goods, overcharges, excessive freight charges for shipments, and excessive restocking fees.

391.   As a direct and proximate result of all Granite's false statements, UNION PACIFIC has been damaged. Specifically, UNION PACIFIC has suffered actual damages in connection with unauthorized credit card charges for unordered and undelivered goods, excessive charges for unordered goods, overcharges for unordered goods, overcharges, excessive freight charges for shipments, and excessive restocking fees.

392.   UNION PACIFIC's damages and injuries were a direct and proximate result of the above-described false statements made by Granite to UNION PACIFIC.

**WHEREFORE**, UNION PACIFIC demands judgment against GRANITE INDUSTRIES, INC. for damages in an amount to be proven at trial, plus interest, costs and any and all such other and further relief as this Court deems just and proper.

## COUNT 39
### VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT BY GRANITE INDUSTRIES, INC.

393.   UNION PACIFIC repeats and realleges paragraphs 1, 11, 13, and 31 through 51 hereof as if fully set forth herein.

394.   At all times material, Cynthia Gentner was or is a principal and/or officer in Defendant Granite and directed and was responsible for the telemarketing and other practices employed by Granite.

395.   At all times material, the purported sales by Granite of chemical products, cleaning products and lubricants to UNION PACIFIC in this cause were "consumer

transactions" within the scope of the Florida Deceptive and Unfair Trade Practices Act, §§ 501.201 to 501.213, Florida Statutes.

396.    In engaging in the conduct previously described, Granite has committed unfair and deceptive trade practices in connection with the purported sale of chemical products, cleaning products and lubricants, including but not limited to: billing charges to UNION PACIFIC credit cards without authorization; failing to deliver the goods that were being charged to UNION PACIFIC credit cards; providing a choice of paying a reduced invoice price on the unordered merchandise or returning the merchandise and paying a substantial restocking fee when UNION PACIFIC disputed the bills; wrongfully utilizing telemarketing tactics to coerce UNION PACIFIC to pay for expensive products it did not want or order; and misrepresenting and/or failing to clearly disclose all relevant information regarding the cost of the goods, the restrictions and conditions on the purchase of these items, and Granite's cancellation policy details.

397.    As a result of Granite's unlawful conduct, UNION PACIFIC has suffered actual damages in connection with unauthorized credit card charges for unordered and undelivered goods, excessive charges for unordered goods, overcharges for unordered goods, overcharges, excessive freight charges for shipments, and excessive restocking fees.

398.    Union Pacific has retained the services of the undersigned attorneys to bring this action, and has agreed to pay them a reasonable fee.  Such fee is claimed from Granite pursuant to  § 501.2105 and § 501.211, Florida Statues.

CASE NO. 06-60873-CIV-COHN

**WHEREFORE,** UNION PACIFIC demands judgment against GRANITE INDUSTRIES, INC. for damages, in an amount to be proven at trial, plus interest, costs, consequential damages, attorneys' fees pursuant to § 501.2105 and § 501.211, Florida Statutes, and any and all other relief that this Court deems just and proper.

## COUNT 40
## VIOLATION OF RICO BY GRANITE INDUSTRIES, INC.
## 18 U.S.C. § 1961 et seq.

399.   UNION PACIFIC repeats and realleges paragraphs 1, 11, 13, and 31 through 51 hereof as if fully set forth herein.

400.   At all times material, Cynthia Gentner was or is a principal and/or officer in Defendant Granite and directed and was responsible for the telemarketing and other practices employed by Granite.

401.   At all times material, Granite's telemarketers, conversed with UNION PACIFIC employees for the purpose of informing and persuading UNION PACIFIC to purchase chemical products, cleaning products and lubricants.

402.   Granite, through its principals and/or officers, directed, authorized and/or participated in telemarketing practices which included statements and representations either knowing them to be false, or with a reckless disregard as to whether they were true or false. Granite made such statements and representations with the intention that UNION PACIFIC rely on them to its detriment.

403.   At all times material, as a direct and proximate result of Granite's false statements, UNION PACIFIC has incurred unauthorized credit card charges for unordered and undelivered goods, excessive charges for unordered goods, overcharges for unordered goods, overcharges, excessive freight charges for shipments, and excessive restocking fees.

404.   This count arises under the Racketeer Influenced and Corrupt Practices Act, 18 U.S.C. § 1961 et seq.

405.   Granite is an enterprise within the meaning of 18 U.S.C. § 1961(4), which is engaged in, or the activities of which affect, interstate commerce.   The fraudulent misrepresentation detailed above were made by Granite  to Plaintiff.

406.   The fraudulent misrepresentation set forth above represented a scheme and artifice to defraud Plaintiff, which was facilitated by use of the United States Mail, caused by Granite, and resulting in mail fraud within the meaning of 18 U.S.C. § 1341.

407.   Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(B).

408.   The fraudulent misrepresentation set forth above represented a scheme and artifice to defraud Plaintiff, which was facilitated by use of telephones, caused by Granite, and resulting in wire fraud within the meaning of 18 U.S.C. § 1343.

409.   Wire fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(B).

410.    The fraudulent misrepresentations set forth above represented a scheme and artifice to defraud Plaintiff, which was facilitated by use of the financial institutions, caused by Granite, and resulting in bank fraud within the meaning of 18 U.S.C. § 1344.

411.    Bank fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(B).

412.    Granite and Granite's agents, associates, and representatives, have conducted, and have conspired to conduct, the affairs of Granite through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c), (d).

413.    As a direct and proximate cause result of these violations of 18 U.S.C. §1962(c), (d), Plaintiff has suffered actual damages as a result of injury to its business and property of at least $116,596.95.

414.    Granite is liable to Plaintiff for treble damages, together with all costs of this action plus reasonable attorneys' fees, all as provided under 18 U.S.C. § 1964(c).

**WHEREFORE,** UNION PACIFIC demands judgment against GRANITE INDUSTRIES, INC.  for treble damages, in an amount to be proven at trial, plus interest, costs, attorneys' fees pursuant to 18 U.S.C. 1962(c), and any and all other relief that this Court deems just and proper.

## COUNT 41
### VIOLATION OF TELEMARKETING RULES BY GRANITE INDUSTRIES, INC. 15 U.S.C. § 6102 et seq.

415.    UNION PACIFIC repeats and realleges paragraphs 1, 11, 13, and 31 through 51 hereof as if fully set forth herein.

416.   At all times material, Cynthia Gentner was or is a principal and/or officer in Defendant Granite and directed and was responsible for the telemarketing and other practices employed by Granite.

417.   At all times material, Granite's telemarketers, conversed with UNION PACIFIC employees for the purpose of informing and persuading UNION PACIFIC to purchase chemical products, cleaning products and lubricants.

418.   Granite made such statements and representations either knowing them to be false, or with a reckless disregard as to whether they were true or false, in violation of 16 C.F.R. §§ 310.2 and 310.3.

419.   Granite such statements and representations with the intention that UNION PACIFIC rely on them to its detriment.

420.   This count arises under the Telemarketing and Consumer Fraud Abuse and Prevention Act, 15 U.S.C. §§ 6101-6108, implemented by 16 C.F.R. § 310.10, wherein damages claimed exceed $50,000.00.

421.   At all times material, as a direct and proximate result of Granite's false statements, UNION PACIFIC has incurred unauthorized credit card charges for unordered and undelivered goods, excessive charges for unordered goods, overcharges for unordered goods, overcharges, excessive freight charges for shipments, and excessive restocking fees.

422.   As a direct and proximate result of all Granite's false statements, UNION PACIFIC has been damaged. Specifically, UNION PACIFIC has suffered actual damages

in connection with unauthorized credit card charges for unordered and undelivered goods, excessive charges for unordered goods, overcharges for unordered goods, overcharges, excessive freight charges for shipments, and excessive restocking fees.

423.   UNION PACIFIC's damages and injuries were a direct and proximate result of the above-described false statements made by Granite to UNION PACIFIC.

**WHEREFORE**, UNION PACIFIC demands judgment against GRANITE INDUSTRIES, INC. for damages in an amount to be proven at trial, plus interest, costs and any and all such other and further relief as this Court deems just and proper.

## COUNT 42
## BREACH OF IMPLIED IN LAW CONTRACT (UNJUST ENRICHMENT) AGAINST CYN-LEX, INC.

424.   UNION PACIFIC repeats and realleges paragraphs 1, 12, 13, and 31 through 51 hereof as if fully set forth herein.

425.   At all times material, Cynthia Gentner was or is a principal and/or officer in Defendant Cyn-Lex, Inc. ("CYN-LEX") and directed and was responsible for the telemarketing and other practices employed by CYN-LEX.

426.   UNION PACIFIC has conferred a series of benefits, in the form of financial windfalls and monies advanced for non-delivered goods, overcharged goods, excessive restocking charges for unordered goods that were returned, and other benefits and/or consideration on CYN-LEX.  CYN-LEX is aware of the financial windfalls and benefits so conferred by UNION PACIFIC and have retained them.

427.   CYN-LEX has damaged UNION PACIFIC in that it has wrongfully accepted and retained the windfalls and benefits conferred by UNION PACIFIC and have wrongfully failed to pay or reimburse those benefits back to UNION PACIFIC.

428.    Under the circumstances, it would be inequitable and unjust for CYN-LEX to retain the benefits conferred by UNION PACIFIC upon them, and CYN-LEX should be disgorged of any and all such unearned, undeserved and unwarranted benefits.

**WHEREFORE**, UNION PACIFIC demands judgment against CYN-LEX, INC. for damages in an amount to be proven at trial, plus interest, costs and any and all such other and further relief as this Court deems just and proper.

### COUNT 43
### FRAUDULENT MISREPRESENTATION OF SALES TRANSACTIONS WITH THE INTENT TO DECEIVE AND DEFRAUD AGAINST CYN-LEX, INC.

429.    UNION PACIFIC repeats and realleges paragraphs 1, 12, 13, and 31 through 51 hereof as if fully set forth herein.

430.    At all times material, Cynthia Gentner was or is a principal and/or officer in Defendant CYN-LEX and directed and was responsible for the telemarketing and other practices employed by CYN-LEX.

431.    At all times material, CYN-LEX's telemarketers, conversed with UNION PACIFIC employees for the purpose of informing and persuading UNION PACIFIC to purchase chemical products, cleaning products and lubricants.

432.    CYN-LEX made such statements and representations either knowing them to be false, or with a reckless disregard as to whether they were true or false.

433.    CYN-LEX made such statements and representations with the intention that UNION PACIFIC rely on them to its detriment.

434.    At all times material, as a direct and proximate result of CYN-LEX's false statements, UNION PACIFIC has incurred unauthorized credit card charges for unordered and undelivered goods, excessive charges for unordered goods, overcharges for unordered goods, overcharges, excessive freight charges for shipments, and excessive restocking fees.

435.    As a direct and proximate result of all CYN-LEX's false statements, UNION PACIFIC has been damaged. Specifically, UNION PACIFIC has suffered actual damages in connection with unauthorized credit card charges for unordered and undelivered goods, excessive charges for unordered goods, overcharges for unordered goods, overcharges, excessive freight charges for shipments, and excessive restocking fees.

436.    UNION PACIFIC's damages and injuries were a direct and proximate result of the above-described false statements made by CYN-LEX to UNION PACIFIC.

**WHEREFORE**, UNION PACIFIC demands judgment against CYN-LEX, INC. for damages in an amount to be proven at trial, plus interest, costs and any and all such other and further relief as this Court deems just and proper.

## COUNT 44
### VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT BY CYN-LEX, INC.

437.    UNION PACIFIC repeats and realleges paragraphs 1, 12, 13, and 31 through 51 hereof as if fully set forth herein.

438.    At all times material, Cynthia Gentner was or is a principal and/or officer in Defendant CYN-LEX and directed and was responsible for the telemarketing and other practices employed by CYN-LEX.

439.    At all times material, the purported sales by CYN-LEX of chemical products, cleaning products and lubricants to UNION PACIFIC in this cause were "consumer transactions" within the scope of the Florida Deceptive and Unfair Trade Practices Act, §§ 501.201 to 501.213, Florida Statutes.

440.    In engaging in the conduct previously described, CYN-LEX has committed unfair and deceptive trade practices in connection with the purported sale of chemical products, cleaning products and lubricants, including but not limited to: billing charges to UNION PACIFIC credit cards without authorization; failing to deliver the goods that were being charged to UNION PACIFIC credit cards; providing a choice of paying a reduced invoice price on the unordered merchandise or returning the merchandise and paying a substantial restocking fee when UNION PACIFIC disputed the bills; wrongfully utilizing telemarketing tactics to coerce UNION PACIFIC to pay for expensive products it did not want or order; and misrepresenting and/or failing to clearly disclose all relevant information regarding the cost of the goods, the restrictions and conditions on the purchase of these items, and CYN-LEX's cancellation policy details.

441.    As a result of CYN-LEX's unlawful conduct, UNION PACIFIC has suffered actual damages in connection with unauthorized credit card charges for unordered and undelivered goods, excessive charges for unordered goods, overcharges for unordered

goods, overcharges, excessive freight charges for shipments, and excessive restocking fees.

442.   Union Pacific has retained the services of the undersigned attorneys to bring this action, and has agreed to pay them a reasonable fee.  Such fee is claimed from CYN-LEX pursuant to  § 501.2105 and § 501.211, Florida Statues.

**WHEREFORE,** UNION PACIFIC demands judgment against CYN-LEX, INC. for damages, in an amount to be proven at trial, plus interest, costs, consequential damages, attorneys' fees pursuant to § 501.2105 and § 501.211, Florida Statutes, and any and all other relief that this Court deems just and proper.

### COUNT 45
### VIOLATION OF RICO BY CYN-LEX, INC.
### 18 U.S.C. § 1961 et seq.

443.   UNION PACIFIC repeats and realleges paragraphs 1, 12, 13, and 31 through 51 hereof as if fully set forth herein.

444.   At all times material, Cynthia Gentner was or is a principal and/or officer in Defendant CYN-LEX and directed and was responsible for the telemarketing and other practices employed by CYN-LEX.

445.   At all times material, CYN-LEX's telemarketers, conversed with UNION PACIFIC employees for the purpose of informing  and persuading UNION PACIFIC to purchase chemical products, cleaning products and lubricants.

446.   CYN-LEX, through its principals and/or officers, directed, authorized and/or participated in telemarketing practices which included statements and representations either

knowing them to be false, or with a reckless disregard as to whether they were true or false. CYN-LEX made such statements and representations with the intention that UNION PACIFIC rely on them to its detriment.

447.    At all times material, as a direct and proximate result of CYN-LEX's false statements, UNION PACIFIC has incurred unauthorized credit card charges for unordered and undelivered goods, excessive charges for unordered goods, overcharges for unordered goods, overcharges, excessive freight charges for shipments, and excessive restocking fees.

448.    This count arises under the Racketeer Influenced and Corrupt Practices Act, 18 U.S.C. § 1961 et seq.

449.    CYN-LEX is an enterprise within the meaning of 18 U.S.C. § 1961(4), which is engaged in, or the activities of which affect, interstate commerce.   The fraudulent misrepresentation detailed above were made by CYN-LEX  to Plaintiff.

450.    The fraudulent misrepresentation set forth above represented a scheme and artifice to defraud Plaintiff, which was facilitated by use of the United States Mail, caused by CYN-LEX , and resulting in mail fraud within the meaning of 18 U.S.C. § 1341.

451.    Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(B).

452.    The fraudulent misrepresentation set forth above represented a scheme and artifice to defraud Plaintiff, which was facilitated by use of telephones, caused by CYN-LEX, and resulting in wire fraud within the meaning of 18 U.S.C. § 1343.

453.    Wire fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(B).

454.    The fraudulent misrepresentation set forth above represented a scheme and artifice to defraud Plaintiff, which was facilitated by use of the financial institutions, caused by CYN-LEX , and resulting in bank fraud within the meaning of 18 U.S.C. § 1344.

455.    Bank fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(B).

456.    CYN-LEX  and CYN-LEX's agents, associates, and representatives, have conducted, and have conspired to conduct, the affairs of CYN-LEX  through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c), (d).

457.    As a direct and proximate cause result of these violations of 18 U.S.C. §1962(c), (d), Plaintiff has suffered actual damages as a result of injury to its business and property of at least $116,596.95.

458.    CYN-LEX is liable to Plaintiff for treble damages, together with all costs of this action plus reasonable attorneys' fees, all as provided under 18 U.S.C. § 1964(c).

**WHEREFORE,** UNION PACIFIC demands judgment against CYN-LEX, INC. for treble damages, in an amount to be proven at trial, plus interest, costs, attorneys' fees pursuant to 18 U.S.C. 1962(c), and any and all other relief that this Court deems just and proper.

## COUNT 46
## VIOLATION OF TELEMARKETING RULES BY
## CYN-LEX, INC.
## 15 U.S.C. § 6102 et seq.

459.     UNION PACIFIC repeats and realleges paragraphs 1, 12, 13, and 31 through 51 hereof as if fully set forth herein.

460.     At all times material, Cynthia Gentner was or is a principal and/or officer in Defendant CYN-LEX and directed and was responsible for the telemarketing and other practices employed by CYN-LEX.

461.     At all times material, CYN-LEX's telemarketers, conversed with UNION PACIFIC employees for the purpose of informing and persuading UNION PACIFIC to purchase chemical products, cleaning products and lubricants.

462.     CYN-LEX made such statements and representations either knowing them to be false, or with a reckless disregard as to whether they were true or false, in violation of 16 C.F.R. §§ 310.2 and 310.3.

463.     CYN-LEX such statements and representations with the intention that UNION PACIFIC rely on them to its detriment.

464.     This count arises under the Telemarketing and Consumer Fraud Abuse and Prevention Act, 15 U.S.C. §§ 6101-6108, implemented by 16 C.F.R. § 310.10, wherein damages claimed exceed $50,000.00.

465.     At all times material, as a direct and proximate result of CYN-LEX 's false statements, UNION PACIFIC has incurred unauthorized credit card charges for unordered and undelivered goods, excessive charges for unordered goods, overcharges for unordered

goods, overcharges, excessive freight charges for shipments, and excessive restocking fees.

466.    As a direct and proximate result of all CYN-LEX 's false statements, UNION PACIFIC has been damaged. Specifically, UNION PACIFIC has suffered actual damages in connection with unauthorized credit card charges for unordered and undelivered goods, excessive charges for unordered goods, overcharges for unordered goods, overcharges, excessive freight charges for shipments, and excessive restocking fees.

467.    UNION PACIFIC's damages and injuries were a direct and proximate result of the above-described false statements made by CYN-LEX  to UNION PACIFIC.

**WHEREFORE**, UNION PACIFIC demands judgment against CYN-LEX, INC. for damages in an amount to be proven at trial, plus interest, costs and any and all such other and further relief as this Court deems just and proper.

## COUNT 47
### VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT BY CYNTHIA GENTNER

468.    UNION PACIFIC repeats and realleges  paragraphs 1, 11 through 13, and 31 through 51 hereof as if fully set forth herein.

469.    At all times material, Cynthia Gentner ("GENTNER") was or is a principal and/or officer in Defendants Granite Industries, Inc. and Cyn-Lex, Inc., and directed and was responsible for the telemarketing and other practices employed by Granite Industries, Inc. and Cyn-Lex, Inc.

CASE NO. 06-60873-CIV-COHN

470.     At all times material, GENTNER maintained institutional control of Granite
Industries, Inc. and Cyn-Lex, Inc.

471.     Upon information and belief, GENTNER exclusively designed, developed and
implemented the telemarketing tactics utilized by Granite Industries, Inc. and Cyn-Lex, Inc.
and she directed and controlled the telemarketers who contacted UNION PACIFIC
regarding the purported sale of chemical products, cleaning products and lubricants.

472.     GENTNER participated directly in the deceptive practices or acts of Granite
Industries, Inc. and Cyn-Lex, Inc. and/or possessed the authority to control the deceptive
practices or acts perpetrated by Granite Industries, Inc. and Cyn-Lex, Inc. in connection with
the purported sale of chemical products, cleaning products and lubricants to UNION
PACIFIC, including but not limited to: billing charges to UNION PACIFIC credit cards without
authorization; failing to deliver the goods that were being charged to UNION PACIFIC credit
cards; providing a choice of paying a reduced invoice on the unordered merchandise or
returning the merchandise and paying a substantial restocking fee when UNION PACIFIC
disputed the bills; wrongfully utilizing telemarketing tactics to coerce UNION PACIFIC to pay
for expensive products it did not want to order, and misrepresenting and/or failing to clearly
disclose all relevant information regarding the cost of the goods, the restrictions and
conditions on the purchase of these items, and the cancellation policy details of Granite
Industries, Inc. and Cyn-Lex, Inc.

473.     GENTNER's actions constitute a violation of the Florida Deceptive Trade
Practices Act, §501.201, *et seq.*, Florida Statutes.

CASE NO. 06-60873-CIV-COHN

474.   UNION PACIFIC has retained the services of the undersigned attorneys to bring this action, and has agreed to pay them a reasonable fee.  Such fee is claimed from GENTNER pursuant to §501.2105 and §501.211, Florida Statutes.

**WHEREFORE**, UNION PACIFIC demands judgment against CYNTHIA GENTNER for damages, in an amount to be proven at trial, plus interest, costs, consequential damages, attorneys' fees pursuant to §501.2105 and §501.211, Florida Statutes, and any and all other relief that this Court deems just and proper.

**COUNT 48**
**VIOLATION OF RICO BY CYNTHIA GENTNER**
**18 U.S.C. § 1961 et seq.**

475.   UNION PACIFIC repeats and realleges paragraphs 1, 11 through 13, and 31 through 51 hereof as if fully set forth herein.

476.   At all times material, GENTNER was or is a principal and/or officer in Defendants Granite Industries, Inc. and Cyn-Lex, Inc., and directed and was responsible for the telemarketing and other practices employed by Granite Industries, Inc. and Cyn-Lex, Inc.

477.   At all times material, GENTNER's telemarketers, conversed with UNION PACIFIC employees for the purpose of informing  and persuading UNION PACIFIC to purchase chemical products, cleaning products and lubricants.

478.   GENTNER directed, authorized and/or participated in telemarketing practices which included statements and representations either knowing them to be false, or with a reckless disregard as to whether they were true or false.  GENTNER made or caused such

statements and representations with the intention that UNION PACIFIC rely on them to its detriment.

479. At all times material, as a direct and proximate result of GENTNER's false statements, UNION PACIFIC has incurred unauthorized credit card charges for unordered and undelivered goods, excessive charges for unordered goods, overcharges for unordered goods, overcharges, excessive freight charges for shipments, and excessive restocking fees.

480. This count arises under the Racketeer Influenced and Corrupt Practices Act, 18 U.S.C. § 1961 et seq.

481. GENTNER is an enterprise within the meaning of 18 U.S.C. § 1961(4), which is engaged in, or the activities of which affect, interstate commerce. The fraudulent misrepresentation detailed above were made by GENTNER to Plaintiff.

482. The fraudulent misrepresentation set forth above represented a scheme and artifice to defraud Plaintiff, which was facilitated by use of the United States Mail, caused by GENTNER, and resulting in mail fraud within the meaning of 18 U.S.C. § 1341.

483. Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(B).

484. The fraudulent misrepresentation set forth above represented a scheme and artifice to defraud Plaintiff, which was facilitated by use of telephones, caused by GENTNER, and resulting in wire fraud within the meaning of 18 U.S.C. § 1343.

485.    Wire fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(B).

486.    The fraudulent misrepresentation set forth above represented a scheme and artifice to defraud Plaintiff, which was facilitated by use of the financial institutions, caused by GENTNER, and resulting in bank fraud within the meaning of 18 U.S.C. § 1344.

487.    Bank fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(B).

488.    GENTNER and GENTNER's agents, associates, and representatives, have conducted, and have conspired to conduct, the affairs of GENTNER through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c), (d).

489.    As a direct and proximate cause result of these violations of 18 U.S.C. §1962(c), (d), Plaintiff has suffered actual damages as a result of injury to its business and property of at least $116,596.95.

490.    GENTNER is liable to Plaintiff for treble damages, together with all costs of this action plus reasonable attorneys' fees, all as provided under 18 U.S.C. § 1964(c).

**WHEREFORE,** UNION PACIFIC demands judgment against CYNTHIA GENTNER for treble damages, in an amount to be proven at trial, plus interest, costs, attorneys' fees pursuant to 18 U.S.C. 1962(c), and any and all other relief that this Court deems just and proper.

## COUNT 49
## BREACH OF IMPLIED IN LAW CONTRACT (UNJUST ENRICHMENT) AGAINST UNIVERSITY RESEARCH, INC.

491.   UNION PACIFIC repeats and realleges paragraphs 1, 14, 16 through 18, and 31 through 51 hereof as if fully set forth herein.

492.   At all times material, Boris Vaysman, Mark Zimmerman and Frank Grieco were or are principals and/or officers in Defendant University Research, Inc. ("University Research") and directed and were responsible for the telemarketing and other practices employed by University Research.

493.   UNION PACIFIC has conferred a series of benefits, in the form of financial windfalls and monies advanced for non-delivered goods, overcharged goods, excessive restocking charges for unordered goods that were returned, and other benefits and/or consideration on University Research.   University Research is aware of the financial windfalls and benefits so conferred by UNION PACIFIC and have retained them.

494.   University Research has damaged UNION PACIFIC in that it has wrongfully ccepted and retained the windfalls and benefits conferred by UNION PACIFIC and have wrongfully failed to pay or reimburse those benefits back to UNION PACIFIC.

495.   Under the circumstances, it would be inequitable and unjust for University Research to retain the benefits conferred by UNION PACIFIC upon them, and University Research should be disgorged of any and all such unearned, undeserved and unwarranted benefits.

CASE NO. 06-60873-CIV-COHN

**WHEREFORE**, UNION PACIFIC demands judgment against UNIVERSITY RESEARCH, INC. for damages in an amount to be proven at trial, plus interest, costs and any and all such other and further relief as this Court deems just and proper.

## COUNT 50
### FRAUDULENT MISREPRESENTATION OF SALES TRANSACTIONS WITH THE INTENT TO DECEIVE AND DEFRAUD AGAINST UNIVERSITY RESEARCH, INC.

496.    UNION PACIFIC repeats and realleges paragraphs 1, 14, 16 through 18, and 31 through 51 hereof as if fully set forth herein.

497.    At all times material, Boris Vaysman, Mark Zimmerman and Frank Grieco were or are principals and/or officers in University Research and directed and were responsible for the telemarketing and other practices employed by University Research.

498.    At all times material, University Research's telemarketers, conversed with UNION PACIFIC employees for the purpose of informing and persuading UNION PACIFIC to purchase chemical products, cleaning products and lubricants.

499.    University Research made such statements and representations either knowing them to be false, or with a reckless disregard as to whether they were true or false.

500.    University Research made such statements and representations with the intention that UNION PACIFIC rely on them to its detriment.

501.    At all times material, as a direct and proximate result of University Research's false statements, UNION PACIFIC has incurred unauthorized credit card charges for unordered and undelivered goods, excessive charges for unordered goods, overcharges

Page 113 of 219

for unordered goods, overcharges, excessive freight charges for shipments, and excessive restocking fees.

502.    As a direct and proximate result of all University Research's false statements, UNION PACIFIC has been damaged.  Specifically, UNION PACIFIC has suffered actual damages in connection with unauthorized credit card charges for unordered and undelivered goods, excessive charges for unordered goods, overcharges for unordered goods, overcharges, excessive freight charges for shipments, and excessive restocking fees.

503.    UNION PACIFIC's damages and injuries were a direct and proximate result of the above-described false statements made by University Research to UNION PACIFIC.

**WHEREFORE**, UNION PACIFIC demands judgment against UNIVERSITY RESEARCH, INC. for damages in an amount to be proven at trial, plus interest, costs and any and all such other and further relief as this Court deems just and proper.

## COUNT 51
### VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT BY UNIVERSITY RESEARCH, INC.

504.    UNION PACIFIC repeats and realleges paragraphs 1, 14, 16 through 18, and 31 through 51 hereof as if fully set forth herein.

505.    At all times material, Boris Vaysman, Mark Zimmerman and Frank Grieco were or are principals and/or officers in University Research and directed and were responsible for the telemarketing and other practices employed by University Research.

506.    At all times material, the purported sales by University Research of chemical products, cleaning products and lubricants to UNION PACIFIC in this cause were "consumer transactions" within the scope of the Florida Deceptive and Unfair Trade Practices Act, §§ 501.201 to 501.213, Florida Statutes.

507.    In engaging in the conduct previously described, University Research has committed unfair and deceptive trade practices in connection with the purported sale of chemical products, cleaning products and lubricants, including but not limited to: billing charges to UNION PACIFIC credit cards without authorization; failing to deliver the goods that were being charged to UNION PACIFIC credit cards; providing a choice of paying a reduced invoice price on the unordered merchandise or returning the merchandise and paying a substantial restocking fee when UNION PACIFIC disputed the bills; wrongfully utilizing telemarketing tactics to coerce UNION PACIFIC to pay for expensive products it did not want or order; and misrepresenting and/or failing to clearly disclose all relevant information regarding the cost of the goods, the restrictions and conditions on the purchase of these items, and University Research's cancellation policy details.

508.    As a result of University Research's unlawful conduct, UNION PACIFIC has suffered actual damages in connection with unauthorized credit card charges for unordered and undelivered goods, excessive charges for unordered goods, overcharges for unordered goods, overcharges, excessive freight charges for shipments, and excessive restocking fees.

509.    Union Pacific has retained the services of the undersigned attorneys to bring

this action, and has agreed to pay them a reasonable fee. Such fee is claimed from University Research pursuant to  § 501.2105 and § 501.211, Florida Statues.

**WHEREFORE,** UNION PACIFIC demands judgment against UNIVERSITY RESEARCH, INC. for damages, in an amount to be proven at trial, plus interest, costs, consequential damages, attorneys' fees pursuant to § 501.2105 and § 501.211, Florida Statutes, and any and all other relief that this Court deems just and proper.

**COUNT 52**
**VIOLATION OF RICO BY UNIVERSITY RESEARCH, INC.**
**18 U.S.C. § 1961 et seq.**

510.    UNION PACIFIC repeats and realleges paragraphs 1, 14, 16 through 18, and 31 through 51 hereof as if fully set forth herein.

511.    At all times material, Boris Vaysman, Mark Zimmerman and Frank Grieco were or are principals and/or officers in University Research and directed and were responsible for the telemarketing and other practices employed by University Research.

512.    At all times material, University Research's telemarketers, conversed with UNION PACIFIC employees for the purpose of informing  and persuading UNION PACIFIC to purchase chemical products, cleaning products and lubricants.

513.    University Research, through its principals and/or officers, directed, authorized and/or participated in telemarketing practices which included statements and representations either knowing them to be false, or with a reckless disregard as to whether they were true or false.  University Research made such statements and representations with the intention that UNION PACIFIC rely on them to its detriment.

Page 116 of  219

514.    At all times material, as a direct and proximate result of University Research's false statements, UNION PACIFIC has incurred unauthorized credit card charges for unordered and undelivered goods, excessive charges for unordered goods, overcharges for unordered goods, overcharges, excessive freight charges for shipments, and excessive restocking fees.

515.    This count arises under the Racketeer Influenced and Corrupt Practices Act, 18 U.S.C. § 1961 et seq.

516.    University Research is an enterprise within the meaning of 18 U.S.C. § 1961(4), which is engaged in, or the activities of which affect, interstate commerce.  The fraudulent misrepresentation detailed above were made by University Research to Plaintiff.

517.    The fraudulent misrepresentation set forth above represented a scheme and artifice to defraud Plaintiff, which was facilitated by use of the United States Mail, caused by University Research, and resulting in mail fraud within the meaning of 18 U.S.C. § 1341.

518.    Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(B).

519.    The fraudulent misrepresentation set forth above represented a scheme and artifice to defraud Plaintiff, which was facilitated by use of telephones, caused by University Research, and resulting in wire fraud within the meaning of 18 U.S.C. § 1343.

520.    Wire fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(B).

521.   The fraudulent misrepresentation set forth above represented a scheme and artifice to defraud Plaintiff, which was facilitated by use of the financial institutions, caused by University Research, and resulting in bank fraud within the meaning of 18 U.S.C. § 1344.

522.   Bank fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(B).

523.   University Research and University Research's agents, associates, and representatives, have conducted, and have conspired to conduct, the affairs of University Research through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c), (d).

524.   As a direct and proximate cause result of these violations of 18 U.S.C. §1962(c), (d), Plaintiff has suffered actual damages as a result of injury to its business and property of at least $156,018.00.

525.   University Research is liable to Plaintiff for treble damages, together with all costs of this action plus reasonable attorneys' fees, all as provided under 18 U.S.C. § 1964(c).

**WHEREFORE,** UNION PACIFIC demands judgment against UNIVERSITY RESEARCH, INC. for treble damages, in an amount to be proven at trial, plus interest, costs, attorneys' fees pursuant to 18 U.S.C. 1962(c), and any and all other relief that this Court deems just and proper.

## COUNT 53
## VIOLATION OF TELEMARKETING RULES BY
## UNIVERSITY RESEARCH, INC.
## 15 U.S.C. § 6102 et seq.

526.    UNION PACIFIC repeats and realleges paragraphs 1, 14, 16 through 18, and 31 through 51 hereof as if fully set forth herein.

527.    At all times material, Boris Vaysman, Mark Zimmerman and Frank Grieco were or are principals and/or officers in University Research and directed and were responsible for the telemarketing and other practices employed by University Research.

528.    At all times material, University Research's telemarketers, conversed with UNION PACIFIC employees for the purpose of informing and persuading UNION PACIFIC to purchase chemical products, cleaning products and lubricants.

529.    University Research made such statements and representations either knowing them to be false, or with a reckless disregard as to whether they were true or false, in violation of 16 C.F.R. §§ 310.2 and 310.3.

530.    University Research such statements and representations with the intention that UNION PACIFIC rely on them to its detriment.

531.    This count arises under the Telemarketing and Consumer Fraud Abuse and Prevention Act, 15 U.S.C. §§ 6101-6108, implemented by 16 C.F.R. § 310.10, wherein damages claimed exceed $50,000.00.

532.    At all times material, as a direct and proximate result of University Research's false statements, UNION PACIFIC has incurred unauthorized credit card charges for unordered and undelivered goods, excessive charges for unordered goods, overcharges

for unordered goods, overcharges, excessive freight charges for shipments, and excessive restocking fees.

533.    As a direct and proximate result of all University Research 's false statements, UNION PACIFIC has been damaged.  Specifically, UNION PACIFIC has suffered actual damages in connection with unauthorized credit card charges for unordered and undelivered goods, excessive charges for unordered goods, overcharges for unordered goods, overcharges, excessive freight charges for shipments, and excessive restocking fees.

534.    UNION PACIFIC's damages and injuries were a direct and proximate result of the above-described false statements made by University Research to UNION PACIFIC.

**WHEREFORE**, UNION PACIFIC demands judgment against UNIVERSITY RESEARCH, INC. for damages in an amount to be proven at trial, plus interest, costs and any and all such other and further relief as this Court deems just and proper.

## <u>COUNT 54</u>
### BREACH OF IMPLIED IN LAW CONTRACT (UNJUST ENRICHMENT) AGAINST INDUSTRIAL CHEM ENTERPRISE, INC.

535.    UNION PACIFIC repeats and realleges paragraphs 1, 15 through 18, and 31 through 51 hereof as if fully set forth herein.

536.    At all times material, Boris Vaysman, Mark Zimmerman and Frank Grieco were or are principals and/or officers in Industrial Chem Enterprise, Inc. ("Industrial Chem"),and directed and were responsible for the telemarketing and other practices employed by Industrial Chem.   Under the operation or management of Boris Vaysman, Mark Zimmerman

and Frank Grieco, and Industrial Chem telemarketers conversed with Union Pacific employees for the purpose of informing and persuading Union Pacific to purchase chemical products, cleaning products and lubricants through the use of improper and inappropriate rewards and/or incentives payable to and/or delivered directly to such employees' homes. Industrial Chem, as directed by Boris Vaysman, Mark Zimmerman and Frank Grieco, participated in the telemarketing practices which included statements and representations either knowing them to be false, or with reckless disregard as to whether they were true or false.  Industrial Chem made such statements and representations with the intention that Union Pacific rely on them to its detriment.

537.   UNION PACIFIC has conferred a series of benefits, in the form of financial windfalls and monies advanced for non-delivered goods, overcharged goods, excessive restocking charges for unordered goods that were returned, and other benefits and/or consideration on Industrial Chem.  Industrial Chem is aware of the financial windfalls and benefits so conferred by UNION PACIFIC and have retained them.  See Transaction Detail relating to Industrial Chem annexed hereto as part of Exhibit "A".

538.   Industrial Chem has damaged UNION PACIFIC in that it has wrongfully accepted and retained the windfalls and benefits conferred by UNION PACIFIC and have wrongfully failed to pay or reimburse those benefits back to UNION PACIFIC.

539.   Under the circumstances, it would be inequitable and unjust for Industrial Chem to retain the benefits conferred by UNION PACIFIC upon them, and Industrial Chem should be disgorged of any and all such unearned, undeserved and unwarranted benefits.

**WHEREFORE**, UNION PACIFIC demands judgment against INDUSTRIAL CHEM ENTERPRISE, INC. for damages in an amount to be proven at trial, plus interest, costs and any and all such other and further relief as this Court deems just and proper.

### COUNT 55
### FRAUDULENT MISREPRESENTATION OF SALES TRANSACTIONS WITH THE INTENT TO DECEIVE AND DEFRAUD AGAINST INDUSTRIAL CHEM ENTERPRISE, INC.

540.    UNION PACIFIC repeats and realleges paragraphs 1, 15 through 18, and 31 through 51 hereof as if fully set forth herein.

541.    At all times material, Boris Vaysman, Mark Zimmerman and Frank Grieco were or are principals and/or officers in Industrial Chem, and directed and were responsible for the telemarketing and other practices employed by Industrial Chem.  Under the operation or management of Boris Vaysman, Mark Zimmerman and Frank Grieco, and Industrial Chem telemarketers conversed with Union Pacific employees for the purpose of informing and persuading Union Pacific to purchase chemical products, cleaning products and lubricants through the use of improper and inappropriate rewards and/or incentives payable to and/or delivered directly to such employees' homes.  Industrial Chem, as directed by Boris Vaysman, Mark Zimmerman and Frank Grieco, participated in the telemarketing practices which included statements and representations either knowing them to be false, or with reckless disregard as to whether they were true or false.  Industrial Chem made such statements and representations with the intention that Union Pacific rely on them to its detriment.

542.    At all times material, Industrial Chem's telemarketers, conversed with UNION PACIFIC employees for the purpose of informing and persuading UNION PACIFIC to purchase chemical products, cleaning products and lubricants.

543.    Industrial Chem made such statements and representations either knowing them to be false, or with a reckless disregard as to whether they were true or false.

544.    Industrial Chem made such statements and representations with the intention that UNION PACIFIC rely on them to its detriment.

545.    At all times material, as a direct and proximate result of Industrial Chem's false statements, UNION PACIFIC has incurred unauthorized credit card charges for unordered and undelivered goods, excessive charges for unordered goods, overcharges for unordered goods, overcharges, excessive freight charges for shipments, and excessive restocking fees.  See Transaction Detail relating to Industrial Chem annexed hereto as part of Exhibit "A".

546.    As a direct and proximate result of all Industrial Chem's false statements, UNION PACIFIC has been damaged.  Specifically, UNION PACIFIC has suffered actual damages in connection with unauthorized credit card charges for unordered and undelivered goods, excessive charges for unordered goods, overcharges for unordered goods, overcharges, excessive freight charges for shipments, and excessive restocking fees.  See Transaction Detail relating to Industrial Chem annexed hereto as Exhibit "A".

547.    UNION PACIFIC's damages and injuries were a direct and proximate result of the above-described false statements made by Industrial Chem to UNION PACIFIC.

**WHEREFORE**, UNION PACIFIC demands judgment against INDUSTRIAL CHEM ENTERPRISE, INC. for damages in an amount to be proven at trial, plus interest, costs and any and all such other and further relief as this Court deems just and proper.

## COUNT 56
### VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT BY INDUSTRIAL CHEM ENTERPRISE, INC.

548.    UNION PACIFIC repeats and realleges  paragraphs  1, 15 through 18, and 31 through 51 hereof as if fully set forth herein.

549.    At all times material, Boris Vaysman, Mark Zimmerman and Frank Grieco were or are principals and/or officers in Industrial Chem, and directed and were responsible for the telemarketing and other practices employed by Industrial Chem.  Under the operation or management of Boris Vaysman, Mark Zimmerman and Frank Grieco, and Industrial Chem telemarketers conversed with Union Pacific employees for the purpose of informing and persuading Union Pacific to purchase chemical products, cleaning products and lubricants through the use of improper and inappropriate rewards and/or incentives payable to and/or delivered directly to such employees' homes.  Industrial Chem, as directed by Boris Vaysman, Mark Zimmerman and Frank Grieco, participated in the telemarketing practices which included statements and representations either knowing them to be false, or with reckless disregard as to whether they were true or false.  Industrial Chem made such statements and representations with the intention that Union Pacific rely on them to its detriment.

550.    At all times material, the purported sales by Industrial Chem of chemical products, cleaning products and lubricants to UNION PACIFIC in this cause were "consumer transactions" within the scope of the Florida Deceptive and Unfair Trade Practices Act, §§ 501.201 to 501.213, Florida Statutes.

551.    In engaging in the conduct previously described, Industrial Chem has committed unfair and deceptive trade practices in connection with the purported sale of chemical products, cleaning products and lubricants, including but not limited to: billing charges to UNION PACIFIC credit cards without authorization; failing to deliver the goods that were being charged to UNION PACIFIC credit cards; providing a choice of paying a reduced invoice price on the unordered merchandise or returning the merchandise and paying a substantial restocking fee when UNION PACIFIC disputed the bills; wrongfully utilizing telemarketing tactics to coerce UNION PACIFIC to pay for expensive products it did not want or order; and misrepresenting and/or failing to clearly disclose all relevant information regarding the cost of the goods, the restrictions and conditions on the purchase of these items, and INDUSTRIAL CHEM's cancellation policy details.  See Transaction Detail relating to Industrial Chem annexed hereto as part of Exhibit "A".

552.    As a result of Industrial Chem's unlawful conduct, UNION PACIFIC has suffered actual damages in connection with unauthorized credit card charges for unordered and undelivered goods, excessive charges for unordered goods, overcharges for unordered goods, overcharges, excessive freight charges for shipments, and excessive restocking fees.

553.    Union Pacific has retained the services of the undersigned attorneys to bring this action, and has agreed to pay them a reasonable fee.  Such fee is claimed from Industrial Chem pursuant to § 501.2105 and § 501.211, Florida Statues.

**WHEREFORE,** UNION PACIFIC demands judgment against INDUSTRIAL CHEM ENTERPRISE, INC. for damages, in an amount to be proven at trial, plus interest, costs, consequential damages, attorneys' fees pursuant to § 501.2105 and § 501.211, Florida Statutes, and any and all other relief that this Court deems just and proper.

<u>COUNTS 57a, 57b and 57c</u>
**VIOLATION OF RICO BY INDUSTRIAL CHEM ENTERPRISE, INC.**
**18 U.S.C. § 1961 et seq.**
**FOR MAIL FRAUD, WIRE FRAUD AND BANK FRAUD**

554.    UNION PACIFIC repeats and realleges paragraphs  1, 15 through 18, and 31 through 51 hereof as if fully set forth herein.

555.    At all times material, Boris Vaysman, Mark Zimmerman and Frank Grieco were or are principals and/or officers in Industrial Chem, and directed and were responsible for the telemarketing and other practices employed by Industrial Chem.   Under the operation or management of Boris Vaysman, Mark Zimmerman and Frank Grieco, and Industrial Chem telemarketers conversed with Union Pacific employees for the purpose of informing and persuading Union Pacific to purchase chemical products, cleaning products and lubricants through the use of improper and inappropriate rewards and/or incentives payable to and/or delivered directly to such employees' homes.   Industrial Chem, as directed by Boris Vaysman, Mark Zimmerman and Frank Grieco, participated in the telemarketing practices which included statements and representations either knowing them

to be false, or with reckless disregard as to whether they were true or false.   Industrial Chem made such statements and representations with the intention that Union Pacific rely on them to its detriment.

556.    At all times material, Industrial Chem's telemarketers, conversed with UNION PACIFIC employees for the purpose of informing  and persuading UNION PACIFIC to purchase chemical products, cleaning products and lubricants.

557.    Industrial Chem, through its principals and/or officers, directed, authorized and/or participated in telemarketing practices which included statements and representations either knowing them to be false, or with a reckless disregard as to whether they were true or false.  Industrial Chem made such statements and representations with the intention that UNION PACIFIC rely on them to its detriment.

558.    At all times material, as a direct and proximate result of Industrial Chem's false statements, UNION PACIFIC has incurred unauthorized credit card charges for unordered and undelivered goods, excessive charges for unordered goods, overcharges for unordered goods, overcharges, excessive freight charges for shipments, and excessive restocking fees.  See Transaction Detail relating to Industrial Chem annexed hereto as part of Exhibit "A".

559.    These counts arise under the Racketeer Influenced and Corrupt Practices Act, 18 U.S.C. § 1961 et seq.

560.    Industrial Chem is an enterprise within the meaning of 18 U.S.C. § 1961(4), which is engaged in, or the activities of which affect, interstate commerce.  The fraudulent misrepresentation detailed above were made by Industrial Chem to Plaintiff.

## COUNT 57a - MAIL FRAUD, 18 U.S.C. § 1341
## VIOLATION OF 18 U.S.C. § 1961(B)

561.    The fraudulent misrepresentations set forth in paragraphs 555-560 represented a scheme and artifice to defraud Plaintiff, which was facilitated by use of the United States Mail, caused by Industrial Chem, and resulting in mail fraud within the meaning of 18 U.S.C. § 1341.  Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(B).

562.    Industrial Chem and Industrial Chem's agents, associates, and representatives, have conducted, and have conspired to conduct, the affairs of Industrial Chem through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c), (d).

## COUNT 57b - WIRE FRAUD, 18 U.S.C. § 1343
## VIOLATION OF 18 U.S.C. § 1961(B)

563.    The fraudulent misrepresentations set forth in paragraphs 555-560 represented a scheme and artifice to defraud Plaintiff, which was facilitated by use of telephones, caused by Industrial Chem, and resulting in wire fraud within the meaning of 18 U.S.C. § 1343.  Wire fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(B).

564.   Industrial Chem and Industrial Chem's agents, associates, and representatives, have conducted, and have conspired to conduct, the affairs of Industrial Chem through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c), (d).

## COUNT 57c - BANK FRAUD, 18 U.S.C. § 1344
## VIOLATION OF 18 U.S.C. § 1961(B)

565.   The fraudulent misrepresentations set forth in paragraphs 555-560 represented a scheme and artifice to defraud Plaintiff, which was facilitated by use of the financial institutions, caused by Industrial Chem, and resulting in bank fraud within the meaning of 18 U.S.C. § 1344.

566.   Bank fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(B).

567.   Industrial Chem and Industrial Chem's agents, associates, and representatives, have conducted, and have conspired to conduct, the affairs of Industrial Chem through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c), (d).

568.   As a direct and proximate result of these violations of 18 U.S.C. §1962(c), (d), as set forth in Counts 57a, 57b and 57c, Plaintiff has suffered actual damages as a result of injury to its business and  property of at least $156,018.00.

569.   Industrial Chem is liable to Plaintiff for treble damages, together with all costs of this action plus reasonable attorneys' fees, all as provided under 18 U.S.C. § 1964(c).

**WHEREFORE,** UNION PACIFIC demands judgment against INDUSTRIAL CHEM ENTERPRISE, INC. for treble damages, in an amount to be proven at trial, plus interest,

CASE NO. 06-60873-CIV-COHN

costs, attorneys' fees pursuant to 18 U.S.C. 1962(c), and any and all other relief that this Court deems just and proper.

## COUNT 58
### VIOLATION OF TELEMARKETING RULES BY INDUSTRIAL CHEM ENTERPRISE, INC.
### 15 U.S.C. § 6102 et seq.

570. UNION PACIFIC repeats and realleges paragraphs 1, 15 through 18, and 31 through 51 hereof as if fully set forth herein.

571. At all times material, Boris Vaysman, Mark Zimmerman and Frank Grieco were or are principals and/or officers in Industrial Chem, and directed and were responsible for the telemarketing and other practices employed by Industrial Chem.  Under the operation or management of Boris Vaysman, Mark Zimmerman and Frank Grieco, and Industrial Chem telemarketers conversed with Union Pacific employees for the purpose of informing and persuading Union Pacific to purchase chemical products, cleaning products and lubricants through the use of improper and inappropriate rewards and/or incentives payable to and/or delivered directly to such employees' homes.  Industrial Chem, as directed by Boris Vaysman, Mark Zimmerman and Frank Grieco, participated in the telemarketing practices which included statements and representations either knowing them to be false, or with reckless disregard as to whether they were true or false.  Industrial Chem made such statements and representations with the intention that Union Pacific rely on them to its detriment.

CASE NO. 06-60873-CIV-COHN

572. At all times material, Industrial Chem's telemarketers, conversed with UNION PACIFIC employees for the purpose of informing and persuading UNION PACIFIC to purchase chemical products, cleaning products and lubricants.

573. Industrial Chem made such statements and representations either knowing them to be false, or with a reckless disregard as to whether they were true or false, in violation of 16 C.F.R. §§ 310.2 and 310.3.

574. Industrial Chem such statements and representations with the intention that UNION PACIFIC rely on them to its detriment.

575. This count arises under the Telemarketing and Consumer Fraud Abuse and Prevention Act, 15 U.S.C. §§ 6101-6108, implemented by 16 C.F.R. § 310.10, wherein damages claimed exceed $50,000.00.

576. At all times material, as a direct and proximate result of Industrial Chem's false statements, UNION PACIFIC has incurred unauthorized credit card charges for unordered and undelivered goods, excessive charges for unordered goods, overcharges for unordered goods, overcharges, excessive freight charges for shipments, and excessive restocking fees. See Transaction Detail relating to Industrial Chem annexed hereto as part of Exhibit "A".

577. As a direct and proximate result of all Industrial Chem's false statements, UNION PACIFIC has been damaged. Specifically, UNION PACIFIC has suffered actual damages in connection with unauthorized credit card charges for unordered and undelivered goods, excessive charges for unordered goods, overcharges for unordered

goods, overcharges, excessive freight charges for shipments, and excessive restocking fees. See Transaction Detail relating to Industrial Chem annexed hereto as part of Exhibit "A".

578.    UNION PACIFIC's damages and injuries were a direct and proximate result of the above-described false statements made by Industrial Chem to UNION PACIFIC.

**WHEREFORE**, UNION PACIFIC demands judgment against INDUSTRIAL CHEM ENTERPRISE, INC. for damages in an amount to be proven at trial, plus interest, costs and any and all such other and further relief as this Court deems just and proper.

### COUNT 59
### VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR
### TRADE PRACTICES ACT BY BORIS VAYSMAN

579.    UNION PACIFIC repeats and realleges paragraphs 1, 14 through 16, and 31 through 51 hereof as if fully set forth herein.

580.    At all times material, Boris Vaysman ("VAYSMAN") was or is a principal and/or officer in Defendants University Research, Inc. and Industrial Chem Enterprise, Inc., and directed and was responsible for the telemarketing and other practices employed by University Research, Inc. and Industrial Chem Enterprise, Inc.

581.    At all times material, VAYSMAN maintained institutional control of University Research, Inc. and Industrial Chem Enterprise, Inc.

582.    Upon information and belief, VAYSMAN exclusively designed, developed and implemented the telemarketing tactics utilized by University Research, Inc. and Industrial Chem Enterprise, Inc. and he directed and controlled the telemarketers who contacted

UNION PACIFIC regarding the purported sale of chemical products, cleaning products and lubricants.

583.   VAYSMAN participated directly in the deceptive practices or acts of University Research, Inc. and Industrial Chem Enterprise, Inc. and/or possessed the authority to control the deceptive practices or acts perpetrated by University Research, Inc. and Industrial Chem Enterprise, Inc. in connection with the purported sale of chemical products, cleaning products and lubricants to UNION PACIFIC, including but not limited to: billing charges to UNION PACIFIC credit cards without authorization; failing to deliver the goods that were being charged to UNION PACIFIC credit cards; providing a choice of paying a reduced invoice on the unordered merchandise or returning the merchandise and paying a substantial restocking fee when UNION PACIFIC disputed the bills; wrongfully utilizing telemarketing tactics to coerce UNION PACIFIC to pay for expensive products it did not want to order, and misrepresenting and/or failing to clearly disclose all relevant information regarding the cost of the goods, the restrictions and conditions on the purchase of these items, and the cancellation policy details of University Research, Inc. and Industrial Chem Enterprise, Inc.

584.   VAYSMAN's actions constitute a violation of the Florida Deceptive Trade Practices Act, §501.201, *et seq.*, Florida Statutes.

585.   UNION PACIFIC has retained the services of the undersigned attorneys to bring this action, and has agreed to pay them a reasonable fee.  Such fee is claimed from VAYSMAN pursuant to §501.2105 and §501.211, Florida Statutes.

CASE NO. 06-60873-CIV-COHN

**WHEREFORE**, UNION PACIFIC demands judgment against BORIS VAYSMAN for damages, in an amount to be proven at trial, plus interest, costs, consequential damages, attorneys' fees pursuant to §501.2105 and §501.211, Florida Statutes, and any and all other relief that this Court deems just and proper.

## COUNT 60
## VIOLATION OF RICO BY BORIS VAYSMAN
### 18 U.S.C. § 1961 et seq.

586.    UNION PACIFIC repeats and realleges paragraphs 1, 14 through 16, and 31 through 51 hereof as if fully set forth herein.

587.    At all times material, VAYSMAN was or is a principal and/or officer in Defendants University Research, Inc. and Industrial Chem Enterprise, Inc., and directed and was responsible for the telemarketing and other practices employed by University Research, Inc. and Industrial Chem Enterprise, Inc.

588.    At all times material, VAYSMAN's telemarketers, conversed with UNION PACIFIC employees for the purpose of informing  and persuading UNION PACIFIC to purchase chemical products, cleaning products and lubricants.

589.    VAYSMAN directed, authorized and/or participated in telemarketing practices which included statements and representations either knowing them to be false, or with a reckless disregard as to whether they were true or false.  VAYSMAN made or caused such statements and representations with the intention that UNION PACIFIC rely on them to its detriment.

590.    At all times material, as a direct and proximate result of VAYSMAN's false statements, UNION PACIFIC has incurred unauthorized credit card charges for unordered and undelivered goods, excessive charges for unordered goods, overcharges for unordered goods, overcharges, excessive freight charges for shipments, and excessive restocking fees.

591.    This count arises under the Racketeer Influenced and Corrupt Practices Act, 18 U.S.C. § 1961 et seq.

592.    VAYSMAN is an enterprise within the meaning of 18 U.S.C. § 1961(4), which is engaged in, or the activities of which affect, interstate commerce.   The fraudulent misrepresentation detailed above were made by VAYSMAN to Plaintiff.

593.    The fraudulent misrepresentation set forth above represented a scheme and artifice to defraud Plaintiff, which was facilitated by use of the United States Mail, caused by VAYSMAN, and resulting in mail fraud within the meaning of 18 U.S.C. § 1341.

594.    Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(B).

595.    The fraudulent misrepresentation set forth above represented a scheme and artifice to defraud Plaintiff, which was facilitated by use of telephones, caused by VAYSMAN, and resulting in wire fraud within the meaning of 18 U.S.C. § 1343.

596.    Wire fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(B).

597.   The fraudulent misrepresentation set forth above represented a scheme and artifice to defraud Plaintiff, which was facilitated by use of the financial institutions, caused by VAYSMAN, and resulting in bank fraud within the meaning of 18 U.S.C. § 1344.

598.   Bank fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(B).

599.   VAYSMAN and VAYSMAN's agents, associates, and representatives, have conducted, and have conspired to conduct, the affairs of VAYSMAN through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c), (d).

600.   As a direct and proximate cause result of these violations of 18 U.S.C. §1962(c), (d), Plaintiff has suffered actual damages as a result of injury to its business and property of at least $156,018.00.

601.   VAYSMAN is liable to Plaintiff for treble damages, together with all costs of this action plus reasonable attorneys' fees, all as provided under 18 U.S.C. § 1964(c).

**WHEREFORE,** UNION PACIFIC demands judgment against BORIS VAYSMAN for treble damages, in an amount to be proven at trial, plus interest, costs, attorneys' fees pursuant to 18 U.S.C. 1962(c), and any and all other relief that this Court deems just and proper.

### COUNT 61
### VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR
### TRADE PRACTICES ACT BY MARK ZIMMERMAN

602.   UNION PACIFIC repeats and realleges  paragraphs 1, 14, 15, 17, and 31 through 51 hereof as if fully set forth herein.

603.   At all times material, Mark Zimmerman ("ZIMMERMAN") was or is a principal and/or officer in Defendants University Research, Inc. and Industrial Chem Enterprise, Inc., and directed and was responsible for the telemarketing and other practices employed by University Research, Inc. and Industrial Chem Enterprise, Inc.  Under the operation or management of Mark Zimmerman, University Research and Industrial Chem telemarketers conversed with Union Pacific employees for the purpose of informing and persuading Union Pacific to purchase chemical products, cleaning products and lubricants through the use of improper and inappropriate rewards and/or incentives payable to and/or delivered directly to such employees' homes.   These companies, as directed by Mark Zimmerman, participated in the telemarketing practices which included statements and representations either knowing them to be false, or with reckless disregard as to whether they were true or false.  These companies made such statements and representations with the intention that Union Pacific rely on them to its detriment.

604.   At all times material, ZIMMERMAN maintained institutional control of University Research, Inc. and Industrial Chem Enterprise, Inc.

605.   Upon information and belief, ZIMMERMAN exclusively designed, developed and implemented the telemarketing tactics utilized by University Research, Inc. and Industrial Chem Enterprise, Inc. and he directed and controlled the telemarketers who contacted UNION PACIFIC regarding the purported sale of chemical products, cleaning products and lubricants.

606.   ZIMMERMAN participated directly in the deceptive practices or acts of University Research, Inc. and Industrial Chem Enterprise, Inc. and/or possessed the authority to control the deceptive practices or acts perpetrated by University Research, Inc. and Industrial Chem Enterprise, Inc. in connection with the purported sale of chemical products, cleaning products and lubricants to UNION PACIFIC, including but not limited to: billing charges to UNION PACIFIC credit cards without authorization; failing to deliver the goods that were being charged to UNION PACIFIC credit cards; providing a choice of paying a reduced invoice on the unordered merchandise or returning the merchandise and paying a substantial restocking fee when UNION PACIFIC disputed the bills; wrongfully utilizing telemarketing tactics to coerce UNION PACIFIC to pay for expensive products it did not want to order, and misrepresenting and/or failing to clearly disclose all relevant information regarding the cost of the goods, the restrictions and conditions on the purchase of these items, and the cancellation policy details of University Research, Inc. and Industrial Chem Enterprise, Inc. See Transaction Detail relating to University Research and Industrial Chem annexed hereto as part of Exhibit "A".

607.   ZIMMERMAN's actions constitute a violation of the Florida Deceptive Trade Practices Act, §501.201, *et seq.*, Florida Statutes.

608.   UNION PACIFIC has retained the services of the undersigned attorneys to bring this action, and has agreed to pay them a reasonable fee.  Such fee is claimed from ZIMMERMAN pursuant to §501.2105 and §501.211, Florida Statutes.

CASE NO. 06-60873-CIV-COHN

**WHEREFORE**, UNION PACIFIC demands judgment against MARK ZIMMERMAN for damages, in an amount to be proven at trial, plus interest, costs, consequential damages, attorneys' fees pursuant to §501.2105 and §501.211, Florida Statutes, and any and all other relief that this Court deems just and proper.

### COUNTS 62a, 62b and 62c
### VIOLATION OF RICO BY MARK ZIMMERMAN
### 18 U.S.C. § 1961 et seq.
### MAIL FRAUD, WIRE FRAUD AND BANK FRAUD

609.   UNION PACIFIC repeats and realleges paragraphs 1, 14, 15, 17, and  31 through 51 hereof as if fully set forth herein.

610.   At all times material, ZIMMERMAN was or is a principal and/or officer in Defendants University Research, Inc. and Industrial Chem Enterprise, Inc., and directed and was responsible for the telemarketing and other practices employed by University Research, Inc. and Industrial Chem Enterprise, Inc.  Under the operation or management of Mark Zimmerman, University Research and Industrial Chem telemarketers conversed with Union Pacific employees for the purpose of informing and persuading Union Pacific to purchase chemical products, cleaning products and lubricants through the use of improper and inappropriate rewards and/or incentives payable to and/or delivered directly to such employees' homes.  These companies, as directed by Mark Zimmerman, participated in the telemarketing practices which included statements and representations either knowing them to be false, or with reckless disregard as to whether they were true or false.  These companies made such statements and representations with the intention that Union Pacific rely on them to its detriment.

CASE NO. 06-60873-CIV-COHN

611.   At all times material, ZIMMERMAN's telemarketers, conversed with UNION PACIFIC employees for the purpose of informing  and persuading UNION PACIFIC to purchase chemical products, cleaning products and lubricants.                                           .

612.   ZIMMERMAN directed, authorized and/or participated in telemarketing practices which included statements and representations either knowing them to be false, or with a reckless disregard as to whether they were true or false.  ZIMMERMAN made or caused such statements and representations with the intention that UNION PACIFIC rely on them to its detriment.

613.   At all times material, as a direct and proximate result of ZIMMERMAN's false statements, UNION PACIFIC has incurred unauthorized credit card charges for unordered and undelivered goods, excessive charges for unordered goods, overcharges for unordered goods, overcharges, excessive freight charges for shipments, and excessive restocking fees.

614.   These counts arise under the Racketeer Influenced and Corrupt Practices Act, 18 U.S.C. § 1961 et seq.

615.   ZIMMERMAN is an enterprise within the meaning of 18 U.S.C. § 1961(4), which is engaged in, or the activities of which affect, interstate commerce.  The fraudulent misrepresentations detailed above were made by ZIMMERMAN to Plaintiff.

## COUNT 62a - MAIL FRAUD, 18 U.S.C. § 1341
## VIOLATION OF 18 U.S.C. § 1961(B)

616.   The fraudulent misrepresentations set forth in paragraphs 610-615 represented a scheme and artifice to defraud Plaintiff, which was facilitated by use of the

CASE NO. 06-60873-CIV-COHN

United States Mail, caused by ZIMMERMAN, and resulting in mail fraud within the meaning of 18 U.S.C. § 1341.  Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(B).

617.   ZIMMERMAN and ZIMMERMAN's agents, associates, and representatives, have conducted, and have conspired to conduct, the affairs of ZIMMERMAN through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c), (d).

## COUNT 62b - WIRE FRAUD, 18 U.S.C. § 1343
## VIOLATION OF 18 U.S.C. § 1961(B)

618.   The fraudulent misrepresentations set forth in paragraphs 610-615 represented a scheme and artifice to defraud Plaintiff, which was facilitated by use of telephones, caused by ZIMMERMAN, and resulting in wire fraud within the meaning of 18 U.S.C. § 1343.  Wire fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(B).

619.   ZIMMERMAN and ZIMMERMAN's agents, associates, and representatives, have conducted, and have conspired to conduct, the affairs of ZIMMERMAN through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c), (d).

## COUNT 62c - BANK FRAUD, 18 U.S.C. § 1344
## VIOLATION OF 18 U.S.C. § 1961(B)

620.   The fraudulent misrepresentations set forth in paragraphs 610-615 represented a scheme and artifice to defraud Plaintiff, which was facilitated by use of the financial institutions, caused by ZIMMERMAN, and resulting in bank fraud within the meaning of 18 U.S.C. § 1344.

621.   Bank fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(B).

622.   ZIMMERMAN and ZIMMERMAN's agents, associates, and representatives, have conducted, and have conspired to conduct, the affairs of ZIMMERMAN through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c), (d).

623.   As a direct and proximate result of these violations of 18 U.S.C. §1962(c), (d), as set forth in Counts 62a, 62b and 62c, Plaintiff has suffered actual damages as a result of injury to its business and  property of at least $156,018.00.

624.   ZIMMERMAN is liable to Plaintiff for treble damages, together with all costs of this action plus reasonable attorneys' fees, all as provided under 18 U.S.C. § 1964(c).

**WHEREFORE,** UNION PACIFIC demands judgment against MARK ZIMMERMAN for treble damages, in an amount to be proven at trial, plus interest, costs, attorneys' fees pursuant to 18 U.S.C. 1962(c), and any and all other relief that this Court deems just and proper.

### COUNT 63
### VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR
### TRADE PRACTICES ACT BY FRANK GRIECO

625.   UNION PACIFIC repeats and realleges  paragraphs 1, 14, 15, 18, and 31 through 51 hereof as if fully set forth herein.

626.   At all times material, Frank Grieco ("GRIECO") was or is a principal and/or officer in Defendants University Research, Inc. and Industrial Chem Enterprise, Inc., and

directed and was responsible for the telemarketing and other practices employed by University Research, Inc. and Industrial Chem Enterprise, Inc.

627.    At all times material, GRIECO maintained institutional control of University Research, Inc. and Industrial Chem Enterprise, Inc.

628.    Upon information and belief, GRIECO exclusively designed, developed and implemented the telemarketing tactics utilized by University Research, Inc. and Industrial Chem Enterprise, Inc. and he directed and controlled the telemarketers who contacted UNION PACIFIC regarding the purported sale of chemical products, cleaning products and lubricants.

629.    GRIECO participated directly in the deceptive practices or acts of University Research, Inc. and Industrial Chem Enterprise, Inc. and/or possessed the authority to control the deceptive practices or acts perpetrated by University Research, Inc. and Industrial Chem Enterprise, Inc. in connection with the purported sale of chemical products, cleaning products and lubricants to UNION PACIFIC, including but not limited to: billing charges to UNION PACIFIC credit cards without authorization; failing to deliver the goods that were being charged to UNION PACIFIC credit cards; providing a choice of paying a reduced invoice on the unordered merchandise or returning the merchandise and paying a substantial restocking fee when UNION PACIFIC disputed the bills; wrongfully utilizing telemarketing tactics to coerce UNION PACIFIC to pay for expensive products it did not want to order, and misrepresenting and/or failing to clearly disclose all relevant information regarding the cost of the goods, the restrictions and conditions on the purchase of these

items, and the cancellation policy details of University Research, Inc. and Industrial Chem Enterprise, Inc.

630.   GRIECO's actions constitute a violation of the Florida Deceptive Trade Practices Act, §501.201, *et seq.*, Florida Statutes.

631.   UNION PACIFIC has retained the services of the undersigned attorneys to bring this action, and has agreed to pay them a reasonable fee.  Such fee is claimed from GRIECO pursuant to §501.2105 and §501.211, Florida Statutes.

**WHEREFORE**, UNION PACIFIC demands judgment against FRANK GRIECO for damages, in an amount to be proven at trial, plus interest, costs, consequential damages, attorneys' fees pursuant to §501.2105 and §501.211, Florida Statutes, and any and all other relief that this Court deems just and proper.

## COUNT 64
### VIOLATION OF RICO BY FRANK GRIECO
### 18 U.S.C. § 1961 et seq.

632.   UNION PACIFIC repeats and realleges paragraphs 1, 14, 15, 18, and 31 through 51 hereof as if fully set forth herein.

633.   At all times material, GRIECO was or is a principal and/or officer in Defendants University Research, Inc. and Industrial Chem Enterprise, Inc., and directed and was responsible for the telemarketing and other practices employed by University Research, Inc. and Industrial Chem Enterprise, Inc.

634.   At all times material, GRIECO's telemarketers, conversed with UNION PACIFIC employees for the purpose of informing  and persuading UNION PACIFIC to purchase chemical products, cleaning products and lubricants.

635.   GRIECO directed, authorized and/or participated in telemarketing practices which included statements and representations either knowing them to be false, or with a reckless disregard as to whether they were true or false.  GRIECO made or caused such statements and representations with the intention that UNION PACIFIC rely on them to its detriment.

636.   At all times material, as a direct and proximate result of GRIECO's false statements, UNION PACIFIC has incurred unauthorized credit card charges for unordered and undelivered goods, excessive charges for unordered goods, overcharges for unordered goods, overcharges, excessive freight charges for shipments, and excessive restocking fees.

637.   This count arises under the Racketeer Influenced and Corrupt Practices Act, 18 U.S.C. § 1961 et seq.

638.   GRIECO is an enterprise within the meaning of 18 U.S.C. § 1961(4), which is engaged in, or the activities of which affect, interstate commerce.  The fraudulent misrepresentation detailed above were made by GRIECO to Plaintiff.

639.   The fraudulent misrepresentation set forth above represented a scheme and artifice to defraud Plaintiff, which was facilitated by use of the United States Mail, caused by GRIECO, and resulting in mail fraud within the meaning of 18 U.S.C. § 1341.

640.    Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(B).

641.    The fraudulent misrepresentation set forth above represented a scheme and artifice to defraud Plaintiff, which was facilitated by use of telephones, caused by GRIECO, and resulting in wire fraud within the meaning of 18 U.S.C. § 1343.

642.    Wire fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(B).

643.    The fraudulent misrepresentation set forth above represented a scheme and artifice to defraud Plaintiff, which was facilitated by use of the financial institutions, caused by GRIECO, and resulting in bank fraud within the meaning of 18 U.S.C. § 1344.

644.    Bank fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(B).

645.    GRIECO and GRIECO's agents, associates, and representatives, have conducted, and have conspired to conduct, the affairs of GRIECO through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c), (d).

646.    As a direct and proximate cause result of these violations of 18 U.S.C. §1962(c), (d), Plaintiff has suffered actual damages as a result of injury to its business and property of at least $156,018.00.

647.    GRIECO is liable to Plaintiff for treble damages, together with all costs of this action plus reasonable attorneys' fees, all as provided under 18 U.S.C. § 1964(c).

CASE NO. 06-60873-CIV-COHN

**WHEREFORE,** UNION PACIFIC demands judgment against FRANK GRIECO for treble damages, in an amount to be proven at trial, plus interest, costs, attorneys' fees pursuant to 18 U.S.C. 1962(c), and any and all other relief that this Court deems just and proper.

## <u>COUNT 65</u>
## BREACH OF IMPLIED IN LAW CONTRACT (UNJUST ENRICHMENT) AGAINST SUNTRUST CHEMICAL CORP.

648.    UNION PACIFIC repeats and realleges paragraphs 1, 19, 21, and 31 through 51 hereof as if fully set forth herein.

649.    At all times material, Keith Paddyfoote was or is a principal and/or officer in Defendant Suntrust Chemical, Inc. ("Suntrust"), and directed and was responsible for the telemarketing and other practices employed by Suntrust.

650.    UNION PACIFIC has conferred a series of benefits, in the form of financial windfalls and monies advanced for non-delivered goods, overcharged goods, excessive restocking charges for unordered goods that were returned, and other benefits and/or consideration on Suntrust.  Suntrust is aware of the financial windfalls and benefits so conferred by UNION PACIFIC and have retained them.

651.    Suntrust has damaged UNION PACIFIC in that it has wrongfully accepted and retained the windfalls and benefits conferred by UNION PACIFIC and have wrongfully failed to pay or reimburse those benefits back to UNION PACIFIC.

652.    Under the circumstances, it would be inequitable and unjust for Suntrust to retain the benefits conferred by UNION PACIFIC upon them, and Suntrust should be disgorged of any and all such unearned, undeserved and unwarranted benefits.

**WHEREFORE**, UNION PACIFIC demands judgment against SUNTRUST CHEMICAL CORP. for damages in an amount to be proven at trial, plus interest, costs and any and all such other and further relief as this Court deems just and proper.

### COUNT 66
### FRAUDULENT MISREPRESENTATION OF SALES TRANSACTIONS WITH THE INTENT TO DECEIVE AND DEFRAUD AGAINST SUNTRUST CHEMICAL CORP.

653.    UNION PACIFIC repeats and realleges paragraphs 1, 19, 21, and 31 through 51 hereof as if fully set forth herein.

654.    At all times material, Keith Paddyfoote was or is a principal and/or officer in Defendant Suntrust and directed and was responsible for the telemarketing and other practices employed by Suntrust.

655.    At all times material, Suntrust's telemarketers, conversed with UNION PACIFIC employees for the purpose of informing and persuading UNION PACIFIC to purchase chemical products, cleaning products and lubricants.

656.    Suntrust made such statements and representations either knowing them to be false, or with a reckless disregard as to whether they were true or false.

657.    Suntrust made such statements and representations with the intention that UNION PACIFIC rely on them to its detriment.

658.   At all times material, as a direct and proximate result of Suntrust's false statements, UNION PACIFIC has incurred unauthorized credit card charges for unordered and undelivered goods, excessive charges for unordered goods, overcharges for unordered goods, overcharges, excessive freight charges for shipments, and excessive restocking fees.

659.   As a direct and proximate result of all Suntrust's false statements, UNION PACIFIC has been damaged. Specifically, UNION PACIFIC has suffered actual damages in connection with unauthorized credit card charges for unordered and undelivered goods, excessive charges for unordered goods, overcharges for unordered goods, overcharges, excessive freight charges for shipments, and excessive restocking fees.

660.   UNION PACIFIC's damages and injuries were a direct and proximate result of the above-described false statements made by Suntrust to UNION PACIFIC.

**WHEREFORE**, UNION PACIFIC demands judgment against SUNTRUST CHEMICAL CORP. for damages in an amount to be proven at trial, plus interest, costs and any and all such other and further relief as this Court deems just and proper.

## COUNT 67
### VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT BY SUNTRUST CHEMICAL CORP.

661.   UNION PACIFIC repeats and realleges paragraphs 1, 19, 21, and 31 through 51 hereof as if fully set forth herein.

662.   At all times material, Keith Paddyfoote was or is a principal and/or officer in Defendant Suntrust and directed and was responsible for the telemarketing and other practices employed by Suntrust.

663.   At all times material, the purported sales by Suntrust of chemical products, cleaning products and lubricants to UNION PACIFIC in this cause were "consumer transactions" within the scope of the Florida Deceptive and Unfair Trade Practices Act, §§ 501.201 to 501.213, Florida Statutes.

664.   In engaging in the conduct previously described, Suntrust has committed unfair and deceptive trade practices in connection with the purported sale of chemical products, cleaning products and lubricants, including but not limited to: billing charges to UNION PACIFIC credit cards without authorization; failing to deliver the goods that were being charged to UNION PACIFIC credit cards; providing a choice of paying a reduced invoice price on the unordered merchandise or returning the merchandise and paying a substantial restocking fee when UNION PACIFIC disputed the bills; wrongfully utilizing telemarketing tactics to coerce UNION PACIFIC to pay for expensive products it did not want or order; and misrepresenting and/or failing to clearly disclose all relevant information regarding the cost of the goods, the restrictions and conditions on the purchase of these items, and Suntrust 's cancellation policy details.

665.   As a result of Suntrust's unlawful conduct, UNION PACIFIC has suffered actual damages in connection with unauthorized credit card charges for unordered and undelivered goods, excessive charges for unordered goods, overcharges for unordered

goods, overcharges, excessive freight charges for shipments, and excessive restocking fees.

666.   Union Pacific has retained the services of the undersigned attorneys to bring this action, and has agreed to pay them a reasonable fee.  Such fee is claimed from Suntrust pursuant to § 501.2105 and § 501.211, Florida Statues.

**WHEREFORE,** UNION PACIFIC demands judgment against SUNTRUST CHEMICAL CORP. for damages, in an amount to be proven at trial, plus interest, costs, consequential damages, attorneys' fees pursuant to § 501.2105 and § 501.211, Florida Statutes, and any and all other relief that this Court deems just and proper.

## COUNT 68
### VIOLATION OF RICO BY SUNTRUST CHEMICAL CORP.
### 18 U.S.C. § 1961 et seq.

667.   UNION PACIFIC repeats and realleges paragraphs 1, 19, 21, and 31 through 51 hereof as if fully set forth herein.

668.   At all times material, Keith Paddyfoote was or is a principal and/or officer in Defendant Suntrust and directed and was responsible for the telemarketing and other practices employed by Suntrust.

669.   At all times material, Suntrust's telemarketers, conversed with UNION PACIFIC employees for the purpose of informing  and persuading UNION PACIFIC to purchase chemical products, cleaning products and lubricants.

670.   Suntrust, through its principals and/or officers, directed, authorized and/or participated in telemarketing practices which included statements and representations either

knowing them to be false, or with a reckless disregard as to whether they were true or false. Suntrust made such statements and representations with the intention that UNION PACIFIC rely on them to its detriment.

671.    At all times material, as a direct and proximate result of Suntrust's false statements, UNION PACIFIC has incurred unauthorized credit card charges for unordered and undelivered goods, excessive charges for unordered goods, overcharges for unordered

672.    This count arises under the Racketeer Influenced and Corrupt Practices Act, 18 U.S.C. § 1961 et seq.

673.    Suntrust is an enterprise within the meaning of 18 U.S.C. § 1961(4), which is engaged in, or the activities of which affect, interstate commerce.    The fraudulent misrepresentation detailed above were made by Suntrust to Plaintiff.

674.    The fraudulent misrepresentation set forth above represented a scheme and artifice to defraud Plaintiff, which was facilitated by use of the United States Mail, caused by Suntrust, and resulting in mail fraud within the meaning of 18 U.S.C. § 1341.

675.    Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(B).

676.    The fraudulent misrepresentation set forth above represented a scheme and artifice to defraud Plaintiff, which was facilitated by use of telephones, caused by Suntrust, and resulting in wire fraud within the meaning of 18 U.S.C. § 1343.

677.    Wire fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(B).

678.    The fraudulent misrepresentation set forth above represented a scheme and artifice to defraud Plaintiff, which was facilitated by use of the financial institutions, caused by Suntrust, and resulting in bank fraud within the meaning of 18 U.S.C. § 1344.

679.    Bank fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(B).

680.    Suntrust and Suntrust's agents, associates, and representatives, have conducted, and have conspired to conduct, the affairs of Suntrust through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c), (d).

681.    As a direct and proximate cause result of these violations of 18 U.S.C. §1962(c), (d), Plaintiff has suffered actual damages as a result of injury to its business and property of at least $30,028.75.

682.    Suntrust is liable to Plaintiff for treble damages, together with all costs of this action plus reasonable attorneys' fees, all as provided under 18 U.S.C. § 1964(c).

**WHEREFORE,** UNION PACIFIC demands judgment against SUNTRUST CHEMICAL CORP. for treble damages, in an amount to be proven at trial, plus interest, costs, attorneys' fees pursuant to 18 U.S.C. 1962(c), and any and all other relief that this Court deems just and proper.

### COUNT 69
### BREACH OF IMPLIED IN LAW CONTRACT (UNJUST ENRICHMENT) AGAINST K.A.P.S. CHEMICALS, INC.

683.    UNION PACIFIC repeats and realleges paragraphs 1, 20, 21, and 31 through 51 hereof as if fully set forth herein.

CASE NO. 06-60873-CIV-COHN

684.   At all times material, Keith Paddyfoote was or is a principal and/or officer in Defendant K.A.P.S. Chemicals, Inc. ("K.A.P.S."), and directed and was responsible for the telemarketing and other practices employed by K.A.P.S.

685.   UNION PACIFIC has conferred a series of benefits, in the form of financial windfalls and monies advanced for non-delivered goods, overcharged goods, excessive restocking charges for unordered goods that were returned, and other benefits and/or consideration on K.A.P.S.  K.A.P.S. is aware of the financial windfalls and benefits so conferred by UNION PACIFIC and have retained them.

686.   K.A.P.S. has damaged UNION PACIFIC in that it has wrongfully accepted and retained the windfalls and benefits conferred by UNION PACIFIC and have wrongfully failed to pay or reimburse those benefits back to UNION PACIFIC.

687.   Under the circumstances, it would be inequitable and unjust for K.A.P.S. to retain the benefits conferred by UNION PACIFIC upon them, and K.A.P.S. should be disgorged of any and all such unearned, undeserved and unwarranted benefits.

**WHEREFORE**, UNION PACIFIC demands judgment against K.A.P.S. CHEMICALS, INC. for damages in an amount to be proven at trial, plus interest, costs and any and all such other and further relief as this Court deems just and proper.

### COUNT 70
### FRAUDULENT MISREPRESENTATION OF SALES TRANSACTIONS WITH THE INTENT TO DECEIVE AND DEFRAUD AGAINST K.A.P.S. CHEMICALS, INC.

688.   UNION PACIFIC repeats and realleges paragraphs 1, 20, 21, and 31 through 51 hereof as if fully set forth herein.

689.   At all times material, Keith Paddyfoote was or is a principal and/or officer in Defendant K.A.P.S., and directed and was responsible for the telemarketing and other practices employed by K.A.P.S.

690.   At all times material, K.A.P.S.'s telemarketers, conversed with UNION PACIFIC employees for the purpose of informing and persuading UNION PACIFIC to purchase chemical products, cleaning products and lubricants.

691.   K.A.P.S. made such statements and representations either knowing them to be false, or with a reckless disregard as to whether they were true or false.

692.   K.A.P.S. made such statements and representations with the intention that UNION PACIFIC rely on them to its detriment.

693.   At all times material, as a direct and proximate result of K.A.P.S.'s false statements, UNION PACIFIC has incurred unauthorized credit card charges for unordered and undelivered goods, excessive charges for unordered goods, overcharges for unordered goods, overcharges, excessive freight charges for shipments, and excessive restocking fees.

694.   As a direct and proximate result of all K.A.P.S.'s false statements, UNION PACIFIC has been damaged. Specifically, UNION PACIFIC has suffered actual damages in connection with unauthorized credit card charges for unordered and undelivered goods, excessive charges for unordered goods, overcharges for unordered goods, overcharges, excessive freight charges for shipments, and excessive restocking fees.

695.   UNION PACIFIC's damages and injuries were a direct and proximate result of the above-described false statements made by K.A.P.S. to UNION PACIFIC.

**WHEREFORE**, UNION PACIFIC demands judgment against K.A.P.S. CHEMICALS, INC. for damages in an amount to be proven at trial, plus interest, costs and any and all such other and further relief as this Court deems just and proper.

## <u>COUNT 71</u>
### VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT BY K.A.P.S. CHEMICALS, INC.

696.   UNION PACIFIC repeats and realleges paragraphs 1, 20, 21, and 31 through 51 hereof as if fully set forth herein.

697.   At all times material, Keith Paddyfoote was or is a principal and/or officer in Defendant K.A.P.S., and directed and was responsible for the telemarketing and other practices employed by K.A.P.S.

698.   At all times material, the purported sales by K.A.P.S. of chemical products, cleaning products and lubricants to UNION PACIFIC in this cause were "consumer transactions" within the scope of the Florida Deceptive and Unfair Trade Practices Act, §§ 501.201 to 501.213, Florida Statutes.

699.   In engaging in the conduct previously described, K.A.P.S. has committed unfair and deceptive trade practices in connection with the purported sale of chemical products, cleaning products and lubricants, including but not limited to: billing charges to UNION PACIFIC credit cards without authorization; failing to deliver the goods that were being charged to UNION PACIFIC credit cards; providing a choice of paying a reduced

invoice price on the unordered merchandise or returning the merchandise and paying a substantial restocking fee when UNION PACIFIC disputed the bills; wrongfully utilizing telemarketing tactics to coerce UNION PACIFIC to pay for expensive products it did not want or order; and misrepresenting and/or failing to clearly disclose all relevant information regarding the cost of the goods, the restrictions and conditions on the purchase of these items, and K.A.P.S.'s cancellation policy details.

700.   As a result of K.A.P.S.'s unlawful conduct, UNION PACIFIC has suffered actual damages in connection with unauthorized credit card charges for unordered and undelivered goods, excessive charges for unordered goods, overcharges for unordered goods, overcharges, excessive freight charges for shipments, and excessive restocking fees.

701.   Union Pacific has retained the services of the undersigned attorneys to bring this action, and has agreed to pay them a reasonable fee.  Such fee is claimed from K.A.P.S. pursuant to  § 501.2105 and § 501.211, Florida Statues.

**WHEREFORE,** UNION PACIFIC demands judgment against K.A.P.S. CHEMICALS, INC. for damages, in an amount to be proven at trial, plus interest, costs, consequential damages, attorneys' fees pursuant to § 501.2105 and § 501.211, Florida Statutes, and any and all other relief that this Court deems just and proper.

### COUNT 72
### VIOLATION OF RICO BY K.A.P.S. CHEMICALS, INC.
### 18 U.S.C. § 1961 et seq.

702.   UNION PACIFIC repeats and realleges paragraphs 1, 20, 21, and 31 through 51 hereof as if fully set forth herein.

703.   At all times material, Keith Paddyfoote was or is a principal and/or officer in Defendant K.A.P.S., and directed and was responsible for the telemarketing and other practices employed by K.A.P.S.

704.   At all times material, K.A.P.S.'s telemarketers, conversed with UNION PACIFIC employees for the purpose of informing  and persuading UNION PACIFIC to purchase chemical products, cleaning products and lubricants.

705.   K.A.P.S., through its principals and/or officers, directed, authorized and/or participated in telemarketing practices which included statements and representations either knowing them to be false, or with a reckless disregard as to whether they were true or false. K.A.P.S. made such statements and representations with the intention that UNION PACIFIC rely on them to its detriment.

706.   At all times material, as a direct and proximate result of K.A.P.S.'s false statements, UNION PACIFIC has incurred unauthorized credit card charges for unordered and undelivered goods, excessive charges for unordered goods, overcharges for unordered goods, overcharges, excessive freight charges for shipments, and excessive restocking fees.

707.   This count arises under the Racketeer Influenced and Corrupt Practices Act, 18 U.S.C. § 1961 et seq.

708.    K.A.P.S. is an enterprise within the meaning of 18 U.S.C. § 1961(4), which is engaged in, or the activities of which affect, interstate commerce.   The fraudulent misrepresentation detailed above were made by K.A.P.S. to Plaintiff.

709.    The fraudulent misrepresentation set forth above represented a scheme and artifice to defraud Plaintiff, which was facilitated by use of the United States Mail, caused by K.A.P.S. , and resulting in mail fraud within the meaning of 18 U.S.C. § 1341.

710.    Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(B).

711.    The fraudulent misrepresentation set forth above represented a scheme and artifice to defraud Plaintiff, which was facilitated by use of telephones, caused by K.A.P.S., and resulting in wire fraud within the meaning of 18 U.S.C. § 1343.

712.    Wire fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(B).

713.    The fraudulent misrepresentation set forth above represented a scheme and artifice to defraud Plaintiff, which was facilitated by use of the financial institutions, caused by K.A.P.S. , and resulting in bank fraud within the meaning of 18 U.S.C. § 1344.

714.    Bank fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(B).

715.    K.A.P.S. and K.A.P.S.'s agents, associates, and representatives, have conducted, and have conspired to conduct, the affairs of K.A.P.S. through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c), (d).

716.   As a direct and proximate cause result of these violations of 18 U.S.C. §1962(c), (d), Plaintiff has suffered actual damages as a result of injury to its business and property of at least $10,873.00.

717.   K.A.P.S. is liable to Plaintiff for treble damages, together with all costs of this action plus reasonable attorneys' fees, all as provided under 18 U.S.C. § 1964(c).

**WHEREFORE,** UNION PACIFIC demands judgment against K.A.P.S. CHEMICALS, INC. for treble damages, in an amount to be proven at trial, plus interest, costs, attorneys' fees pursuant to 18 U.S.C. 1962(c), and any and all other relief that this Court deems just and proper.

### COUNT 73
### VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR
### TRADE PRACTICES ACT BY KEITH PADDYFOOTE

718.   UNION PACIFIC repeats and realleges  paragraphs 1, 19 through 21, and 31 through 51 hereof as if fully set forth herein.

719.   At all times material, Keith Paddyfote ("PADDYFOTE") was or is a principal and/or officer in Defendants Suntrust Chemical, Inc. and K.A.P.S. Chemicals, Inc., and directed and was responsible for the telemarketing and other practices employed by Suntrust Chemical, Inc. and K.A.P.S. Chemicals, Inc.

720.   At all times material, PADDYFOTE maintained institutional control of Suntrust Chemical Corp. and K.A.P.S. Chemicals, Inc.

721.   Upon information and belief, PADDYFOTE exclusively designed, developed and implemented the telemarketing tactics utilized by Suntrust Chemical Corp. and K.A.P.S.

Chemicals, Inc. and he directed and controlled the telemarketers who contacted UNION PACIFIC regarding the purported sale of chemical products, cleaning products and lubricants.

722. PADDYFOTE participated directly in the deceptive practices or acts of Suntrust Chemical Corp. and K.A.P.S. Chemicals, Inc. and/or possessed the authority to control the deceptive practices or acts perpetrated by Suntrust Chemical Corp. and K.A.P.S. Chemicals, Inc. in connection with the purported sale of chemical products, cleaning products and lubricants to UNION PACIFIC, including but not limited to: billing charges to UNION PACIFIC credit cards without authorization; failing to deliver the goods that were being charged to UNION PACIFIC credit cards; providing a choice of paying a reduced invoice on the unordered merchandise or returning the merchandise and paying a substantial restocking fee when UNION PACIFIC disputed the bills; wrongfully utilizing telemarketing tactics to coerce UNION PACIFIC to pay for expensive products it did not want to order, and misrepresenting and/or failing to clearly disclose all relevant information regarding the cost of the goods, the restrictions and conditions on the purchase of these items, and the cancellation policy details of Suntrust Chemical Corp. and K.A.P.S. Chemicals, Inc.

723. PADDYFOTE's actions constitute a violation of the Florida Deceptive Trade Practices Act, §501.201, *et seq.*, Florida Statutes.

724.   UNION PACIFIC has retained the services of the undersigned attorneys to bring this action, and has agreed to pay them a reasonable fee.  Such fee is claimed from PADDYFOTE pursuant to §501.2105 and §501.211, Florida Statutes.

**WHEREFORE**, UNION PACIFIC demands judgment against KEITH PADDYFOTE for damages, in an amount to be proven at trial, plus interest, costs, consequential damages, attorneys' fees pursuant to §501.2105 and §501.211, Florida Statutes, and any and all other relief that this Court deems just and proper.

**COUNT 74**
**VIOLATION OF RICO BY KEITH PADDYFOTE**
**18 U.S.C. § 1961 et seq.**

725.   UNION PACIFIC repeats and realleges paragraphs 1, 19 through 21, and 31 through 51 hereof as if fully set forth herein.

726.   At all times material, PADDYFOTE was or is a principal and/or officer in Defendants Suntrust Chemical, Inc. and K.A.P.S. Chemicals, Inc., and directed and was responsible for the telemarketing and other practices employed by Suntrust Chemical, Inc. and K.A.P.S. Chemicals, Inc.

727.   At all times material, PADDYFOTE's telemarketers, conversed with UNION PACIFIC employees for the purpose of informing  and persuading UNION PACIFIC to purchase chemical products, cleaning products and lubricants.

728.   PADDYFOTE directed, authorized and/or participated in telemarketing practices which included statements and representations either knowing them to be false, or with a reckless disregard as to whether they were true or false.  PADDYFOTE made or

Page 162 of  219

caused such statements and representations with the intention that UNION PACIFIC rely on them to its detriment.

729.   At all times material, as a direct and proximate result of PADDYFOTE's false statements, UNION PACIFIC has incurred unauthorized credit card charges for unordered and undelivered goods, excessive charges for unordered goods, overcharges for unordered goods, overcharges, excessive freight charges for shipments, and excessive restocking fees.

730.   This count arises under the Racketeer Influenced and Corrupt Practices Act, 18 U.S.C. § 1961 et seq.

731.   PADDYFOTE is an enterprise within the meaning of 18 U.S.C. § 1961(4), which is engaged in, or the activities of which affect, interstate commerce.  The fraudulent misrepresentation detailed above were made by PADDYFOTE to Plaintiff.

732.   The fraudulent misrepresentation set forth above represented a scheme and artifice to defraud Plaintiff, which was facilitated by use of the United States Mail, caused by PADDYFOTE, and resulting in mail fraud within the meaning of 18 U.S.C. § 1341.

733.   Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(B).

734.   The fraudulent misrepresentation set orth above represented a scheme and artifice to defraud Plaintiff, which was facilitated by use of telephones, caused by PADDYFOTE, and resulting in wire fraud within the meaning of 18 U.S.C. § 1343.

735   Wire fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(B).

736.   The fraudulent misrepresentation set forth above represented a scheme and artifice to defraud Plaintiff, which was facilitated by use of the financial institutions, caused by PADDYFOTE, and resulting in bank fraud within the meaning of 18 U.S.C. § 1344.

737.   Bank fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(B).

738.   PADDYFOTE and PADDYFOTE's agents, associates, and representatives, have conducted, and have conspired to conduct, the affairs of PADDYFOTE through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c), (d).

739.   As a direct and proximate cause result of these violations of 18 U.S.C. §1962(c), (d), Plaintiff has suffered actual damages as a result of injury to its business and property of at least $40,901.75.

740.   PADDYFOTE is liable to Plaintiff for treble damages, together with all costs of this action plus reasonable attorneys' fees, all as provided under 18 U.S.C. § 1964(c).

**WHEREFORE,** UNION PACIFIC demands judgment against KEITH PADDYFOTE for treble damages, in an amount to be proven at trial, plus interest, costs, attorneys' fees pursuant to 18 U.S.C. 1962(c), and any and all other relief that this Court deems just and proper.

## COUNT 75
## BREACH OF IMPLIED IN LAW CONTRACT (UNJUST ENRICHMENT)
## AGAINST SELECTRA LABS, INC.

741.   UNION PACIFIC repeats and realleges paragraphs 1, 22 through 24, and 31 through 51 hereof as if fully set forth herein.

742.   At all times material, Nicoy Bomar and Judy R. Lewis were or are principals and/or officers in Defendant Selectra Labs, Inc. ("SELECTRA"), and directed and were responsible for the telemarketing and other practices employed by SELECTRA.

743.   UNION PACIFIC has conferred a series of benefits, in the form of financial windfalls and monies advanced for non-delivered goods, overcharged goods, excessive restocking charges for unordered goods that were returned, and other benefits and/or consideration on SELECTRA.  SELECTRA is aware of the financial windfalls and benefits so conferred by UNION PACIFIC and have retained them.

744.   SELECTRA has damaged UNION PACIFIC in that it has wrongfully accepted and retained the windfalls and benefits conferred by UNION PACIFIC and have wrongfully failed to pay or reimburse those benefits back to UNION PACIFIC.

745.   Under the circumstances, it would be inequitable and unjust for SELECTRA to retain the benefits conferred by UNION PACIFIC upon them, and SELECTRA should be disgorged of any and all such unearned, undeserved and unwarranted benefits.

CASE NO. 06-60873-CIV-COHN

**WHEREFORE**, UNION PACIFIC demands judgment against SELECTRA LABS, INC. for damages in an amount to be proven at trial, plus interest, costs and any and all such other and further relief as this Court deems just and proper.

## COUNT 76
### FRAUDULENT MISREPRESENTATION OF SALES TRANSACTIONS WITH THE INTENT TO DECEIVE AND DEFRAUD AGAINST SELECTRA LABS, INC.

746. UNION PACIFIC repeats and realleges paragraphs 1, 22 through 24, and 31 through 51 hereof as if fully set forth herein.

747. At all times material, Nicoy Bomar and Judy R. Lewis were or are principals and/or officers in Defendant SELECTRA, and directed and were responsible for the telemarketing and other practices employed by SELECTRA.

748. At all times material, SELECTRA's telemarketers, conversed with UNION PACIFIC employees for the purpose of informing and persuading UNION PACIFIC to purchase chemical products, cleaning products and lubricants.

749. SELECTRA made such statements and representations either knowing them to be false, or with a reckless disregard as to whether they were true or false.

750. SELECTRA made such statements and representations with the intention that UNION PACIFIC rely on them to its detriment.

751. At all times material, as a direct and proximate result of SELECTRA's false statements, UNION PACIFIC has incurred unauthorized credit card charges for unordered and undelivered goods, excessive charges for unordered goods, overcharges for unordered

goods, overcharges, excessive freight charges for shipments, and excessive restocking fees.

752.    As a direct and proximate result of all SELECTRA's false statements, UNION PACIFIC has been damaged. Specifically, UNION PACIFIC has suffered actual damages in connection with unauthorized credit card charges for unordered and undelivered goods, excessive charges for unordered goods, overcharges for unordered goods, overcharges, excessive freight charges for shipments, and excessive restocking fees.

753.    UNION PACIFIC's damages and injuries were a direct and proximate result of the above-described false statements made by SELECTRA to UNION PACIFIC.

**WHEREFORE**, UNION PACIFIC demands judgment against SELECTRA LABS, INC. for damages in an amount to be proven at trial, plus interest, costs and any and all such other and further relief as this Court deems just and proper.

## COUNT 77
## VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT BY SELECTRA LABS, INC.

754.    UNION PACIFIC repeats and realleges  paragraphs 1, 22 through 24, and 31 through 51 hereof as if fully set forth herein.

755.    At all times material, Nicoy Bomar and Judy R. Lewis were or are principals and/or officers in Defendant SELECTRA, and directed and were responsible for the telemarketing and other practices employed by SELECTRA.

756.    At all times material, the purported sales by SELECTRA of chemical products, cleaning products and lubricants to UNION PACIFIC in this cause were "consumer

CASE NO. 06-60873-CIV-COHN

transactions" within the scope of the Florida Deceptive and Unfair Trade Practices Act, §§ 501.201 to 501.213, Florida Statutes.

757.    In engaging in the conduct previously described, SELECTRA has committed unfair and deceptive trade practices in connection with the purported sale of chemical products, cleaning products and lubricants, including but not limited to: billing charges to UNION PACIFIC credit cards without authorization; failing to deliver the goods that were being charged to UNION PACIFIC credit cards; providing a choice of paying a reduced invoice price on the unordered merchandise or returning the merchandise and paying a substantial restocking fee when UNION PACIFIC disputed the bills; wrongfully utilizing telemarketing tactics to coerce UNION PACIFIC to pay for expensive products it did not want or order; and misrepresenting and/or failing to clearly disclose all relevant information regarding the cost of the goods, the restrictions and conditions on the purchase of these items, and SELECTRA's cancellation policy details.

758.    As a result of SELECTRA's unlawful conduct, UNION PACIFIC has suffered actual damages in connection with unauthorized credit card charges for unordered and undelivered goods, excessive charges for unordered goods, overcharges for unordered goods, overcharges, excessive freight charges for shipments, and excessive restocking fees.

759.    Union Pacific has retained the services of the undersigned attorneys to bring this action, and has agreed to pay them a reasonable fee.  Such fee is claimed from SELECTRA pursuant to  § 501.2105 and § 501.211, Florida Statues.

**WHEREFORE,** UNION PACIFIC demands judgment against SELECTRA LABS, INC. for damages, in an amount to be proven at trial, plus interest, costs, consequential damages, attorneys' fees pursuant to § 501.2105 and § 501.211, Florida Statutes, and any and all other relief that this Court deems just and proper.

### COUNT 78
### VIOLATION OF RICO BY SELECTRA LABS, INC.
### 18 U.S.C. § 1961 et seq.

760.   UNION PACIFIC repeats and realleges  paragraphs 1, 22 through 24, and 31 through 51 hereof as if fully set forth herein.

761.   At all times material, Nicoy Bomar and Judy R. Lewis were or are principals and/or officers in Defendant SELECTRA, and directed and were responsible for the telemarketing and other practices employed by SELECTRA.

762.   At all times material, SELECTRA's telemarketers, conversed with UNION PACIFIC employees for the purpose of informing  and persuading UNION PACIFIC to purchase chemical products, cleaning products and lubricants.

763.   SELECTRA, through its principals and/or officers, directed, authorized and/or participated in telemarketing practices which included statements and representations either knowing them to be false, or with a reckless disregard as to whether they were true or false. SELECTRA made such statements and representations with the intention that UNION PACIFIC rely on them to its detriment.

764.   At all times material, as a direct and proximate result of SELECTRA's false statements, UNION PACIFIC has incurred unauthorized credit card charges for unordered

and undelivered goods, excessive charges for unordered goods, overcharges for unordered goods, overcharges, excessive freight charges for shipments, and excessive restocking fees.

765.    This count arises under the Racketeer Influenced and Corrupt Practices Act, 18 U.S.C. § 1961 et seq.

766.    SELECTRA is an enterprise within the meaning of 18 U.S.C. § 1961(4), which is engaged in, or the activities of which affect, interstate commerce.  The fraudulent misrepresentation detailed above were made by SELECTRA to Plaintiff.

767.    The fraudulent misrepresentation set forth above represented a scheme and artifice to defraud Plaintiff, which was facilitated by use of the United States Mail, caused by SELECTRA , and resulting in mail fraud within the meaning of 18 U.S.C. § 1341.

768.    Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(B).

769.    The fraudulent misrepresentation set forth above represented a scheme and artifice to defraud Plaintiff, which was facilitated by use of telephones, caused by SELECTRA, and resulting in wire fraud within the meaning of 18 U.S.C. § 1343.

770.    Wire fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(B).

771.    The fraudulent misrepresentation set forth above represented a scheme and artifice to defraud Plaintiff, which was facilitated by use of the financial institutions, caused by SELECTRA , and resulting in bank fraud within the meaning of 18 U.S.C. § 1344.

772.    Bank fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(B).

773.    SELECTRA  and SELECTRA 's agents, associates, and representatives, have conducted, and have conspired to conduct, the affairs of SELECTRA through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c), (d).

774.    As a direct and proximate cause result of these violations of 18 U.S.C. §1962(c), (d), Plaintiff has suffered actual damages as a result of injury to its business and property of at least $3,215.36.

775.    SELECTRA is liable to Plaintiff for treble damages, together with all costs of this action plus reasonable attorneys' fees, all as provided under 18 U.S.C. § 1964(c).

**WHEREFORE,** UNION PACIFIC demands judgment against SELECTRA LABS, INC. for treble damages, in an amount to be proven at trial, plus interest, costs, attorneys' fees pursuant to 18 U.S.C. 1962(c), and any and all other relief that this Court deems just and proper.

## COUNT 79
## VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR
## TRADE PRACTICES ACT BY NICOY BOMAR

776.    UNION PACIFIC repeats and realleges paragraphs 1, 22, 23, and 31 through 51 hereof as if fully set forth herein.

777.    At all times material, Nicoy Bomar ("BOMAR") was and is a principal and/or officer in Defendant SELECTRA, and directed and were responsible for the telemarketing and other practices employed by SELECTRA.

778.   At all times material, BOMAR maintained institutional control of SELECTRA.

779.   Upon information and belief, BOMAR exclusively designed, developed and implemented the telemarketing tactics utilized by SELECTRA and she directed and controlled the telemarketers who contacted UNION PACIFIC regarding the purported sale of chemical products, cleaning products and lubricants.

780.   BOMAR participated directly in the deceptive practices or acts of SELECTRA and/or possessed the authority to control the deceptive practices or acts perpetrated by SELECTRA in connection with the purported sale of chemical products, cleaning products and lubricants to UNION PACIFIC, including but not limited to: billing charges to UNION PACIFIC credit cards without authorization; failing to deliver the goods that were being charged to UNION PACIFIC credit cards; providing a choice of paying a reduced invoice on the unordered merchandise or returning the merchandise and paying a substantial restocking fee when UNION PACIFIC disputed the bills; wrongfully utilizing telemarketing tactics to coerce UNION PACIFIC to pay for expensive products it did not want to order, and misrepresenting and/or failing to clearly disclose all relevant information regarding the cost of the goods, the restrictions and conditions on the purchase of these items, and the cancellation policy details of SELECTRA.

781.   BOMAR's actions constitute a violation of the Florida Deceptive Trade Practices Act, §501.201, *et seq.*, Florida Statutes.

782.   UNION PACIFIC has retained the services of the undersigned attorneys to bring this action, and has agreed to pay them a reasonable fee.  Such fee is claimed from BOMAR pursuant to §501.2105 and §501.211, Florida Statutes.

**WHEREFORE**, UNION PACIFIC demands judgment against NICOY BOMAR for damages, in an amount to be proven at trial, plus interest, costs, consequential damages, attorneys' fees pursuant to §501.2105 and §501.211, Florida Statutes, and any and all other relief that this Court deems just and proper.

## COUNT 80
### VIOLATION OF RICO BY NICOY BOMAR
### 18 U.S.C. § 1961 et seq.

783.   UNION PACIFIC repeats and realleges paragraphs 1, 22, 23, and 31 through 51 hereof as if fully set forth herein.

784.   At all times material, BOMAR was and is a principal and/or officer in Defendant SELECTRA, and directed and were responsible for the telemarketing and other practices employed by SELECTRA.

785.   At all times material, BOMAR's telemarketers, conversed with UNION PACIFIC employees for the purpose of informing  and persuading UNION PACIFIC to purchase chemical products, cleaning products and lubricants.

786.   BOMAR directed, authorized and/or participated in telemarketing practices which included statements and representations either knowing them to be false, or with a reckless disregard as to whether they were true or false.  BOMAR made or caused such

statements and representations with the intention that UNION PACIFIC rely on them to its detriment.

787.   At all times material, as a direct and proximate result of BOMAR's false statements, UNION PACIFIC has incurred unauthorized credit card charges for unordered and undelivered goods, excessive charges for unordered goods, overcharges for unordered goods, overcharges, excessive freight charges for shipments, and excessive restocking fees.

788.   This count arises under the Racketeer Influenced and Corrupt Practices Act, 18 U.S.C. § 1961 et seq.

789.   BOMAR is an enterprise within the meaning of 18 U.S.C. § 1961(4), which is engaged in, or the activities of which affect, interstate commerce.   The fraudulent misrepresentation detailed above were made by BOMAR to Plaintiff.

790.   The fraudulent misrepresentation set forth above represented a scheme and artifice to defraud Plaintiff, which was facilitated by use of the United States Mail, caused by BOMAR, and resulting in mail fraud within the meaning of 18 U.S.C. § 1341.

791.   Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(B).

792.   The fraudulent misrepresentation set forth above represented a scheme and artifice to defraud Plaintiff, which was facilitated by use of telephones, caused by BOMAR, and resulting in wire fraud within the meaning of 18 U.S.C. § 1343.

793.   Wire fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(B).

794.   The fraudulent misrepresentation set forth above represented a scheme and artifice to defraud Plaintiff, which was facilitated by use of the financial institutions, caused by BOMAR, and resulting in bank fraud within the meaning of 18 U.S.C. § 1344.

795.   Bank fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(B).

796.   BOMAR and BOMAR's agents, associates, and representatives, have conducted, and have conspired to conduct, the affairs of BOMAR through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c), (d).

797.   As a direct and proximate cause result of these violations of 18 U.S.C. §1962(c), (d), Plaintiff has suffered actual damages as a result of injury to its business and property of at least $3,215.36.

798.   BOMAR is liable to Plaintiff for treble damages, together with all costs of this action plus reasonable attorneys' fees, all as provided under 18 U.S.C. § 1964(c).

**WHEREFORE,** UNION PACIFIC demands judgment against NICOY BOMAR for treble damages, in an amount to be proven at trial, plus interest, costs, attorneys' fees pursuant to 18 U.S.C. 1962(c), and any and all other relief that this Court deems just and proper.

## COUNT 81
## VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR
## TRADE PRACTICES ACT BY JUDY R. LEWIS

799.   UNION PACIFIC repeats and realleges paragraphs 1, 22, 24, and 31 through 51 hereof as if fully set forth herein.

800.   At all times material, Judy R. Lewis ("LEWIS") was or is a principal and/or officer in Defendant SELECTRA, and directed and were responsible for the telemarketing and other practices employed by SELECTRA.

801.   At all times material, LEWIS maintained institutional control of Suntrust Chemical Corp. and SELECTRA LABS, INC.

802.   Upon information and belief, LEWIS exclusively designed, developed and implemented the telemarketing tactics utilized by SELECTRA and she directed and controlled the telemarketers who contacted UNION PACIFIC regarding the purported sale of chemical products, cleaning products and lubricants.

803.   LEWIS participated directly in the deceptive practices or acts of SELECTRA and/or possessed the authority to control the deceptive practices or acts perpetrated by SELECTRA in connection with the purported sale of chemical products, cleaning products and lubricants to UNION PACIFIC, including but not limited to: billing charges to UNION PACIFIC credit cards without authorization; failing to deliver the goods that were being charged to UNION PACIFIC credit cards; providing a choice of paying a reduced invoice on the unordered merchandise or returning the merchandise and paying a substantial restocking fee when UNION PACIFIC disputed the bills; wrongfully utilizing

telemarketing tactics to coerce UNION PACIFIC to pay for expensive products it did not want to order, and misrepresenting and/or failing to clearly disclose all relevant information regarding the cost of the goods, the restrictions and conditions on the purchase of these items, and the cancellation policy details of SELECTRA LABS, INC.

804.   LEWIS's actions constitute a violation of the Florida Deceptive Trade Practices Act, §501.201, *et seq.*, Florida Statutes.

805.   UNION PACIFIC has retained the services of the undersigned attorneys to bring this action, and has agreed to pay them a reasonable fee.  Such fee is claimed from LEWIS pursuant to §501.2105 and §501.211, Florida Statutes.

**WHEREFORE**, UNION PACIFIC demands judgment against JUDY R. LEWIS for damages, in an amount to be proven at trial, plus interest, costs, consequential damages, attorneys' fees pursuant to §501.2105 and §501.211, Florida Statutes, and any and all other relief that this Court deems just and proper.

**COUNT 82**
**VIOLATION OF RICO BY JUDY R. LEWIS**
**18 U.S.C. § 1961 et seq.**

806.   UNION PACIFIC repeats and realleges paragraphs 1, 22, 24, and 31 through 51 hereof as if fully set forth herein.

807.   At all times material, LEWIS was or is a principal and/or officer in Defendant SELECTRA, and directed and were responsible for the telemarketing and other practices employed by SELECTRA.

808.   At all times material, LEWIS's telemarketers, conversed with UNION PACIFIC employees for the purpose of informing  and persuading UNION PACIFIC to purchase chemical products, cleaning products and lubricants.

809.   LEWIS directed, authorized and/or participated in telemarketing practices which included statements and representations either knowing them to be false, or with a reckless disregard as to whether they were true or false.  LEWIS made or caused such statements and representations with the intention that UNION PACIFIC rely on them to its detriment.

810.   At all times material, as a direct and proximate result of LEWIS's false statements, UNION PACIFIC has incurred unauthorized credit card charges for unordered and undelivered goods, excessive charges for unordered goods, overcharges for unordered goods, overcharges, excessive freight charges for shipments, and excessive restocking fees.

811.   This count arises under the Racketeer Influenced and Corrupt Practices Act, 18 U.S.C. § 1961 et seq.

812.   LEWIS is an enterprise within the meaning of 18 U.S.C. § 1961(4), which is engaged in, or the activities of which affect, interstate commerce.   The fraudulent misrepresentation detailed above were made by LEWIS to Plaintiff.

813.   The fraudulent misrepresentation set forth above represented a scheme and artifice to defraud Plaintiff, which was facilitated by use of the United States Mail, caused by LEWIS, and resulting in mail fraud within the meaning of 18 U.S.C. § 1341.

814. Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(B).

815. The fraudulent misrepresentation set forth above represented a scheme and artifice to defraud Plaintiff, which was facilitated by use of telephones, caused by LEWIS, and resulting in wire fraud within the meaning of 18 U.S.C. § 1343.

816. Wire fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(B).

817. The fraudulent misrepresentation set forth above represented a scheme and artifice to defraud Plaintiff, which was facilitated by use of the financial institutions, caused by LEWIS, and resulting in bank fraud within the meaning of 18 U.S.C. § 1344.

818. Bank fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(B).

819. LEWIS and LEWIS's agents, associates, and representatives, have conducted, and have conspired to conduct, the affairs of LEWIS through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c), (d).

820. As a direct and proximate cause result of these violations of 18 U.S.C. §1962(c), (d), Plaintiff has suffered actual damages as a result of injury to its business and property of at least $3,215.36.

821. LEWIS is liable to Plaintiff for treble damages, together with all costs of this action plus reasonable attorneys' fees, all as provided under 18 U.S.C. § 1964(c).

**WHEREFORE,** UNION PACIFIC demands judgment against JUDY R. LEWIS for treble damages, in an amount to be proven at trial, plus interest, costs, attorneys' fees pursuant to 18 U.S.C. 1962(c), and any and all other relief that this Court deems just and proper.

## COUNT 83
## BREACH OF IMPLIED IN LAW CONTRACT (UNJUST ENRICHMENT) AGAINST PRUDENTIAL CHEMICAL, INC.

822.    UNION PACIFIC repeats and realleges paragraphs 1, 25, 26, and 31 through 51 hereof as if fully set forth herein.

823.    At all times material, Ira Goldberg was or is a principal and/or officer in Defendant Prudential Chemical, Inc.("Prudential"), and directed and was responsible for the telemarketing and other practices employed by Prudential.

824.    UNION PACIFIC has conferred a series of benefits, in the form of financial windfalls and monies advanced for non-delivered goods, overcharged goods, excessive restocking charges for unordered goods that were returned, and other benefits and/or consideration on Prudential.  Prudential is aware of the financial windfalls and benefits so conferred by UNION PACIFIC and have retained them.

825.    Prudential has damaged UNION PACIFIC in that it has wrongfully accepted and retained the windfalls and benefits conferred by UNION PACIFIC and have wrongfully failed to pay or reimburse those benefits back to UNION PACIFIC.

826. Under the circumstances, it would be inequitable and unjust for Prudential to retain the benefits conferred by UNION PACIFIC upon them, and Prudential should be disgorged of any and all such unearned, undeserved and unwarranted benefits.

**WHEREFORE**, UNION PACIFIC demands judgment against PRUDENTIAL CHEMICAL, INC. for damages in an amount to be proven at trial, plus interest, costs and any and all such other and further relief as this Court deems just and proper.

## COUNT 84
## FRAUDULENT MISREPRESENTATION OF SALES TRANSACTIONS WITH THE INTENT TO DECEIVE AND DEFRAUD AGAINST PRUDENTIAL CHEMICAL, INC.

827. UNION PACIFIC repeats and realleges paragraphs 1, 25, 26, and 31 through 51 hereof as if fully set forth herein.

828. At all times material, Ira Goldberg was or is a principal and/or officer in Defendant Prudential, and directed and was responsible for the telemarketing and other practices employed by Prudential.

829. At all times material, Prudential's telemarketers, conversed with UNION PACIFIC employees for the purpose of informing and persuading UNION PACIFIC to purchase chemical products, cleaning products and lubricants.

830. Prudential made such statements and representations either knowing them to be false, or with a reckless disregard as to whether they were true or false.

831. Prudential made such statements and representations with the intention that UNION PACIFIC rely on them to its detriment.

832.     At all times material, as a direct and proximate result of Prudential's false statements, UNION PACIFIC has incurred unauthorized credit card charges for unordered and undelivered goods, excessive charges for unordered goods, overcharges for unordered goods, overcharges, excessive freight charges for shipments, and excessive restocking fees.

833.     As a direct and proximate result of all Prudential's false statements, UNION PACIFIC has been damaged.  Specifically, UNION PACIFIC has suffered actual damages in connection with unauthorized credit card charges for unordered and undelivered goods, excessive charges for unordered goods, overcharges for unordered goods, overcharges, excessive freight charges for shipments, and excessive restocking fees.

834.     UNION PACIFIC's damages and injuries were a direct and proximate result of the above-described false statements made by Prudential to UNION PACIFIC.

**WHEREFORE**, UNION PACIFIC demands judgment against PRUDENTIAL CHEMICAL, INC. for damages in an amount to be proven at trial, plus interest, costs and any and all such other and further relief as this Court deems just and proper.

## COUNT 85
### VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT BY PRUDENTIAL CHEMICAL, INC.

835.     UNION PACIFIC repeats and realleges paragraphs 1, 25, 26, and 31 through 51 hereof as if fully set forth herein.

836.   At all times material, Ira Goldberg was or is a principal and/or officer in Defendant Prudential, and directed and was responsible for the telemarketing and other practices employed by Prudential.

837.   At all times material, the purported sales by Prudential of chemical products, cleaning products and lubricants to UNION PACIFIC in this cause were "consumer transactions" within the scope of the Florida Deceptive and Unfair Trade Practices Act, §§ 501.201 to 501.213, Florida Statutes.

838.   In engaging in the conduct previously described, Prudential has committed unfair and deceptive trade practices in connection with the purported sale of chemical products, cleaning products and lubricants, including but not limited to: billing charges to UNION PACIFIC credit cards without authorization; failing to deliver the goods that were being charged to UNION PACIFIC credit cards; providing a choice of paying a reduced invoice price on the unordered merchandise or returning the merchandise and paying a substantial restocking fee when UNION PACIFIC disputed the bills; wrongfully utilizing telemarketing tactics to coerce UNION PACIFIC to pay for expensive products it did not want or order; and misrepresenting and/or failing to clearly disclose all relevant information regarding the cost of the goods, the restrictions and conditions on the purchase of these items, and Prudential's cancellation policy details.

839.   As a result of Prudential's unlawful conduct, UNION PACIFIC has suffered actual damages in connection with unauthorized credit card charges for unordered and undelivered goods, excessive charges for unordered goods, overcharges for unordered

CASE NO. 06-60873-CIV-COHN

goods, overcharges, excessive freight charges for shipments, and excessive restocking fees.

840.   Union Pacific has retained the services of the undersigned attorneys to bring this action, and has agreed to pay them a reasonable fee.  Such fee is claimed from Prudential pursuant to  § 501.2105 and § 501.211, Florida Statues.

**WHEREFORE,** UNION PACIFIC demands judgment against PRUDENTIAL CHEMICAL, INC. for damages, in an amount to be proven at trial, plus interest, costs, consequential damages, attorneys' fees pursuant to § 501.2105 and § 501.211, Florida Statutes, and any and all other relief that this Court deems just and proper.

### COUNT 86
### VIOLATION OF RICO BY PRUDENTIAL CHEMICAL, INC.
### 18 U.S.C. § 1961 et seq.

841.   UNION PACIFIC repeats and realleges paragraphs 1, 25, 26, and 31 through 51 hereof as if fully set forth herein.

842.   At all times material, Ira Goldberg was or is a principal and/or officer in Defendant Prudential, and directed and was responsible for the telemarketing and other practices employed by Prudential.

843.   At all times material, Prudential's telemarketers, conversed with UNION PACIFIC employees for the purpose of informing  and persuading UNION PACIFIC to purchase chemical products, cleaning products and lubricants.

844.   Prudential, through its principals and/or officers, directed, authorized and/or participated in telemarketing practices which included statements and representations either knowing them to be false, or with a reckless disregard as to whether they were true or false. Prudential made such statements and representations with the intention that UNION PACIFIC rely on them to its detriment.

845.   At all times material, as a direct and proximate result of Prudential's false statements, UNION PACIFIC has incurred unauthorized credit card charges for unordered and undelivered goods, excessive charges for unordered goods, overcharges for unordered goods, overcharges, excessive freight charges for shipments, and excessive restocking fees.

846.   This count arises under the Racketeer Influenced and Corrupt Practices Act, 18 U.S.C. § 1961 et seq.

847.   Prudential is an enterprise within the meaning of 18 U.S.C. § 1961(4), which is engaged in, or the activities of which affect, interstate commerce.   The fraudulent misrepresentation detailed above were made by Prudential to Plaintiff.

848.   The fraudulent misrepresentation set forth above represented a scheme and artifice to defraud Plaintiff, which was facilitated by use of the United States Mail, caused by Prudential , and resulting in mail fraud within the meaning of 18 U.S.C. § 1341.

849.   Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(B).

850.   The fraudulent misrepresentation set forth above represented a scheme and artifice to defraud Plaintiff, which was facilitated by use of telephones, caused by Prudential, and resulting in wire fraud within the meaning of 18 U.S.C. § 1343.

851.   Wire fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(B).

852.   The fraudulent misrepresentation set forth above represented a scheme and artifice to defraud Plaintiff, which was facilitated by use of the financial institutions, caused by Prudential, and resulting in bank fraud within the meaning of 18 U.S.C. § 1344.

853.   Bank fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(B).

854.   Prudential and Prudential's agents, associates, and representatives, have conducted, and have conspired to conduct, the affairs of Prudential through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c), (d).

855.   As a direct and proximate cause result of these violations of 18 U.S.C. §1962(c), (d), Plaintiff has suffered actual damages as a result of injury to its business and property of at least $22,162.05.

856.   Prudential is liable to Plaintiff for treble damages, together with all costs of this action plus reasonable attorneys' fees, all as provided under 18 U.S.C. § 1964(c).

**WHEREFORE,** UNION PACIFIC demands judgment against PRUDENTIAL CHEMICAL, INC. for treble damages, in an amount to be proven at trial, plus interest, costs,

attorneys' fees pursuant to 18 U.S.C. 1962(c), and any and all other relief that this Court deems just and proper.

## COUNT 87
## VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT BY IRA GOLDBERG

857.    UNION PACIFIC repeats and realleges paragraphs 1, 25, 26, and 31 through 51 hereof as if fully set forth herein.

858.    At all times material, Ira Goldberg ("GOLDBERG") was or is a principal and/or officer in Defendant Prudential, and directed and was responsible for the telemarketing and other practices employed by Prudential.

859.    At all times material, GOLDBERG maintained institutional control of and Prudential.

860.    Upon information and belief, GOLDBERG exclusively designed, developed and implemented the telemarketing tactics utilized by Prudential and he directed and controlled the telemarketers who contacted UNION PACIFIC regarding the purported sale of chemical products, cleaning products and lubricants.

861.    GOLDBERG participated directly in the deceptive practices or acts of Prudential and/or possessed the authority to control the deceptive practices or acts perpetrated by Prudential in connection with the purported sale of chemical products, cleaning products and lubricants to UNION PACIFIC, including but not limited to: billing charges to UNION PACIFIC credit cards without authorization; failing to deliver the goods that were being charged to UNION PACIFIC credit cards; providing a choice of paying a

reduced invoice on the unordered merchandise or returning the merchandise and paying a substantial restocking fee when UNION PACIFIC disputed the bills; wrongfully utilizing telemarketing tactics to coerce UNION PACIFIC to pay for expensive products it did not want to order, and misrepresenting and/or failing to clearly disclose all relevant information regarding the cost of the goods, the restrictions and conditions on the purchase of these items, and the cancellation policy details of Prudential.

862.   GOLDBERG's actions constitute a violation of the Florida Deceptive Trade Practices Act, §501.201, *et seq.*, Florida Statutes.

863.   UNION PACIFIC has retained the services of the undersigned attorneys to bring this action, and has agreed to pay them a reasonable fee.  Such fee is claimed from GOLDBERG pursuant to §501.2105 and §501.211, Florida Statutes.

**WHEREFORE**, UNION PACIFIC demands judgment against IRA GOLDBERG for damages, in an amount to be proven at trial, plus interest, costs, consequential damages, attorneys' fees pursuant to §501.2105 and §501.211, Florida Statutes, and any and all other relief that this Court deems just and proper.

**COUNT 88**
**VIOLATION OF RICO BY IRA GOLDBERG**
**18 U.S.C. § 1961 et seq.**

864.   UNION PACIFIC repeats and realleges paragraphs 1, 25, 26, and 31 through 51 hereof as if fully set forth herein.

865.   At all times material, GOLDBERG was or is a principal and/or officer in Defendant Prudential, and directed and was responsible for the telemarketing and other practices employed by Prudential.

866.   At all times material, GOLDBERG's telemarketers, conversed with UNION PACIFIC employees for the purpose of informing  and persuading UNION PACIFIC to purchase chemical products, cleaning products and lubricants.

867.   GOLDBERG directed, authorized and/or participated in telemarketing practices which included statements and representations either knowing them to be false, or with a reckless disregard as to whether they were true or false.  GOLDBERG made or caused such statements and representations with the intention that UNION PACIFIC rely on them to its detriment.

868.   At all times material, as a direct and proximate result of GOLDBERG's false statements, UNION PACIFIC has incurred unauthorized credit card charges for unordered and undelivered goods, excessive charges for unordered goods, overcharges for unordered goods, overcharges, excessive freight charges for shipments, and excessive restocking fees.

869.   This count arises under the Racketeer Influenced and Corrupt Practices Act, 18 U.S.C. § 1961 et seq.

870.   GOLDBERG is an enterprise within the meaning of 18 U.S.C. § 1961(4), which is engaged in, or the activities of which affect, interstate commerce.  The fraudulent misrepresentation detailed above were made by GOLDBERG to Plaintiff.

871.   The fraudulent misrepresentation set forth above represented a scheme and artifice to defraud Plaintiff, which was facilitated by use of the United States Mail, caused by GOLDBERG, and resulting in mail fraud within the meaning of 18 U.S.C. § 1341.

872.   Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(B).

873.   The fraudulent misrepresentation set forth above represented a scheme and artifice to defraud Plaintiff, which was facilitated by use of telephones, caused by GOLDBERG, and resulting in wire fraud within the meaning of 18 U.S.C. § 1343.

874.   Wire fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(B).

875.   The fraudulent misrepresentation set forth above represented a scheme and artifice to defraud Plaintiff, which was facilitated by use of the financial institutions, caused by GOLDBERG, and resulting in bank fraud within the meaning of 18 U.S.C. § 1344.

876.   Bank fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(B).

877.   GOLDBERG and GOLDBERG's agents, associates, and representatives, have conducted, and have conspired to conduct, the affairs of GOLDBERG through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c), (d).

878.   As a direct and proximate cause result of these violations of 18 U.S.C. §1962(c), (d), Plaintiff has suffered actual damages as a result of injury to its business and property of at least $22,162.05.

879.   GOLDBERG is liable to Plaintiff for treble damages, together with all costs of this action plus reasonable attorneys' fees, all as provided under 18 U.S.C. § 1964(c).

**WHEREFORE,** UNION PACIFIC demands judgment against IRA GOLDBERG for treble damages, in an amount to be proven at trial, plus interest, costs, attorneys' fees pursuant to 18 U.S.C. 1962(c), and any and all other relief that this Court deems just and proper.

**COUNT 89**
**BREACH OF IMPLIED IN LAW CONTRACT (UNJUST ENRICHMENT)**
**AGAINST RON CAMILLO CORP.**

880.   UNION PACIFIC repeats and realleges paragraphs 1, 27, 28, and 31 through 51 hereof as if fully set forth herein.

881.   At all times material, Ron Camillo was or is a principal and/or officer in Defendant Ron Camillo Corp. ("Camillo Corp."), and directed and was responsible for the telemarketing  and other practices employed by Camillo Corp.  Under the operation or management of Ron Camillo, Ron Camillo Corp.'s telemarketers conversed with Union Pacific employees for the purpose of informing and persuading Union Pacific to purchase chemical products, cleaning products and lubricants through the use of improper and inappropriate rewards and/or incentives payable to and/or delivered directly to such employees' homes.  Ron Camillo Corp., as directed by Ron Camillo, participated in the

telemarketing practices which included statements and representations either knowing them to be false, or with reckless disregard as to whether they were true or false.   Such statements and representations were made with the intention that Union Pacific rely on them to its detriment.

882.   UNION PACIFIC has conferred a series of benefits, in the form of financial windfalls and monies advanced for non-delivered goods, overcharged goods, excessive restocking charges for unordered goods that were returned, and other benefits and/or consideration on Camillo Corp. Camillo Corp. is aware of the financial windfalls and benefits so conferred by UNION PACIFIC and have retained them.  See Transaction Detail relating to Camillo Corp. annexed hereto as part of Exhibit "A".

883.   Camillo Corp. has damaged UNION PACIFIC in that it has wrongfully accepted and retained the windfalls and benefits conferred by UNION PACIFIC and have wrongfully failed to pay or reimburse those benefits back to UNION PACIFIC.

884.   Under the circumstances, it would be inequitable and unjust for Camillo Corp. to retain the benefits conferred by UNION PACIFIC upon them, and Camillo Corp. should be disgorged of any and all such unearned, undeserved and unwarranted benefits.

**WHEREFORE**, UNION PACIFIC demands judgment against RON CAMILLO CORP. for damages in an amount to be proven at trial, plus interest, costs and any and all such other and further relief as this Court deems just and proper.

## COUNT 90
## FRAUDULENT MISREPRESENTATION OF SALES TRANSACTIONS WITH THE INTENT TO DECEIVE AND DEFRAUD AGAINST RON CAMILLO CORP.

885.   UNION PACIFIC repeats and realleges paragraphs 1, 27, 28, and 31 through 51 hereof as if fully set forth herein.

886.   At all times material, Ron Camillo was or is a principal and/or officer in Defendant Camillo Corp, and directed and was responsible for the telemarketing and other practices employed by Camillo Corp.  Under the operation or management of Ron Camillo, Ron Camillo Corp.'s telemarketers conversed with Union Pacific employees for the purpose of informing and persuading Union Pacific to purchase chemical products, cleaning products and lubricants through the use of improper and inappropriate rewards and/or incentives payable to and/or delivered directly to such employees' homes.  Ron Camillo Corp., as directed by Ron Camillo, participated in the telemarketing practices which included statements and representations either knowing them to be false, or with reckless disregard as to whether they were true or false.  Such statements and representations were made with the intention that Union Pacific rely on them to its detriment.

887.   At all times material, Camillo Corp.'s telemarketers, conversed with UNION PACIFIC employees for the purpose of informing and persuading UNION PACIFIC to purchase chemical products, cleaning products and lubricants.

888.   Camillo Corp. made such statements and representations either knowing them to be false, or with a reckless disregard as to whether they were true or false.

889.   Camillo Corp. made such statements and representations with the intention that UNION PACIFIC rely on them to its detriment.

890.   At all times material, as a direct and proximate result of Camillo Corp.'s false statements, UNION PACIFIC has incurred unauthorized credit card charges for unordered and undelivered goods, excessive charges for unordered goods, overcharges for unordered goods, overcharges, excessive freight charges for shipments, and excessive restocking fees. See Transaction Detail relating to Camillo Corp. annexed hereto as part of Exhibit "A".

891.   As a direct and proximate result of all Camillo Corp.'s false statements, UNION PACIFIC has been damaged. Specifically, UNION PACIFIC has suffered actual damages in connection with unauthorized credit card charges for unordered and undelivered goods, excessive charges for unordered goods, overcharges for unordered goods, overcharges, excessive freight charges for shipments, and excessive restocking fees. See Transaction Detail relating to Camillo Corp. annexed hereto as part of Exhibit "A".

892.   UNION PACIFIC's damages and injuries were a direct and proximate result of the above-described false statements made by Camillo Corp. to UNION PACIFIC.

**WHEREFORE**, UNION PACIFIC demands judgment against RON CAMILLO CORP. for damages in an amount to be proven at trial, plus interest, costs and any and all such other and further relief as this Court deems just and proper.

## COUNT 91
### VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT BY RON CAMILLO CORP.

893.    UNION PACIFIC repeats and realleges paragraphs 1, 27, 28, and 31 through 51 hereof as if fully set forth herein.

894.    At all times material, Ron Camillo was or is a principal and/or officer in Defendant Camillo Corp., and directed and was responsible for the telemarketing and other practices employed by Camillo Corp.  Under the operation or management of Ron Camillo, Ron Camillo Corp.'s telemarketers conversed with Union Pacific employees for the purpose of informing and persuading Union Pacific to purchase chemical products, cleaning products and lubricants through the use of improper and inappropriate rewards and/or incentives payable to and/or delivered directly to such employees' homes.  Ron Camillo Corp., as directed by Ron Camillo, participated in the telemarketing practices which included statements and representations either knowing them to be false, or with reckless disregard as to whether they were true or false.  Such statements and representations were made with the intention that Union Pacific rely on them to its detriment.

895.    At all times material, the purported sales by Camillo Corp. of chemical products, cleaning products and lubricants to UNION PACIFIC in this cause were "consumer transactions" within the scope of the Florida Deceptive and Unfair Trade Practices Act, §§ 501.201 to 501.213, Florida Statutes.

896.    In engaging in the conduct previously described, Camillo Corp. has committed unfair and deceptive trade practices in connection with the purported sale of chemical products, cleaning products and lubricants, including but not limited to: billing charges to UNION PACIFIC credit cards without authorization; failing to deliver the goods that were

being charged to UNION PACIFIC credit cards; providing a choice of paying a reduced invoice price on the unordered merchandise or returning the merchandise and paying a substantial restocking fee when UNION PACIFIC disputed the bills; wrongfully utilizing telemarketing tactics to coerce UNION PACIFIC to pay for expensive products it did not want or order; and misrepresenting and/or failing to clearly disclose all relevant information regarding the cost of the goods, the restrictions and conditions on the purchase of these items, and Camillo Corp.'s cancellation policy details.  See Transaction Detail relating to Camillo Corp. annexed hereto as part of Exhibit "A".

897.    As a result of Camillo Corp.'s unlawful conduct, UNION PACIFIC has suffered actual damages in connection with unauthorized credit card charges for unordered and undelivered goods, excessive charges for unordered goods, overcharges for unordered goods, overcharges, excessive freight charges for shipments, and excessive restocking fees.

898.    Union Pacific has retained the services of the undersigned attorneys to bring this action, and has agreed to pay them a reasonable fee.  Such fee is claimed from Camillo Corp. pursuant to  § 501.2105 and § 501.211, Florida Statues.

**WHEREFORE,** UNION PACIFIC demands judgment against RON CAMILLO CORP. for damages, in an amount to be proven at trial, plus interest, costs, consequential damages, attorneys' fees pursuant to § 501.2105 and § 501.211, Florida Statutes, and any and all other relief that this Court deems just and proper.

### COUNTS 92a, 92b and 92c
### VIOLATION OF RICO BY RON CAMILLO CORP.
### 18 U.S.C. § 1961 et seq.
### FOR MAIL FRAUD, WIRE FRAUD AND BANK FRAUD

899.    UNION PACIFIC repeats and realleges paragraphs 1, 27, 28, and 31 through 51 hereof as if fully set forth herein.

900.    At all times material, Ron Camillo was or is a principal and/or officer in Defendant Camillo Corp., and directed and was responsible for the telemarketing and other practices employed by Camillo Corp.  Under the operation or management of Ron Camillo, Ron Camillo Corp.'s telemarketers conversed with Union Pacific employees for the purpose of informing and persuading Union Pacific to purchase chemical products, cleaning products and lubricants through the use of improper and inappropriate rewards and/or incentives payable to and/or delivered directly to such employees' homes.  Ron Camillo Corp., as directed by Ron Camillo, participated in the telemarketing practices which included statements and representations either knowing them to be false, or with reckless disregard as to whether they were true or false.  Such statements and representations were made with the intention that Union Pacific rely on them to its detriment.

901.    At all times material, Camillo Corp.'s telemarketers, conversed with UNION PACIFIC employees for the purpose of informing and persuading UNION PACIFIC to purchase chemical products, cleaning products and lubricants.

902.    Camillo Corp., through its principals and/or officers, directed, authorized and/or participated in telemarketing practices which included statements and representations either knowing them to be false, or with a reckless disregard as to whether

they were true or false.  Camillo Corp. made such statements and representations with the intention that UNION PACIFIC rely on them to its detriment.

903.   At all times material, as a direct and proximate result of Camillo Corp.'s false statements, UNION PACIFIC has incurred unauthorized credit card charges for unordered and undelivered goods, excessive charges for unordered goods, overcharges for unordered goods, overcharges, excessive freight charges for shipments, and excessive restocking fees.  See Transaction Detail relating to Camillo Corp. annexed hereto as part of Exhibit "A".

904.   These counts arise under the Racketeer Influenced and Corrupt Practices Act, 18 U.S.C. § 1961 et seq.

905.   Camillo Corp. is an enterprise within the meaning of 18 U.S.C. § 1961(4), which is engaged in, or the activities of which affect, interstate commerce.  The fraudulent misrepresentation detailed above were made by Camillo Corp. to Plaintiff.

### COUNT 92a - MAIL FRAUD, 18 U.S.C. § 1341
### VIOLATION OF 18 U.S.C. § 1961(B)

906.   The fraudulent misrepresentations set forth in paragraphs 900-905 represented a scheme and artifice to defraud Plaintiff, which was facilitated by use of the United States Mail, caused by Camillo Corp., and resulting in mail fraud within the meaning of 18 U.S.C. § 1341.  Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(B).

907.   Camillo Corp. and Camillo Corp.'s agents, associates, and representatives, have conducted, and have conspired to conduct, the affairs of Camillo Corp. through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c), (d).

## COUNT 92b - WIRE FRAUD, 18 U.S.C. § 1343
## VIOLATION OF 18 U.S.C. § 1961(B)

908.   The fraudulent misrepresentations set forth in paragraphs 900-905 represented a scheme and artifice to defraud Plaintiff, which was facilitated by use of telephones, caused by Camillo Corp., and resulting in wire fraud within the meaning of 18 U.S.C. § 1343.  Wire fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(B).

909.   Camillo Corp. and Camillo Corp.'s agents, associates, and representatives, have conducted, and have conspired to conduct, the affairs of Camillo Corp. through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c), (d).

## COUNT 92c - BANK FRAUD, 18 U.S.C. § 1344
## VIOLATION OF 18 U.S.C. § 1961(B)

910.   The fraudulent misrepresentations set forth in paragraphs 900-905 represented a scheme and artifice to defraud Plaintiff, which was facilitated by use of the financial institutions, caused by Camillo Corp., and resulting in bank fraud within the meaning of 18 U.S.C. § 1344.

911.   Bank fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(B).

912.   Camillo Corp. and Camillo Corp.'s agents, associates, and representatives, have conducted, and have conspired to conduct, the affairs of Camillo Corp. through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c), (d).

913. As a direct and proximate result of these violations of 18 U.S.C. §1962(c), (d), as set forth in Counts 92a, 92b and 92c, Plaintiff has suffered actual damages as a result of injury to its business and property of at least $70,504.13.

914. Camillo Corp. is liable to Plaintiff for treble damages, together with all costs of this action plus reasonable attorneys' fees, all as provided under 18 U.S.C. § 1964(c).

**WHEREFORE,** UNION PACIFIC demands judgment against RON CAMILLO CORP. for treble damages, in an amount to be proven at trial, plus interest, costs, attorneys' fees pursuant to 18 U.S.C. 1962(c), and any and all other relief that this Court deems just and proper.

**COUNT 93**
**VIOLATION OF TELEMARKETING RULES BY**
**RON CAMILLO CORP.**
**15 U.S.C. § 6102 et seq.**

915. UNION PACIFIC repeats and realleges paragraphs 1, 27, 28, and 31 through 51 hereof as if fully set forth herein.

916. At all times material, Ron Camillo was or is a principal and/or officer in Defendant Camillo Corp., and directed and was responsible for the telemarketing and other practices employed by Camillo Corp. Under the operation or management of Ron Camillo, Ron Camillo Corp.'s telemarketers conversed with Union Pacific employees for the purpose of informing and persuading Union Pacific to purchase chemical products, cleaning products and lubricants through the use of improper and inappropriate rewards and/or incentives payable to and/or delivered directly to such employees' homes. Ron Camillo Corp., as directed by Ron Camillo, participated in the telemarketing practices which

included statements and representations either knowing them to be false, or with reckless disregard as to whether they were true or false. Such statements and representations were made with the intention that Union Pacific rely on them to its detriment.

917.   At all times material, Camillo Corp.'s telemarketers, conversed with UNION PACIFIC employees for the purpose of informing and persuading UNION PACIFIC to purchase chemical products, cleaning products and lubricants.

918.   Camillo Corp. made such statements and representations either knowing them to be false, or with a reckless disregard as to whether they were true or false, in violation of 16 C.F.R. §§ 310.2 and 310.3.

919.   Camillo Corp. such statements and representations with the intention that UNION PACIFIC rely on them to its detriment.

920.   This count arises under the Telemarketing and Consumer Fraud Abuse and Prevention Act, 15 U.S.C. §§ 6101-6108, implemented by 16 C.F.R. § 310.10, wherein damages claimed exceed $50,000.00.

921.   At all times material, as a direct and proximate result of Camillo Corp.'s false statements, UNION PACIFIC has incurred unauthorized credit card charges for unordered and undelivered goods, excessive charges for unordered goods, overcharges for unordered goods, overcharges, excessive freight charges for shipments, and excessive restocking fees. See Transaction Detail relating to Camillo Corp. annexed hereto as part of Exhibit "A".

922.   As a direct and proximate result of all Camillo Corp.'s false statements, UNION PACIFIC has been damaged. Specifically, UNION PACIFIC has suffered actual

damages in connection with unauthorized credit card charges for unordered and undelivered goods, excessive charges for unordered goods, overcharges for unordered goods, overcharges, excessive freight charges for shipments, and excessive restocking fees. See Transaction Detail relating to Camillo Corp. annexed hereto as part of Exhibit "A".

923. UNION PACIFIC's damages and injuries were a direct and proximate result of the above-described false statements made by Camillo Corp. to UNION PACIFIC.

**WHEREFORE**, UNION PACIFIC demands judgment against RON CAMILLO CORP. for damages in an amount to be proven at trial, plus interest, costs and any and all such other and further relief as this Court deems just and proper.

## COUNT 94
## VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR
## TRADE PRACTICES ACT BY RON CAMILLO

924. UNION PACIFIC repeats and realleges paragraphs 1, 27, 28, and 31 through 51 hereof as if fully set forth herein.

925. At all times material, Ron Camillo ("CAMILLO") was or is a principal and/or officer in Defendant Camillo Corp., and directed and was responsible for the telemarketing and other practices employed by Camillo Corp. Under the operation or management of Ron Camillo, Ron Camillo Corp.'s telemarketers conversed with Union Pacific employees for the purpose of informing and persuading Union Pacific to purchase chemical products, cleaning products and lubricants through the use of improper and inappropriate rewards and/or incentives payable to and/or delivered directly to such employees' homes. Ron Camillo Corp., as directed by Ron Camillo, participated in the telemarketing practices which

included statements and representations either knowing them to be false, or with reckless disregard as to whether they were true or false. Such statements and representations were made with the intention that Union Pacific rely on them to its detriment.

926.   At all times material, CAMILLO maintained institutional control of Camillo Corp.

927.   Upon information and belief, CAMILLO exclusively designed, developed and implemented the telemarketing tactics utilized by Camillo Corp. and he directed and controlled the telemarketers who contacted UNION PACIFIC regarding the purported sale of chemical products, cleaning products and lubricants.

928.   CAMILLO participated directly in the deceptive practices or acts of Camillo Corp. and/or possessed the authority to control the deceptive practices or acts perpetrated by Camillo Corp. in connection with the purported sale of chemical products, cleaning products and lubricants to UNION PACIFIC, including but not limited to: billing charges to UNION PACIFIC credit cards without authorization; failing to deliver the goods that were being charged to UNION PACIFIC credit cards; providing a choice of paying a reduced invoice on the unordered merchandise or returning the merchandise and paying a substantial restocking fee when UNION PACIFIC disputed the bills; wrongfully utilizing telemarketing tactics to coerce UNION PACIFIC to pay for expensive products it did not want to order, and misrepresenting and/or failing to clearly disclose all relevant information regarding the cost of the goods, the restrictions and conditions on the purchase of these

items, and the cancellation policy details of Camillo Corp.  See Transaction Detail relating to Camillo Corp. annexed hereto as part of Exhibit "A".

929.   CAMILLO's actions constitute a violation of the Florida Deceptive Trade Practices Act, §501.201, *et seq.*, Florida Statutes.

930.   UNION PACIFIC has retained the services of the undersigned attorneys to bring this action, and has agreed to pay them a reasonable fee.  Such fee is claimed from CAMILLO pursuant to §501.2105 and §501.211, Florida Statutes.

**WHEREFORE**, UNION PACIFIC demands judgment against RON CAMILLO for damages, in an amount to be proven at trial, plus interest, costs, consequential damages, attorneys' fees pursuant to §501.2105 and §501.211, Florida Statutes, and any and all other relief that this Court deems just and proper.

**COUNTS 95a, 95b and 95c**
**VIOLATION OF RICO BY RON CAMILLO**
**18 U.S.C. § 1961 et seq.**
**FOR MAIL FRAUD, WIRE FRAUD AND BANK FRAUD**

931.   UNION PACIFIC repeats and realleges paragraphs 1, 27, 28, and 31 through 51 hereof as if fully set forth herein.

932.   At all times material, CAMILLO was or is a principal and/or officer in Defendant Camillo Corp., and directed and was responsible for the telemarketing  and other practices employed by Camillo Corp.  Under the operation or management of Ron Camillo, Ron Camillo Corp.'s telemarketers conversed with Union Pacific employees for the purpose of informing and persuading Union Pacific to purchase chemical products, cleaning products and lubricants through the use of improper and inappropriate rewards and/or incentives

payable to and/or delivered directly to such employees' homes.  Ron Camillo Corp., as directed by Ron Camillo, participated in the telemarketing practices which included statements and representations either knowing them to be false, or with reckless disregard as to whether they were true or false.  Such statements and representations were made with the intention that Union Pacific rely on them to its detriment.

933.   At all times material, CAMILLO's telemarketers, conversed with UNION PACIFIC employees for the purpose of informing  and persuading UNION PACIFIC to purchase chemical products, cleaning products and lubricants.

934.   CAMILLO directed, authorized and/or participated in telemarketing practices which included statements and representations either knowing them to be false, or with a reckless disregard as to whether they were true or false.  CAMILLO made or caused such statements and representations with the intention that UNION PACIFIC rely on them to its detriment.

935.   At all times material, as a direct and proximate result of CAMILLO's false statements, UNION PACIFIC has incurred unauthorized credit card charges for unordered and undelivered goods, excessive charges for unordered goods, overcharges for unordered goods, overcharges, excessive freight charges for shipments, and excessive restocking fees.

936.   These counts arise under the Racketeer Influenced and Corrupt Practices Act, 18 U.S.C. § 1961 et seq.

937.   CAMILLO is an enterprise within the meaning of 18 U.S.C. § 1961(4), which is engaged in, or the activities of which affect, interstate commerce.   The fraudulent misrepresentations detailed above were made by CAMILLO to Plaintiff.

## COUNT 95a - MAIL FRAUD, 18 U.S.C. § 1341
## VIOLATION OF 18 U.S.C. § 1961(B)

938.   The fraudulent misrepresentations set forth in paragraphs 932-937 represented a scheme and artifice to defraud Plaintiff, which was facilitated by use of the United States Mail, caused by CAMILLO, and resulting in mail fraud within the meaning of 18 U.S.C. § 1341.   Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(B).

939.   CAMILLO and CAMILLO's agents, associates, and representatives, have conducted, and have conspired to conduct, the affairs of CAMILLO through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c), (d).

## COUNT 95b - WIRE FRAUD, 18 U.S.C. § 1343
## VIOLATION OF 18 U.S.C. § 1961(B)

940.   The fraudulent misrepresentations set forth in paragraphs 932-937 represented a scheme and artifice to defraud Plaintiff, which was facilitated by use of telephones, caused by CAMILLO, and resulting in wire fraud within the meaning of 18 U.S.C. § 1343.   Wire fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(b).

941.   CAMILLO and CAMILLO's agents, associates, and representatives, have conducted, and have conspired to conduct, the affairs of CAMILLO through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c), (d).

## COUNT 95c - BANK FRAUD, 18 U.S.C. § 1344
### VIOLATION OF 18 U.S.C. § 1961(B)

942.   The fraudulent misrepresentations set forth in paragraphs 932-937 represented a schemeand artifice to defraud Plaintiff, which was facilitated by use of the financial institutions, caused by CAMILLO, and resulting in bank fraud within the meaning of 18 U.S.C. § 1344.

943.   Bank fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(b).

944.   CAMILLO and CAMILLO's agents, associates, and representatives, have conducted, and have conspired to conduct, the affairs of CAMILLO through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c), (d).

945.   As a direct and proximate result of these violations of 18 U.S.C. §1962(c), (d), as set forth in Counts 95a, 95b and 95c, Plaintiff has suffered actual damages as a result of injury to its business and  property of at least $70,504.13.

946.   CAMILLO is liable to Plaintiff for treble damages, together with all costs of this action plus reasonable attorneys' fees, all as provided under 18 U.S.C. § 1964(c).

**WHEREFORE,** UNION PACIFIC demands judgment against RON CAMILLO for treble damages, in an amount to be proven at trial, plus interest, costs, attorneys' fees

pursuant to 18 U.S.C. 1962(c), and any and all other relief that this Court deems just and proper.

## COUNT 96
## BREACH OF IMPLIED IN LAW CONTRACT (UNJUST ENRICHMENT) AGAINST A-JEM INDUSTRIES, INC.

947.   UNION PACIFIC repeats and realleges paragraphs 1, and 29 through 51 hereof as if fully set forth herein.

948.   At all times material, Mark Anthony Cantrell was or is a principal and/or officer in Defendant A-Jem Industries, Inc. ("A-JEM"), and directed and was responsible for the telemarketing and other practices employed by A-JEM.

949.   UNION PACIFIC has conferred a series of benefits, in the form of financial windfalls and monies advanced for non-delivered goods, overcharged goods, excessive restocking charges for unordered goods that were returned, and other benefits and/or consideration on A-JEM.   A-JEM is aware of the financial windfalls and benefits so conferred by UNION PACIFIC and have retained them.

950.   A-JEM has damaged UNION PACIFIC in that it has wrongfully accepted and retained the windfalls and benefits conferred by UNION PACIFIC and have wrongfully failed to pay or reimburse those benefits back to UNION PACIFIC.

951.   Under the circumstances, it would be inequitable and unjust for A-JEM to retain the benefits conferred by UNION PACIFIC upon them, and A-JEM should be disgorged of any and all such unearned, undeserved and unwarranted benefits.

**WHEREFORE**, UNION PACIFIC demands judgment against A-JEM INDUSTRIES, INC. for damages in an amount to be proven at trial, plus interest, costs and any and all such other and further relief as this Court deems just and proper.

## COUNT 97
### FRAUDULENT MISREPRESENTATION OF SALES TRANSACTIONS WITH THE INTENT TO DECEIVE AND DEFRAUD AGAINST A-JEM INDUSTRIES, INC.

952.    UNION PACIFIC repeats and realleges paragraphs 1, and 29 through 51 hereof as if fully set forth herein.

953.    At all times material, Mark Anthony Cantrell was or is a principal and/or officer in Defendant A-JEM, and directed and was responsible for the telemarketing and other practices employed by A-JEM.

954.    At all times material, A-JEM's telemarketers, conversed with UNION PACIFIC employees for the purpose of informing and persuading UNION PACIFIC to purchase chemical products, cleaning products and lubricants.

955.    A-JEM made such statements and representations either knowing them to be false, or with a reckless disregard as to whether they were true or false.

956.    A-JEM made such statements and representations with the intention that UNION PACIFIC rely on them to its detriment.

957.    At all times material, as a direct and proximate result of A-JEM's false statements, UNION PACIFIC has incurred unauthorized credit card charges for unordered and undelivered goods, excessive charges for unordered goods, overcharges for unordered

goods, overcharges, excessive freight charges for shipments, and excessive restocking fees.

958.   As a direct and proximate result of all A-JEM's false statements, UNION PACIFIC has been damaged. Specifically, UNION PACIFIC has suffered actual damages in connection with unauthorized credit card charges for unordered and undelivered goods, excessive charges for unordered goods, overcharges for unordered goods, overcharges, excessive freight charges for shipments, and excessive restocking fees.

959.   UNION PACIFIC's damages and injuries were a direct and proximate result of the above-described false statements made by A-JEM to UNION PACIFIC.

**WHEREFORE**, UNION PACIFIC demands judgment against A-JEM INDUSTRIES, INC. for damages in an amount to be proven at trial, plus interest, costs and any and all such other and further relief as this Court deems just and proper.

## COUNT 98
## VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT BY A-JEM INDUSTRIES, INC.

960.   UNION PACIFIC repeats and realleges paragraphs 1, and 29 through 51 hereof as if fully set forth herein.

961.   At all times material, Mark Anthony Cantrell was or is a principal and/or officer in Defendant A-JEM, and directed and was responsible for the telemarketing and other practices employed by A-JEM.

962.   At all times material, the purported sales by A-JEM of chemical products, cleaning products and lubricants to UNION PACIFIC in this cause were "consumer

transactions" within the scope of the Florida Deceptive and Unfair Trade Practices Act, §§ 501.201 to 501.213, Florida Statutes.

963.    In engaging in the conduct previously described, A-JEM has committed unfair and deceptive trade practices in connection with the purported sale of chemical products, cleaning products and lubricants, including but not limited to: billing charges to UNION PACIFIC credit cards without authorization; failing to deliver the goods that were being charged to UNION PACIFIC credit cards; providing a choice of paying a reduced invoice price on the unordered merchandise or returning the merchandise and paying a substantial restocking fee when UNION PACIFIC disputed the bills; wrongfully utilizing telemarketing tactics to coerce UNION PACIFIC to pay for expensive products it did not want or order; and misrepresenting and/or failing to clearly disclose all relevant information regarding the cost of the goods, the restrictions and conditions on the purchase of these items, and A-JEM's cancellation policy details.

964.    As a result of A-JEM's unlawful conduct, UNION PACIFIC has suffered actual damages in connection with unauthorized credit card charges for unordered and undelivered goods, excessive charges for unordered goods, overcharges for unordered goods, overcharges, excessive freight charges for shipments, and excessive restocking fees.

965.    Union Pacific has retained the services of the undersigned attorneys to bring this action, and has agreed to pay them a reasonable fee.  Such fee is claimed from A-JEM pursuant to § 501.2105 and § 501.211, Florida Statues.

**WHEREFORE,** UNION PACIFIC demands judgment against A-JEM INDUSTRIES, INC. for damages, in an amount to be proven at trial, plus interest, costs, consequentialdamages, attorneys' fees pursuant to § 501.2105 and § 501.211, Florida Statutes, and any and all other relief that this Court deems just and proper.

## COUNT 99
### VIOLATION OF RICO BY A-JEM INDUSTRIES, INC.
### 18 U.S.C. § 1961 et seq.

966. UNION PACIFIC repeats and realleges paragraphs 1, and 29 through 51 hereof as if fully set forth herein.

967. At all times material, Mark Anthony Cantrell was or is a principal and/or officer in Defendant A-JEM, and directed and was responsible for the telemarketing and other practices employed by A-JEM.

968. At all times material, A-JEM's telemarketers, conversed with UNION PACIFIC employees for the purpose of informing  and persuading UNION PACIFIC to purchase chemical products, cleaning products and lubricants.

969. A-JEM, through its principals and/or officers, directed, authorized and/or participated in telemarketing practices which included statements and representations either knowing them to be false, or with a reckless disregard as to whether they were true or false. A-JEM made such statements and representations with the intention that UNION PACIFIC rely on them to its detriment.

970. At all times material, as a direct and proximate result of A-JEM's false statements, UNION PACIFIC has incurred unauthorized credit card charges for unordered

and undelivered goods, excessive charges for unordered goods, overcharges for unordered goods, overcharges, excessive freight charges for shipments, and excessive restocking fees.

971.    This count arises under the Racketeer Influenced and Corrupt Practices Act, 18 U.S.C. § 1961 et seq.

972.    A-JEM is an enterprise within the meaning of 18 U.S.C. § 1961(4), which is engaged in, or the activities of which affect, interstate commerce. The fraudulent misrepresentation detailed above were made by A-JEM to Plaintiff.

973.    The fraudulent misrepresentation set forth above represented a scheme and artifice to defraud Plaintiff, which was facilitated by use of the United States Mail, caused by A-JEM, and resulting in mail fraud within the meaning of 18 U.S.C. § 1341.

974.    Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(B).

975.    The fraudulent misrepresentation set forth above represented a scheme and artifice to defraud Plaintiff, which was facilitated by use of telephones, caused by A-JEM, and resulting in wire fraud within the meaning of 18 U.S.C. § 1343.

976.    Wire fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(B).

977.    The fraudulent misrepresentation set forth above represented a scheme and artifice to defraud Plaintiff, which was facilitated by use of the financial institutions, caused by A-JEM, and resulting in bank fraud within the meaning of 18 U.S.C. § 1344.

978.    Bank fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(B).

979.    A-JEM and A-JEM's agents, associates, and representatives, have conducted, and have conspired to conduct, the affairs of A-JEM through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c), (d).

980.    As a direct and proximate cause result of these violations of 18 U.S.C. §1962(c), (d), Plaintiff has suffered actual damages as a result of injury to its business and property of at least $5,584.95.

981.    A-JEM is liable to Plaintiff for treble damages, together with all costs of this action plus reasonable attorneys' fees, all as provided under 18 U.S.C. § 1964(c).

**WHEREFORE,** UNION PACIFIC demands judgment against A-JEM INDUSTRIES, INC. for treble damages, in an amount to be proven at trial, plus interest, costs, attorneys' fees pursuant to 18 U.S.C. 1962(c), and any and all other relief that this Court deems just and proper.

## COUNT 100
### VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT BY MARK ANTHONY CANTRELL

982.    UNION PACIFIC repeats and realleges  paragraphs 1, and 29 through 51 hereof as if fully set forth herein.

983.    At all times material, Mark Anthony Cantrell ("CANTRELL") was or is a principal and/or officer in Defendant A-JEM, and directed and was responsible for the telemarketing and other practices employed by A-JEM.

984.    At all times material, CANTRELL maintained institutional control of A-JEM.

985.    Upon information and belief, CANTRELL exclusively designed, developed and implemented the telemarketing tactics utilized by A-JEM and he directed and controlled the telemarketers who contacted UNION PACIFIC regarding the purported sale of chemical products, cleaning products and lubricants.

986.    CANTRELL participated directly in the deceptive practices or acts of A-JEM and/or possessed the authority to control the deceptive practices or acts perpetrated by A-JEM in connection with the purported sale of chemical products, cleaning products and lubricants to UNION PACIFIC, including but not limited to: billing charges to UNION PACIFIC credit cards without authorization; failing to deliver the goods that were being charged to UNION PACIFIC credit cards; providing a choice of paying a reduced invoice on the unordered merchandise or returning the merchandise and paying a substantial restocking fee when UNION PACIFIC disputed the bills; wrongfully utilizing telemarketing tactics to coerce UNION PACIFIC to pay for expensive products it did not want to order, and misrepresenting and/or failing to clearly disclose all relevant information regarding the cost of the goods, the restrictions and conditions on the purchase of these items, and the cancellation policy details of A-JEM INDUSTRIES, INC.

987.    CANTRELL's actions constitute a violation of the Florida Deceptive Trade Practices Act, §501.201, *et seq.*, Florida Statutes.

988.   UNION PACIFIC has retained the services of the undersigned attorneys to bring this action, and has agreed to pay them a reasonable fee.  Such fee is claimed from CANTRELL pursuant to §501.2105 and §501.211, Florida Statutes.

**WHEREFORE**, UNION PACIFIC demands judgment against MARK ANTHONY CANTRELL for damages, in an amount to be proven at trial, plus interest, costs, consequential damages, attorneys' fees pursuant to §501.2105 and §501.211, Florida Statutes, and any and all other relief that this Court deems just and proper.

## COUNT 101
## VIOLATION OF RICO BY MARK ANTHONY CANTRELL
## 18 U.S.C. § 1961 et seq.

989.   UNION PACIFIC repeats and realleges paragraphs 1, and 29 through 51 hereof as if fully set forth herein.

990.   At all times material, CANTRELL was or is a principal and/or officer in Defendant A-JEM, and directed and was responsible for the telemarketing and other practices employed by A-JEM.

991.   At all times material, CANTRELL's telemarketers, conversed with UNION PACIFIC employees for the purpose of informing  and persuading UNION PACIFIC to purchase chemical products, cleaning products and lubricants.

992.   CANTRELL directed, authorized and/or participated in telemarketing practices which included statements and representations either knowing them to be false, or with a reckless disregard as to whether they were true or false.  CANTRELL made or caused such

statements and representations with the intention that UNION PACIFIC rely on them to its detriment.

993.    At all times material, as a direct and proximate result of CANTRELL's false statements, UNION PACIFIC has incurred unauthorized credit card charges for unordered and undelivered goods, excessive charges for unordered goods, overcharges for unordered goods, overcharges, excessive freight charges for shipments, and excessive restocking fees.

994.    This count arises under the Racketeer Influenced and Corrupt Practices Act, 18 U.S.C. § 1961 et seq.

995.    CANTRELL is an enterprise within the meaning of 18 U.S.C. § 1961(4), which is engaged in, or the activities of which affect, interstate commerce.   The fraudulent misrepresentation detailed above were made by CANTRELL to Plaintiff.

996.    The fraudulent misrepresentation set forth above represented a scheme and artifice to defraud Plaintiff, which was facilitated by use of the United States Mail, caused by CANTRELL, and resulting in mail fraud within the meaning of 18 U.S.C. § 1341.

997.    Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(B).

998.    The fraudulent misrepresentation set forth above represented a scheme and artifice to defraud Plaintiff, which was facilitated by use of telephones, caused by CANTRELL, and resulting in wire fraud within the meaning of 18 U.S.C. § 1343.

999.   Wire fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(B).

1000.  The fraudulent misrepresentation set forth above represented a scheme and artifice to defraud Plaintiff, which was facilitated by use of the financial institutions, caused by CANTRELL, and resulting in bank fraud within the meaning of 18 U.S.C. § 1344.

1001.  Bank fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(B).

1002.  CANTRELL and CANTRELL's agents, associates, and representatives, have conducted, and have conspired to conduct, the affairs of CANTRELL through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c), (d).

1003.  As a direct and proximate cause result of these violations of 18 U.S.C. §1962(c), (d), Plaintiff has suffered actual damages as a result of injury to its business and property of at least $5,584.95.

1004.  CANTRELL is liable to Plaintiff for treble damages, together with all costs of this action plus reasonable attorneys' fees, all as provided under 18 U.S.C. § 1964(c).

**WHEREFORE,** UNION PACIFIC demands judgment against MARK ANTHONY CANTRELL for treble damages, in an amount to be proven at trial, plus interest, costs, attorneys' fees pursuant to 18 U.S.C. 1962(c), and any and all other relief that this Court deems just and proper.

CASE NO. 06-60873-CIV-COHN

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via U.S. Mail on September 15, 2006, to: **Gary A. Dumas, Esquire**, GARY A. DUMAS, P.A., 19365 East Saint Andrews Drive, Miami, FL 33015, and **Michael Styles, Esquire**, 507 S.E. 11th Court, Fort Lauderdale, FL 33316, Counsel for Defendants Goldstar Products, Inc., T.D.R.S. Properties, Inc., Safety & Health Municipal Supplies, Inc., Sachem Safety Products, Inc., and Michael A. Sheehan,; **Robert F. Elgidely, Esquire**, ELGIDELY LAW OFFICE, Counsel for Defendants Mark Zimmerman, Industrial Chem Enterprise, Inc., Ronald Camillo, and Ron Camillo Corp., 888 East Las Olas Boulevard, Suite 508, Fort Lauderdale, FL 33301; and, **Alvin E. Entin, Esquire**, Entin & Della Fera, P.A., Counsel for David Rossner, Paragon Laboratories, Inc., Group Chemical Ltd., Inc. and Group Chemical Supply, Inc., Auto Nation Tower, Suite 1970, 110 S.E. 6th Street, Ft. Lauderdale, FL  33301.

Respectfully submitted,

**Lawrence J. Roberts & Associates, P.A.**
Attorneys for Plaintiff
UNION PACIFIC RAILROAD COMPANY
249 Catalonia Avenue
Coral Gables, Florida 33134
Phone: (305) 441-7882
Fax: (305) 441-7883
E-Mail: lroberts@lrobertsandassociates.com

By: _____
        LAWRENCE J. ROBERTS, ESQUIRE
        Florida Bar No. 343218

F:\Paragon Labs\Amended Complaint.9-15-06.wpd

# EXHIBIT "A"

# TRANSACTIONS DETAIL

**Paragon Laboratories/David Rossner Transaction Detail**

Victims: Union Pacific Railroad Company, including but not limited to the following  Union Pacific employees:

| | | |
|---|---|---|
| Danny L.  Ashbrook | 10/06/98 | $433.75 |
| Gary S. Mang | 11/25/98 | $522.95 |
| Louis C. Lager | 06/14/99 | $408.75 |
| Phil Egan | 01/11/00 | $359.28 |
| | 01/26/00 | $358.70 |
| Kenneth W. Watson, Sr. | 02/09/00 | $229.85 |
| Mike L. Riley | 01/03/02 | $252.65 |
| Billy R. Clark | 06/14/02 | $548.49 |
| Tyrone Patterson | 10/29/02 | $573.20 |
| Janice L. Miller | 01/22/03 | $995.40 |
| Thomas F. Drewenski | 10/21/03 | $1,072.25 |
| | 10/21/03 | $1,072.25 |
| | 10/21/03 | $1,072.25 |
| | 10/21/03 | $1,072.25 |
| | 10/21/03 | $1,072.25 |
| | 10/21/03 | $1,072.25 |
| David F. Simpson | 10/09/03 | $552.75 |
| Richard M. Beilsmith | 07/01/96 | $489.00 |

**Group Chemical Supply, Inc./David Rossner Transaction Detail**

Victims: Union Pacific Railroad Company, including but not limited to the following  Union Pacific employees:

| | | |
|---|---|---|
| Thomas F. Drewenski | 12/12/03 | $1,301.13 |
| | 12/12/03 | $1,301.12 |
| | 12/12/03 | $1,291.63 |
| | 12/12/03 | $1,291.62 |
| | 12/12/03 | $1,301.13 |

|  | 12/12/03 | $1,301.12 |
|  | 12/12/03 | $1,291.63 |
|  | 12/12/03 | $1,291.62 |
|  | 12/19/03 | $1,072.25 |
|  | 12/19/03 | $1,072.25 |
|  | 12/19/03 | $1,072.25 |
|  | 12/19/03 | $1,072.25 |
|  | 12/19/03 | $1,301.13 |
|  | 12/19/03 | $1,301.12 |
|  | 12/19/03 | $1,291.63 |
|  | 12/19/03 | $1,291.62 |
|  | 03/29/04 | $1,072.25 |
|  | 03/29/04 | $1,072.25 |
|  | 03/29/04 | $1,072.25 |
| Randy Werner | 1/16/04 | $494.90 |
|  | 1/16/04 | $247.70 |
| George Reed | 10/29/01 | $363.82 |
|  | 11/08/01 | $362.13 |
|  | 10/29/01 | $363.82 |
|  | 11/8/01 | $362.13 |

## David J. Rossner a/k/a David Rossner Transaction Detail

Victims: Union Pacific Railroad Company, including but not limited to the following  Union Pacific employees:

| Danny L.  Ashbrook | 10/06/98 | $433.75 |
| Gary S. Mang | 11/25/98 | $522.95 |
| Louis C. Lager | 06/14/99 | $408.75 |
| Phil Egan | 01/11/00 | $359.28 |
|  | 01/26/00 | $358.70 |
| Kenneth W. Watson, Sr. | 02/09/00 | $229.85 |
| Mike L. Riley | 01/03/02 | $252.65 |

CASE NO.  06-60873-CIV-COHEN

| | | |
|---|---|---|
| Billy R. Clark | 06/14/02 | $548.49 |
| Tyrone Patterson | 10/29/02 | $573.20 |
| Janice L. Miller | 01/22/03 | $995.40 |
| Thomas F. Drewenski | 10/21/03 | $1,072.25 |
| | 10/21/03 | $1,072.25 |
| | 10/21/03 | $1,072.25 |
| | 10/21/03 | $1,072.25 |
| | 10/21/03 | $1,072.25 |
| | 10/21/03 | $1,072.25 |
| David F. Simpson | 10/09/03 | $552.75 |
| Thomas F. Drewenski | 12/12/03 | $1,301.13 |
| | 12/12/03 | $1,301.12 |
| | 12/12/03 | $1,291.63 |
| | 12/12/03 | $1,291.62 |
| | 12/12/03 | $1,301.13 |
| | 12/12/03 | $1,301.12 |
| | 12/12/03 | $1,291.63 |
| | 12/12/03 | $1,291.62 |
| | 12/19/03 | $1,072.25 |
| | 12/19/03 | $1,072.25 |
| | 12/19/03 | $1,072.25 |
| | 12/19/03 | $1,072.25 |
| | 12/19/03 | $1,301.13 |
| | 12/19/03 | $1,301.12 |
| | 12/19/03 | $1,291.63 |
| | 12/19/03 | $1,291.62 |
| | 03/29/04 | $1,072.25 |
| | 03/29/04 | $1,072.25 |
| | 03/29/04 | $1,072.25 |

## Goldstar Products, Inc./Michael A. Sheehan Transaction Detail

Victims: Union Pacific Railroad Company, including but not limited to the following  Union Pacific employees:

| | | |
|---|---|---|
| Donald J. Allcorn | 05/17/01 | $1,272.10 |
| | 05/21/01 | $2,843.75 |

Page 3 of  45

.

CASE NO.  06-60873-CIV-COHEN

| | |
|---|---|
| 08/02/01 | $899.10 |
| 08/15/01 | $1,944.65 |
| 08/31/01 | $665.45 |
| 09/13/01 | $999.99 |
| 09/20/01 | $1,100.00 |
| 10/01/01 | $999.50 |
| 10/01/01 | $100.50 |
| 10/09/01 | $897.33 |
| 10/22/01 | $897.33 |
| 11/01/01 | $897.33 |
| 11/02/01 | $1,110.40 |
| 12/03/01 | $1,110.40 |
| 01/02/02 | $1,110.40 |
| 01/04/02 | $1,399.75 |
| 02/01/02 | $1,399.75 |
| 02/06/02 | $1,399.75 |
| 02/13/02 | $1,225.35 |
| 02/18/02 | $1,225.35 |
| 03/04/02 | $1,225.35 |
| 03/15/02 | $1,265.05 |
| 03/25/02 | $1,225.35 |
| 03/25/02 | $1,265.05 |
| 03/27/02 | $1,477.15 |
| 04/01/02 | $1,265.05 |
| 04/02/02 | $1,477.15 |
| 04/16/02 | $1,477.15 |
| 04/18/02 | $500.00 |
| 05/01/02 | $1,477.15 |
| 05/01/02 | $776.05 |
| 05/01/02 | $1,000.00 |
| 05/01/02 | $276.05 |
| 05/08/02 | $1,276.05 |
| 05/09/02 | $2,857.83 |
| 05/15/02 | $1,000.00 |
| 05/28/02 | $1,857.83 |
| 05/31/02 | $1,360.48 |
| 05/31/02 | $2,857.84 |
| 06/24/02 | $750.00 |
| 07/01/02 | $610.48 |
| 07/01/02 | $1,360.48 |
| 07/02/02 | $2,509.00 |
| 07/25/02 | $2,509.00 |

Page 4 of  45

CASE NO.  06-60873-CIV-COHEN

|  | | |
|---|---|---|
| | 08/01/02 | $2,509.00 |
| | 08/28/02 | $1,500.00 |
| | 08/28/02 | $1,006.65 |
| | 09/03/02 | $2,506.65 |
| | 11/04/02 | $1,989.60 |
| | 11/08/02 | $1,989.60 |
| | 01/20/03 | $1,000.00 |
| | 01/20/03 | $1,214.30 |
| | 02/03/03 | $2,214.30 |
| | 03/07/03 | $1,791.12 |
| | 03/10/03 | $1,791.12 |
| | 05/01/03 | $1,719.80 |
| | 05/05/03 | $1,719.80 |
| | 06/02/03 | $1,719.80 |
| Tyson W. Widler | 08/29/02 | $3,423.00 |
| | 10/24/02 | $3,000.00 |
| | 10/24/02 | $2,904.50 |
| | 11/19/02 | $1,358.50 |
| | 01/10/03 | $1,358.50 |
| | 02/13/03 | $2,025.90 |
| | 03/04/03 | $3,590.50 |
| | 04/01/03 | $3,590.50 |
| | 04/03/03 | $2,242.26 |
| | 05/05/03 | $4,140.50 |
| | 06/09/03 | $4,140.50 |
| | 07/01/03 | $4,140.50 |
| | 09/02/03 | $2,333.00 |
| | 09/17/03 | $4,140.50 |
| | 11/03/03 | $4,140.50 |
| | 11/07/03 | $4,164.61 |
| | 12/01/03 | $4,140.50 |
| | 01/13/04 | $4,164.61 |
| | 02/18/04 | $4,164.61 |
| | 04/15/04 | $3,560.20 |
| | 04/21/04 | $3,560.20 |
| James E. Travers | 02/13/02 | $1,000.00 |
| | 02/13/02 | $1,000.00 |
| | 02/13/02 | $867.50 |
| | 03/12/02 | $1,000.00 |
| | 03/12/02 | $1,000.00 |

CASE NO.  06-60873-CIV-COHEN

| | | |
|---|---|---|
| | 03/12/02 | $1,000.00 |
| | 03/12/02 | $153.90 |
| | 03/28/02 | $1,000.00 |
| | 03/28/02 | $1,000.00 |
| | 03/28/02 | $1,000.00 |
| | 03/28/02 | $153.90 |
| | 05/01/02 | $1,000.00 |
| | 05/01/02 | $2,000.00 |
| | 05/01/02 | $417.50 |
| | 05/07/02 | $2,000.00 |
| | 05/07/02 | $1,634.95 |
| | 07/01/02 | $2,000.00 |
| | 07/01/02 | $1,417.50 |
| | 08/01/02 | $2,000.00 |
| | 08/01/02 | $1,417.50 |
| | 09/06/02 | $1,906.65 |
| | 09/30/02 | $1,406.20 |
| | 10/28/02 | $1,406.20 |
| | 12/03/02 | $2,000.00 |
| | 12/03/02 | $1,099.13 |
| | 01/02/03 | $2,000.00 |
| | 01/02/03 | $1,099.13 |
| | 05/08/03 | $1,922.85 |
| | 06/18/03 | $1,150.90 |
| | 07/01/03 | $1,150.90 |
| | 10/22/03 | $2,424.25 |
| | 12/15/03 | $1,150.90 |
| | 01/02/04 | $1,150.90 |
| William D. Held, Jr. | 06/06/01 | $1,282.65 |
| | 06/26/01 | $861.35 |
| | 08/30/01 | $950.75 |
| | 09/04/01 | $950.75 |
| | 09/05/01 | $950.75 |
| | 10/15/01 | $1,000.00 |
| | 10/15/01 | $555.50 |
| | 02/01/02 | $1,428.65 |
| | 04/26/02 | $500.00 |
| | 05/01/02 | $1,087.00 |
| | 06/03/02 | $1,000.00 |
| | 06/03/02 | $587.00 |
| | 07/01/02 | $1,000.00 |

Page 6 of  45

CASE NO.  06-60873-CIV-COHEN

|  |  |
|---|---|
| 07/01/02 | $751.12 |
| 08/01/02 | $1,000.00 |
| 08/01/02 | $751.12 |
| 10/14/02 | $552.40 |
| 11/04/02 | $1,000.00 |
| 11/04/02 | $851.12 |
| 12/02/02 | $1,840.02 |
| 05/01/03 | $1,000.00 |
| 05/01/03 | $1,000.00 |
| 05/01/03 | $848.12 |
| 06/02/03 | $2,843.12 |
| 08/01/03 | $1,671.50 |
| 09/02/03 | $1,671.50 |
| 10/02/03 | $2,859.87 |
| 11/03/03 | $2,859.87 |
| 11/11/03 | $767.00 |
| 12/01/03 | $767.00 |
| 01/22/04 | $2,601.00 |
| 02/18/04 | $2,601.00 |
| 04/22/04 | $499.50 |
| 04/23/04 | $499.50 |
| 04/27/04 | $120.90 |

John A. Matthews

|  |  |
|---|---|
| 01/24/02 | $665.43 |
| 02/12/02 | $1,000.00 |
| 02/12/02 | $1,000.00 |
| 02/28/02 | $1,138.00 |
| 03/19/02 | $1,000.00 |
| 04/01/02 | $2,413.00 |
| 05/01/02 | $1,569.20 |
| 06/03/02 | $1,970.45 |
| 07/16/02 | $2,000.00 |
| 08/05/02 | $564.95 |
| 09/18/02 | $1,000.00 |
| 09/30/02 | $1,454.00 |
| 10/07/02 | $1,000.00 |
| 10/14/02 | $1,158.40 |
| 12/30/02 | $3,372.00 |
| 01/02/03 | $3,372.00 |
| 02/20/03 | $3,372.00 |
| 03/19/03 | $4,120.00 |
| 04/01/03 | $3,099.13 |

CASE NO.  06-60873-CIV-COHEN

|  |  |  |
|---|---|---|
|  | 05/01/03 | $3,126.34 |
| Philip G. Schaefer | 03/11/02 | $1,000.00 |
|  | 03/11/02 | $282.15 |
|  | 04/17/02 | $1,293.50 |
|  | 04/30/02 | $1,282.15 |
|  | 05/20/02 | $1,906.65 |
|  | 06/04/02 | $1,282.15 |
|  | 06/13/02 | $2,000.00 |
|  | 06/13/02 | $1,096.30 |
|  | 08/01/02 | $1,244.20 |
|  | 09/04/02 | $1,923.30 |
|  | 10/29/02 | $1,025.90 |
|  | 10/29/02 | $1,000.00 |
|  | 01/02/03 | $1,568.95 |
|  | 01/23/03 | $1,568.95 |
|  | 02/03/03 | $1,292.80 |
|  | 03/10/03 | $1,292.80 |
|  | 04/01/03 | $1,370.00 |
|  | 04/28/03 | $1,370.00 |
|  | 05/27/03 | $1,726.14 |
|  | 06/23/03 | $1,256.35 |
|  | 06/23/03 | $1,000.00 |
|  | 07/16/03 | $1,861.50 |
|  | 08/01/03 | $1,289.90 |
|  | 08/01/03 | $1,000.00 |
|  | 08/28/03 | $1,908.25 |
| Ken J. Bush | 10/16/02 | $1,326.60 |
|  | 11/18/02 | $665.43 |
|  | 12/13/02 | $1,765.28 |
|  | 12/16/02 | $1,765.28 |
|  | 12/19/02 | $680.37 |
|  | 12/31/02 | $1,710.43 |
|  | 12/31/02 | $1,710.43 |
|  | 01/21/03 | $680.37 |
|  | 02/25/03 | $1,710.43 |
|  | 04/01/03 | $1,748.00 |
|  | 04/03/03 | $1,764.40 |
|  | 04/08/03 | $1,732.50 |
|  | 05/01/03 | $1,764.40 |
|  | 05/02/03 | $1,732.50 |

CASE NO.  06-60873-CIV-COHEN

|  | 05/06/03 | $1,732.50 |
|---|---|---|
|  | 05/08/03 | $1,732.50 |
|  | 05/09/03 | $1,732.50 |
|  | 05/14/03 | $732.50 |
|  | 05/29/03 | $1,000.00 |
|  | 06/04/03 | $1,732.50 |
|  | 06/06/03 | $1,732.50 |
|  | 08/15/03 | $1,748.00 |
|  | 08/15/03 | $1,764.40 |
|  | 08/15/03 | $1,732.50 |
|  | 08/15/03 | $1,764.40 |
|  | 09/09/03 | $1,732.50 |
|  | 09/09/03 | $1,732.50 |
|  | 09/09/03 | $1,732.50 |
|  | 09/09/03 | $1,732.50 |
|  | 09/09/03 | $1,732.50 |
| Keith E. Davis | 02/15/01 | $651.35 |
|  | 04/06/01 | $1,273.05 |
|  | 05/21/01 | $1,273.05 |
|  | 07/03/01 | $1,011.65 |
|  | 08/10/01 | $674.48 |
|  | 09/05/01 | $674.48 |
|  | 10/04/01 | $885.00 |
|  | 11/01/01 | $885.00 |
|  | 12/03/01 | $875.15 |
|  | 12/13/01 | $749.50 |
|  | 01/02/02 | $749.50 |
|  | 01/16/02 | $710.00 |
|  | 02/01/02 | $710.00 |
|  | 02/06/02 | $710.00 |
|  | 02/13/02 | $961.62 |
|  | 03/01/02 | $961.62 |
|  | 03/15/02 | $749.50 |
|  | 04/01/02 | $749.50 |
|  | 05/03/02 | $1,049.50 |
|  | 05/20/02 | $1,049.50 |
|  | 06/17/02 | $1,157.65 |
|  | 07/01/02 | $1,157.65 |
|  | 07/15/02 | $874.80 |
|  | 08/02/02 | $874.80 |
|  | 08/16/02 | $1,128.05 |

CASE NO.  06-60873-CIV-COHEN

|  |  |  |
|---|---|---|
|  | 08/26/02 | $45.00 |
|  | 08/26/02 | $1,173.05 |
|  | 10/03/02 | $747.90 |
|  | 10/28/02 | $747.90 |
|  | 01/31/03 | $1,054.03 |
|  | 01/31/03 | $1,054.03 |
|  | 04/01/03 | $1,135.50 |
|  | 05/01/03 | $1,135.50 |
|  | 06/02/03 | $1,135.50 |
| Leon Ferguson | 10/22/01 | $2,128.00 |
|  | 11/1/01 | $2,128.00 |
|  | 11/21/01 | $1,279.65 |
|  | 01/28/02 | $1,446.17 |
|  | 4/23/02 | $1,077.15 |
|  | 5/8/02 | $1,077.15 |
|  | 12/2/02 | $1,000.00 |
|  | 12/2/02 | $1,770.60 |
|  | 01/2/03 | $1,000.00 |
|  | 01/2/03 | $1,770.60 |
|  | 2/3/03 | $1,000.00 |
|  | 2/3/03 | $1,770.60 |
|  | 3/3/03 | $1,000.00 |
|  | 3/3/03 | $1,770.60 |
|  | 4/1/03 | $1,000.00 |
|  | 4/1/03 | $1,770.35 |
|  | 5/1/03 | $1,000.00 |
|  | 5/1/03 | $1,770.35 |
| Garry G. Readman | 9/20/01 | $665.43 |
|  | 10/22/01 | $1,139.33 |
|  | 11/1/01 | $1,139.33 |
|  | 12/5/01 | $1,139.33 |
|  | 12/6/01 | $635.00 |
|  | 1/30/02 | $635.93 |
|  | 2/1/02 | $635.93 |
|  | 3/5/02 | $664.93 |
|  | 4/22/02 | $342.65 |
|  | 5/15/02 | $976.75 |
|  | 6/3/02 | $976.75 |
|  | 7/11/02 | $976.75 |
|  | 8/6/02 | $664.93 |

|  |  |  |
|---|---|---|
|  | 9/3/02 | $664.93 |
|  | 9/25/02 | $659.35 |
|  | 9/30/02 | $659.35 |
|  | 11/19/02 | $672.10 |
|  | 12/2/02 | $672.10 |
|  | 12/19/02 | $1,326.60 |
|  | 1/20/03 | $1,326.60 |
|  | 2/27/03 | $691.63 |
|  | 3/10/03 | $672.10 |
|  | 4/7/03 | $1,358.50 |
|  | 5/13/03 | $1,558.50 |
|  | 6/2/03 | $780.37 |
|  | 6/19/03 | $1,951.25 |
|  | 7/14/03 | $2,289.90 |
|  | 8/1/03 | $1,558.50 |
| Gregory S. Ingram | 9/6/01 | $659.85 |
|  | 10/2/01 | $1,000.00 |
|  | 10/2/01 | $571.51 |
|  | 11/1/01 | $1,000.00 |
|  | 11/1/01 | $571.51 |
|  | 11/13/01 | $1,000.00 |
|  | 11/13/01 | $282.65 |
|  | 1/24/02 | $1,000.00 |
|  | 1/24/02 | $571.51 |
|  | 2/1/02 | $1,000.00 |
|  | 2/1/02 | $571.50 |
|  | 3/5/02 | $1,000.00 |
|  | 3/5/02 | $744.00 |
|  | 4/2/02 | $1,000.00 |
|  | 4/2/02 | $739.12 |
|  | 4/15/02 | $1,000.00 |
|  | 4/15/02 | $739.12 |
|  | 5/15/02 | $1,000.00 |
|  | 5/15/02 | $747.37 |
|  | 6/12/02 | $1,000.00 |
|  | 6/12/02 | $747.37 |
|  | 7/1/02 | $1,000.00 |
|  | 7/1/02 | $747.37 |
|  | 7/5/02 | $1,000.00 |
|  | 7/5/02 | $747.37 |

| Mark E. Lubbs | 2/13/01 | $634.98 |
| | 3/12/01 | $842.40 |
| | 4/6/01 | $842.40 |
| | 6/7/01 | $1,282.65 |
| | 6/8/01 | $216.10 |
| | 7/2/01 | $1,698.75 |
| | 7/2/01 | $103.52 |
| | 7/16/01 | $1,300.00 |
| | 8/1/01 | $1,582.40 |
| | 9/6/01 | $1,625.70 |
| | 9/10/01 | $1,625.70 |
| | 10/26/01 | $1,064.60 |
| | 10/30/01 | $100.00 |
| | 2/4/02 | $1,383.55 |
| | 11/4/02 | $1,843.90 |
| | 12/2/02 | $1,843.90 |
| | | |
| Nat Ruiz | 5/21/01 | $651.35 |
| | 12/20/01 | $1,000.00 |
| | 12/20/01 | $582.45 |
| | 01/25/02 | $1,000.00 |
| | 01/25/02 | $582.20 |
| | 3/1/02 | $1,000.00 |
| | 3/1/02 | $708.37 |
| | 3/11/02 | $1,000.00 |
| | 3/11/02 | $708.38 |
| | 3/28/02 | $500.00 |
| | 3/28/02 | $1,000.00 |
| | 3/28/02 | $208.38 |
| | 4/3/02 | $1,000.00 |
| | 4/3/02 | $708.38 |
| | 4/18/02 | $1,000.00 |
| | 5/20/02 | $581.65 |
| | 5/21/02 | $1,000.00 |
| | 5/22/02 | $1,000.00 |
| | 5/22/02 | $581.65 |
| | | |
| Marvin L. Hoagland | 1/14/02 | $1,282.65 |
| | 2/20/02 | $1,000.00 |
| | 2/20/02 | $1,000.00 |
| | 2/20/02 | $1,000.00 |
| | 2/20/02 | $46.30 |

CASE NO.  06-60873-CIV-COHEN

|  |  |  |
|---|---|---|
|  | 2/20/02 | $138.00 |
|  | 3/28/02 | $3,138.00 |
|  | 4/22/02 | $808.80 |
|  | 5/20/02 | $1,906.65 |
|  | 7/15/02 | $3,714.05 |
| James S. Fisher | 1/4/02 | $1,000.00 |
|  | 1/4/02 | $582.15 |
|  | 3/1/02 | $1,000.00 |
|  | 3/1/02 | $1,000.00 |
|  | 3/1/02 | $747.50 |
|  | 3/7/02 | $1,000.00 |
|  | 3/7/02 | $938.65 |
|  | 5/1/02 | $1,000.00 |
|  | 5/1/02 | $1,000.00 |
|  | 5/1/02 | $747.50 |
|  | 7/12/02 | $1,000.00 |
|  | 7/12/02 | $1,000.00 |
|  | 7/12/02 | $867.75 |
| Juan E. Santos | 1/2/02 | $688.30 |
|  | 2/4/02 | $947.90 |
|  | 3/1/02 | $947.90 |
|  | 5/10/02 | $699.50 |
|  | 8/1/02 | $298.55 |
|  | 9/5/02 | $822.10 |
|  | 9/20/02 | $822.10 |
|  | 11/8/02 | $892.37 |
|  | 12/2/02 | $892.37 |
|  | 1/14/03 | $1,689.90 |
|  | 2/3/03 | $1,408.25 |
| Randy N. Hamilton | 1/3/02 | $1,295.00 |
|  | 5/1/02 | $417.90 |
|  | 6/13/02 | $417.90 |
|  | 4/22/03 | $772.10 |
|  | 5/1/03 | $772.10 |
|  | 5/2/03 | $434.50 |
| Greg A. Hinker | 1/3/02 | $509.97 |
|  | 1/11/02 | $509.97 |
|  | 2/13/02 | $642.40 |

|  |  |  |
|---|---|---|
|  | 2/13/02 | $1,277.15 |
|  | 6/28/02 | $664.93 |
|  | 5/21/03 | $1,150.90 |
|  | 6/2/03 | $1,150.90 |
| Jeffrey W. Derr | 12/19/01 | $661.18 |
|  | 1/2/02 | $661.18 |
|  | 1/21/02 | $648.25 |
|  | 2/28/02 | $1,000.00 |
|  | 2/28/02 | $257.80 |
|  | 3/18/02 | $1,251.50 |
|  | 4/11/02 | $658.30 |
|  | 5/1/02 | $658.30 |
|  | 5/16/02 | $971.40 |
|  | 7/1/02 | $971.40 |
|  | 8/6/02 | $1,057.97 |
| Ron G. Clarkson | 2/12/02 | $500.00 |
|  | 2/12/02 | $500.00 |
|  | 2/12/02 | $477.15 |
|  | 2/19/02 | $500.00 |
|  | 2/19/02 | $500.00 |
|  | 2/19/02 | $500.00 |
|  | 2/19/02 | $500.00 |
|  | 2/19/02 | $500.00 |
|  | 2/19/02 | $50.50 |
|  | 3/6/02 | $500.00 |
|  | 3/6/02 | $500.00 |
|  | 3/6/02 | $500.00 |
|  | 3/6/02 | $500.00 |
|  | 3/6/02 | $500.00 |
|  | 3/6/02 | $500.00 |
|  | 3/6/02 | $500.00 |
|  | 3/6/02 | $500.00 |
|  | 3/6/02 | $6.05 |
| Thomas F. Drewenski | 11/7/02 | $766.80 |
|  | 12/4/02 | $766.80 |
|  | 1/2/03 | $1,001.55 |
|  | 1/16/03 | $680.77 |
|  | 2/28/03 | $402.25 |
|  | 3/20/03 | $780.77 |

CASE NO.  06-60873-CIV-COHEN

|  | | |
|---|---|---|
|  | 4/1/03 | $799.90 |
|  | 4/10/03 | $978.42 |
|  | 4/11/03 | $978.42 |
|  | 5/7/03 | $442.80 |
|  | 5/28/03 | $758.70 |
| Michael J. Kerwood | 3/22/02 | $659.75 |
|  | 5/3/02 | $592.80 |
|  | 5/20/02 | $592.80 |
|  | 1/9/03 | $552.40 |
|  | 3/24/03 | $1,359.30 |
|  | 6/2/03 | $1,820.81 |
|  | 7/30/03 | $1,820.81 |
| Walter D. Thomson | 4/4/02 | $942.95 |
|  | 5/1/02 | $942.95 |
|  | 5/14/02 | $507.00 |
|  | 6/3/02 | $507.00 |
|  | 6/11/02 | $558.30 |
|  | 7/1/02 | $558.30 |
|  | 10/29/02 | $942.95 |
|  | 11/8/02 | $942.95 |
|  | 11/13/02 | $964.00 |
| James A. Curtiss | 8/1/01 | $1,282.65 |
|  | 8/22/01 | $2,000.00 |
|  | 9/4/01 | $2,000.00 |
|  | 10/1/01 | $2,000.00 |
| James R. Dean | 10/30/01 | $500.00 |
|  | 10/30/01 | $159.68 |
|  | 11/1/01 | $500.00 |
|  | 11/1/01 | $159.68 |
|  | 12/6/01 | $499.50 |
|  | 12/6/01 | $160.35 |
|  | 12/13/01 | $500.00 |
|  | 12/13/01 | $172.15 |
|  | 1/15/02 | $500.00 |
|  | 1/15/02 | $500.00 |
|  | 1/15/02 | $262.00 |
|  | 2/13/02 | $500.00 |
|  | 2/13/02 | $500.00 |

Page 15 of  45

|  |  |  |
|---|---|---|
|  | 2/13/02 | $282.00 |
|  | 7/9/02 | $500.00 |
|  | 7/9/02 | $149.40 |
|  | 8/8/02 | $649.40 |
|  | 7/15/03 | $408.55 |
| Ralph E. Gillen | 9/6/01 | $665.43 |
|  | 9/27/01 | $1.790.40 |
|  | 10/1/01 | $1,790.40 |
|  | 1/28/02 | $1,646.17 |
|  | 4/23/02 | $1,606.65 |
|  | 5/8/02 | $1,606.65 |
|  | 10/9/02 | $1,957.00 |
|  | 1/15/03 | $334.75 |
|  | 2/13/03 | $352.25 |
|  | 6/5/03 | $758.30 |
| Robert L. Mermis | 3/4/02 | $637.40 |
|  | 4/1/02 | $637.40 |
|  | 7/8/02 | $664.93 |
|  | 8/2/02 | $664.93 |
|  | 9/19/02 | $999.90 |
|  | 9/30/02 | $999.90 |
|  | 2/4/03 | $992.03 |
|  | 3/3/03 | $992.03 |
| Timothy M. Hecker | 8/16/01 | $669.95 |
|  | 2/1/02 | $352.90 |
|  | 7/18/02 | $1,098.62 |
|  | 8/12/02 | $1,098.62 |
|  | 2/14/03 | $1,690.20 |
|  | 3/10/03 | $1,408.50 |
| Todd A. Plank | 10/19/01 | $1,107.00 |
|  | 10/22/01 | $1,107.00 |
|  | 11/1/01 | $1,107.00 |
|  | 12/7/01 | $880.40 |
|  | 1/31/03 | $680.77 |
| Daniel L. Lucas | 1/24/02 | $332.71 |
|  | 2/1/02 | $332.71 |
|  | 2/19/02 | $659.93 |

CASE NO.  06-60873-CIV-COHEN

| | | |
|---|---|---|
| | 4/1/02 | $659.93 |
| | 4/9/02 | $664.93 |
| | 5/3/02 | $664.93 |
| | 7/1/02 | $664.43 |
| | 7/16/02 | $666.35 |
| | 8/8/02 | $664.93 |
| | 9/3/02 | $664.93 |
| Denny R. Gallegos | 6/7/02 | $1,477.15 |
| | 7/1/02 | $1,297.58 |
| | 8/8/02 | $1,297.57 |
| Terry L. Hurley | 9/25/02 | $1,000.00 |
| | 9/25/02 | $1,000.00 |
| | 9/25/02 | $506.65 |
| | 11/8/02 | $1,326.40 |
| | 2/24/03 | $1,476.20 |
| John B. Jorgensen | 5/15/02 | $759.35 |
| | 6/3/02 | $759.35 |
| | 7/1/02 | $699.50 |
| | 7/5/02 | $699.50 |
| | 8/8/02 | $699.50 |
| | 9/4/02 | $699.50 |
| | 9/11/02 | $699.50 |
| James F. Nudera | 5/17/01 | $651.35 |
| | 9/25/01 | $665.43 |
| | 9/25/01 | $1,065.37 |
| | 10/10/01 | $1,000.00 |
| | 10/10/01 | $1,000.00 |
| | 10/10/01 | $1,000.00 |
| | 10/10/01 | $537.00 |
| | 2/1/02 | $689.10 |
| James L. Compton | 2/5/01 | $277.40 |
| | 3/16/01 | $651.75 |
| | 3/30/01 | $749.50 |
| | 5/1/01 | $749.50 |
| | 5/4/01 | $1,100.35 |
| | 8/16/01 | $451.90 |
| | 10/12/01 | $785.73 |

CASE NO.  06-60873-CIV-COHEN

| | | |
|---|---|---|
| Russel J. Cramer | 7/24/01 | $349.05 |
| | 2/14/03 | $691.63 |
| | 3/10/03 | $672.10 |
| | 4/1/03 | $672.10 |
| | 11/3/03 | $2,289.90 |
| Raymond D. Hoffman | 8/28/01 | $1,302.00 |
| | 10/2/01 | $1,083.15 |
| | 2/1/02 | $859.20 |
| | 7/17/02 | $1,374.25 |
| Dean A. Androy | 4/24/01 | $342.25 |
| | 5/23/02 | $299.90 |
| | 8/2/02 | $899.50 |
| | 9/3/02 | $899.50 |
| | 2/21/03 | $999.20 |
| | 3/10/03 | $999.20 |
| | 4/1/03 | $999.20 |
| John E. Gutierrez | 8/15/01 | $647.25 |
| | 9/7/01 | $647.25 |
| | 9/24/01 | $1,153.86 |
| | 11/1/01 | $1,153.86 |
| Karid A. Bauer | 10/14/02 | $2,025.40 |
| | 1/7/03 | $680.37 |
| | 3/18/03 | $680.37 |
| Lloyd J. McCray, Jr. | 8/8/01 | $1,905.50 |
| | 4/2/02 | $1,477.15 |
| Steve T. Vinklarek | 4/30/01 | $499.50 |
| | 4/30/01 | $151.85 |
| | 3/19/02 | $500.00 |
| | 3/19/02 | $149.35 |
| | 3/28/02 | $500.00 |
| | 4/1/02 | $159.35 |
| | 4/16/02 | $500.00 |
| | 5/1/02 | $500.00 |
| | 5/1/02 | $466.33 |
| | 5/1/02 | $466.33 |
| | 5/28/02 | $466.33 |

Page 18 of  45

CASE NO.  06-60873-CIV-COHEN

| | | |
|---|---|---|
| Gail A. Nelson | 2/6/02 | $650.00 |
| | 2/6/02 | $632.65 |
| | 2/13/02 | $641.07 |
| | 2/25/02 | $641.08 |
| | 3/6/02 | $641.08 |
| Keith W. Smith | 7/6/01 | $330.93 |
| | 8/6/01 | $330.93 |
| | 8/23/01 | $701.50 |
| | 1/11/02 | $665.88 |
| | 2/22/02 | $342.40 |
| | 1/2/03 | $680.37 |
| Randy J. Golden | 5/21/01 | $278.60 |
| | 4/14/03 | $855.32 |
| | 4/16/03 | $855.32 |
| | 5/2/03 | $855.32 |
| Sam R. Wiersma | 8/16/01 | $431.50 |
| | 9/4/01 | $431.50 |
| | 9/5/01 | $431.50 |
| | 4/12/02 | $342.65 |
| | 6/20/02 | $427.90 |
| | 7/9/02 | $427.90 |
| | 7/18/02 | $342.65 |
| Larry E. Woodford | 9/26/01 | $665.43 |
| | 7/23/02 | $747.30 |
| | 12/3/02 | $569.95 |
| | 3/7/03 | $392.90 |
| | 4/1/03 | $392.90 |
| Curtis B. Fulton | 8/28/01 | $1,282.65 |
| | 10/1/01 | $1,459.85 |
| David J. Kula | 6/28/01 | $656.60 |
| | 7/20/01 | $677.90 |
| | 5/1/02 | $659.35 |
| | 5/15/02 | $659.35 |
| Arturo R. Gurrola | 9/24/01 | $665.43 |
| | 10/3/01 | $665.43 |

CASE NO.  06-60873-CIV-COHEN

|  |  |  |
|---|---|---|
|  | 10/5/01 | $665.43 |
|  | 10/22/01 | $629.75 |
|  | 11/1/01 | $629.75 |
|  | 1/17/02 | $665.43 |
| Louis C. Lager | 1/31/02 | $1,282.65 |
|  | 4/17/02 | $1,077.16 |
| Thomas J. Moran | 9/12/01 | $665.43 |
|  | 10/22/01 | $665.00 |
|  | 1/15/02 | $765.43 |
| Mike W. Flowers | 6/27/01 | $352.75 |
|  | 10/1/01 | $307.50 |
|  | 10/22/01 | $307.50 |
|  | 10/23/01 | $40.15 |
|  | 12/13/01 | $352.90 |
|  | 5/20/02 | $349.75 |
|  | 5/21/02 | $349.75 |
| Ronald J. Nash | 10/29/01 | $352.75 |
|  | 11/19/01 | $352.75 |
|  | 11/26/01 | $665.83 |
|  | 12/11/01 | $665.43 |
| Charles J. Jacobsen | 10/23/02 | $2,025.90 |
| Carmen W. Ridenour | 5/23/01 | $651.35 |
|  | 6/27/01 | $651.35 |
|  | 7/26/01 | $661.85 |
|  | 8/15/01 | $651.35 |
|  | 3/21/02 | $699.40 |
| Jose A. Mayoral | 1/6/03 | $991.38 |
|  | 1/6/03 | $991.38 |
| Robert B. Allen | 9/6/01 | $663.45 |
|  | 01/28/02 | $666.43 |
|  | 2/11/02 | $616.22 |
| David L. Reed | 9/19/01 | $1,902.50 |

CASE NO.  06-60873-CIV-COHEN

| James M. McQuitty | 1/15/02 | $500.00 |
| | 1/15/02 | $162.18 |
| | 2/1/02 | $500.00 |
| | 2/1/02 | $162.18 |
| | 12/30/02 | $552.20 |
| Earl F. Chaney, Jr. | 7/26/01 | $651.35 |
| Samuel R. Garcia | 8/7/01 | $349.05 |
| | 9/5/01 | $542.65 |
| | 11/16/01 | $347.45 |
| | 12/3/01 | $347.45 |
| Craig A. Knutson | 2/10/03 | $1,581.65 |
| Daniel J. Harp | 8/31/01 | $749.46 |
| | 9/10/01 | $749.46 |
| Desiderio S. Elizondo | 3/19/02 | $482.81 |
| | 3/25/02 | $399.66 |
| | 4/1/02 | $482.81 |
| | 4/8/02 | $482.81 |
| Benjamin Martinez | 9/18/02 | $500.00 |
| | 9/18/02 | $500.00 |
| | 9/18/02 | $57.97 |
| | 10/4/02 | $352.40 |
| August G. Kruse | 3/19/03 | $1,326.60 |
| | 3/20/03 | $399.66 |
| | 4/8/03 | $609.20 |
| | 4/8/03 | $399.66 |
| Gary P. Guidry, Sr. | 10/15/02 | $680.37 |
| | 01/02/03 | $680.37 |
| James A. Lack | 10/15/02 | $1,358.50 |
| David B. Olson | 9/21/01 | $665.43 |
| | 10/01/01 | $665.43 |
| Clifton A. Byley | 12/20/01 | $500.00 |

CASE NO.  06-60873-CIV-COHEN

|  |  |  |
|---|---|---|
|  | 12/20/01 | $161.18 |
|  | 1/2/02 | $500.00 |
|  | 1/2/02 | $161.18 |
| Kenneth G. Reeg. Jr. | 12/12/01 | $660.18 |
|  | 01/02/02 | $660.18 |
| Barry L. Evans | 2/21/02 | $659.85 |
|  | 2/27/02 | $659.85 |
| Richard A. Clark | 8/6/01 | $656.60 |
|  | 9/4/01 | $656.60 |
| David D. Smith | 8/15/01 | $653.65 |
|  | 9/4/01 | $653.65 |
| Charles E. Baxter | 01/02/02 | $1,282.65 |
| Harry M. Wymore | 12/21/01 | $1,282.65 |
| Richard T. Kleckley | 7/31/01 | $1,282.65 |
| Steven R. Smith | 9/20/01 | $1,282.65 |
| Tom Stewart | 10/1/01 | $1,282.65 |
| Robert J. Matkin | 8/14/01 | $651.33 |
|  | 8/22/01 | $500.00 |
|  | 8/28/01 | $141.32 |
| Russell W. Adams | 1/23/02 | $1,282.65 |
| Kenneth L. May | 12/20/01 | $1,282.65 |
| Keith L. Stewart | 1/22/02 | $1,282.65 |
| Elmer E. Janovec | 1/31/02 | $1,282.65 |
| Chad B. Tisdale | 9/14/01 | $1,282.65 |
| James D. Temple | 3/12/02 | $641.08 |
|  | 4/1/02 | $641.07 |

CASE NO.  06-60873-CIV-COHEN

| | | |
|---|---|---|
| Thomas N. Russell | 3/7/02 | $1,000.00 |
| | 3/7/02 | $282.15 |
| Rudy E. Bramlett | 1/3/02 | $1,000.00 |
| | 1/3/02 | $278.45 |
| Larry R. Collins | 2/13/02 | $500.00 |
| | 2/28/02 | $777.15 |
| | 3/6/02 | $777.15 |
| Roland B. Hatton | 5/30/01 | $1,272.15 |
| Derek G. Townley | 2/25/02 | $669.00 |
| | 3/6/02 | $669.00 |
| Timothy J. Butler | 10/30/01 | $1,259.50 |
| | 2/13/02 | $659.35 |
| Larry D. Fausnaugh | 10/25/02 | $680.37 |
| | 11/4/02 | $192.65 |
| | 11/12/02 | $352.25 |
| Grant A. Graham | 8/29/01 | $1,199.00 |
| Russell L. Mrazek | 4/5/01 | $528.10 |
| | 3/21/02 | $499.50 |
| | 3/21/02 | $119.95 |
| John V. Meek | 10/3/01 | $412.70 |
| | 10/26/01 | $340.40 |
| | 11/1/01 | $329.90 |
| John C. Flynn | 8/21/01 | $668.90 |
| | 2/6/02 | $289.10 |
| Nels D. Johnson | 10/3/01 | $289.10 |
| | 01/02/02 | $660.00 |
| William T. Ward | 6/22/01 | $911.01 |
| Darrell A. Ashby | 3/10/03 | $880.37 |

CASE NO.  06-60873-CIV-COHEN

| | | |
|---|---|---|
| Bobby Cordova | 1/15/02 | $499.60 |
| | 2/5/02 | $299.75 |
| Byron J. Bertelsen | 7/12/01 | $363.71 |
| | 8/1/01 | $363.71 |
| Mark W. Briley | 6/1/01 | $352.75 |
| | 10/12/01 | $352.50 |
| Mark A. Rust | 10/11/02 | $352.25 |
| | 11/4/02 | $352.25 |
| Steven W. McIntyre | 7/16/01 | $691.45 |
| Dale E. Tromble, Jr. | 11/5/02 | $680.37 |
| Roger L. Bargar | 8/31/01 | $665.45 |
| Curtis R. Douglas | 9/5/01 | $500.00 |
| | 9/14/01 | $165.45 |
| Rudy L. Burden | 1/25/02 | $665.43 |
| Charles A. Creasman | 01/02/02 | $665.43 |
| | 01/02/02 | $665.43 |
| Manuel Frias | 9/25/01 | $665.43 |
| Glen E. Marshall | 9/10/01 | $665.43 |
| James E. Moeller | 9/19/01 | $500.00 |
| | 9/19/01 | $165.43 |
| Larry E. Harala | 10/01/01 | $665.43 |
| Michael H. Sheets | 9/7/01 | $665.43 |
| George C. Halte | 9/13/01 | $665.43 |
| John W. Martz | 9/7/01 | $665.43 |
| | 10/16/01 | $1,000.00 |
| | 10/16/01 | $282.65 |

CASE NO.  06-60873-CIV-COHEN

| | | |
|---|---|---|
| Mark T. King | 2/7/02 | $665.43 |
| A. Vialpando | 12/20/01 | $500.00 |
| | 12/20/01 | $165.43 |
| Cyril A. Maida | 1/16/02 | $665.43 |
| Travis H. Henderson | 9/12/01 | $665.43 |
| Terry G. Hogue | 9/6/01 | $665.43 |
| Steven L. Smith | 9/20/01 | $665.43 |
| Talmage D. Dalebout | 2/19/02 | $664.93 |
| Earl E. Wade | 3/18/02 | $661.90 |
| Mark J. Haley | 5/31/01 | $661.85 |
| Donald J. Hill | 7/26/01 | $661.85 |
| Oscar M. Escamilla | 1/25/02 | $659.85 |
| David R. Story | 3/19/02 | $654.93 |
| Joseph L. Guatney | 6/19/01 | $651.35 |
| Everett D. Wolf | 5/4/01 | $651.35 |
| | 4/18/02 | $659.35 |
| Darin P. Allman | 12/13/01 | $641.96 |
| Amjad Aldulaimi | 1/7/03 | $586.90 |
| Larry G. Caston | 7/2/01 | $561.55 |
| Greg A. Kreifels | 2/22/02 | $559.75 |
| | 2/22/02 | $559.75 |
| | 2/22/02 | $559.75 |
| | 2/22/02 | $559.75 |
| Michael E. Standing | 5/28/04 | $557.85 |

CASE NO.  06-60873-CIV-COHEN

| | | |
|---|---|---|
| Averill L. Dewey | 8/23/01 | $500.00 |
| Steven M. Fish | 10/10/02 | $479.80 |
| Kenneth L. Cresap, Sr. | 10/30/02<br>11/8/02 | $209.75<br>$209.75 |
| Terrance E. Wagner | 7/17/01 | $412.70 |
| Pedro J. Perez | 11/7/02 | $412.20 |
| Robert J. Gutierrez | 2/14/02 | $402.75 |
| Michael R. Leake | 7/16/01<br>01/02/02 | $352.75<br>$398.87 |
| Douglas L. Richard | 1/30/02 | $383.40 |
| Josh L. Pospisil | 2/8/02 | $359.70 |
| Craig C. Clarke | 6/6/01 | $352.75 |
| Geoff O. Miller | 8/3/01 | $352.75 |
| Brad D. Laramore | 9/25/01 | $352.75 |
| Monte R. Goring | 2/1/02 | $352.75 |
| Jeff A. Hedges | 9/18/01<br>01/25/01<br>01/25/02 | $352.75<br>$1,000.00<br>$283.15 |
| Daniel G. Deshotel | 11/4/02 | $352.25 |
| Ronald D. Wise | 10/17/02 | $352.25 |
| Truitt Williford | 1/23/02 | $349.05 |
| Mike R. Cordova | 8/15/01 | $349.05 |
| Cliff L. Bowman | 1/22/02 | $343.15 |

CASE NO.  06-60873-CIV-COHEN

| | | |
|---|---|---|
| James E. Asmussen | 6/4/01 | $342.25 |
| Mac A. Turner | 5/16/01 | $338.55 |
| Robert P. Krieger | 1/11/01 | $287.35 |
| Neil K. Berg | 1/9/03 | $500.00 |
| | 1/9/03 | $172.60 |
| Steven K. Ward | 3/13/02 | $499.90 |
| Robert R. Dickinson | 8/14/01 | $349.05 |
| Arthur E. Childers | 10/3/01 | $665.43 |
| James E. Lapcinski | 3/14/02 | $300.00 |
| Bruce W. Vickers | 9/25/01 | $347.50 |
| Richard W. Braddock | 6/25/01 | $352.75 |
| David L. Pendleton | 9/20/01 | $1,282.65 |

### T.D.R.S. Properties, Inc./Michael A. Sheehan Transaction Detail

Victims: Union Pacific Railroad Company, including but not limited to the following  Union Pacific employees:

| | | |
|---|---|---|
| Randy J. Golden | 05/02/03 | $855.32 |
| Bruce W. Vickers | 11/24/03 | $772.10 |
| | 12/03/03 | $612.00 |
| | 01/07/04 | $1,045.53 |
| | 02/02/04 | $1,049.65 |
| | 3/1/04 | $1,049.65 |
| | 3/5/04 | $1,119.20 |
| | 4/1/04 | $1,119.20 |
| | 5/3/04 | $816.47 |
| | 5/4/04 | $406.35 |
| | 6/8/04 | $1,499.52 |
| | 7/1/04 | $1,307.00 |

CASE NO. 06-60873-CIV-COHEN

|  |  |  |
|---|---|---|
|  | 7/8/04 | $773.45 |
|  | 7/28/04 | $1,294.95 |
| Chad D. Tisdale | 1/2/03 | $391.90 |
|  | 1/15/03 | $391.90 |
|  | 1/17/03 | $342.65 |
|  | 2/3/03 | $342.65 |
| Charles J. Jacobsen | 1/6/04 | $891.63 |
|  | 2/2/04 | $872.10 |
|  | 3/1/04 | $872.10 |
|  | 4/19/04 | $971.60 |
| Craig C. Clarke | 7/21/03 | $1,558.50 |
|  | 10/7/03 | $1,548.50 |
|  | 1/15/04 | $1,513.00 |
| Daniel L. Lucas | 9/9/03 | $402.25 |
| Desiderio S. Elizondo Jr. | 2/24/04 | $392.65 |
| Earl F. Chaney, Jr. | 6/12/02 | $664.93 |
|  | 7/17/02 | $1,126.78 |
|  | 8/5/02 | $1,126.78 |
|  | 8/14/02 | $2,194.00 |
|  | 9/3/02 | $1,831.90 |
|  | 10/30/02 | $2,125.75 |
|  | 11/4/02 | $1,226.60 |
|  | 12/10/02 | $1,689.90 |
|  | 12/16/02 | $1,658.00 |
|  | 2/3/03 | $1,325.78 |
|  | 3/3/03 | $1,325.78 |
|  | 3/12/03 | $991.38 |
|  | 4/1/03 | $991.38 |
|  | 4/23/03 | $2,289.90 |
|  | 5/1/03 | $1,908.25 |
|  | 8/1/03 | $2,083.13 |
|  | 8/4/03 | $2,115.02 |
|  | 9/16/03 | $1,923.62 |
|  | 9/22/03 | $1,923.62 |
|  | 9/25/03 | $1,924.63 |
|  | 9/26/03 | $701.80 |

CASE NO.  06-60873-CIV-COHEN

|  |  |  |
|---|---|---|
|  | 11/6/03 | $2,116.03 |
|  | 11/18/03 | $2,116.03 |
|  | 12/1/03 | $2,116.03 |
|  | 1/2/04 | $2,116.03 |
|  | 3/1/04 | $1,989.90 |
| Elmer E. Janovec | 1/15/04 | $1,599.00 |
|  | 1/15/04 | $1,458.95 |
| Everett D. Wolf | 5/02/02 | $659.35 |
|  | 8/29/02 | $659.35 |
|  | 9/5/02 | $659.35 |
| James E. Biggerstaff | 02/06/04 | $4,140.25 |
| John A. Mathews | 7/24/03 | $2,449.75 |
|  | 8/1/03 | $2,449.75 |
|  | 10/21/03 | $2,449.75 |
|  | 11/5/03 | $2,449.75 |
|  | 1/2/04 | $2,449.75 |
|  | 1/23/04 | $3,010.00 |
|  | 1/29/04 | $2,449.75 |
|  | 3/2/04 | $2,449.75 |
|  | 4/1/04 | $2,449.75 |
|  | 5/21/04 | $1,587.45 |
| John B. Jorgensen | 07/16/02 | $699.50 |
| John E. Day | 02/10/04 | $779.87 |
| John E. Gutierrez | 01/21/04 | $780.37 |
| Larry W. Vickers | 2/3/04 | $1,141.38 |
|  | 3/1/04 | $2,126.12 |
|  | 4/5/04 | $2,115.03 |
| Leon Ferguson | 4/29/04 | $2,964.15 |
|  | 5/3/04 | $2,964.15 |
| Marc A. Turner | 4/29/03 | $398.55 |
|  | 4/8/04 | $402.25 |
| Mark J. Haley |  | $1,238.90 |

CASE NO.  06-60873-CIV-COHEN

| | | |
|---|---|---|
| Michael E. Standing | 4/23/04 | $557.45 |
| | 5/14/04 | $557.45 |
| Monte R. Goring | 1/02/03 | $1,000.90 |
| Oscar M. Escamilla | 4/4/03 | $398.55 |
| Randy J. Golden | 5/2/03 | $855.32 |
| Raymond D. Hoffman | 2/6/04 | $2,069.63 |
| | 2/9/04 | $2,069.63 |
| Robert L. Griffin | 5/19/04 | $2,359.45 |
| Robert L. Mermis | 5/1/03 | $855.32 |
| | 5/14/03 | $855.32 |
| Russell L. Cramer | 8/31/04 | $1,584.95 |
| Steven R. Smith | 7/18/02 | $1,477.15 |

**Safety & Health Municipal Supplies, Inc./Michael A. Sheehan Transaction Detail**

Victims: Union Pacific Railroad Company, including but not limited to the following  Union Pacific employees:

| | | |
|---|---|---|
| Dave Finley | 8/27/03 | $402.25 |
| Greg A. Hinker | 8/27/03 | $931.53 |
| | 10/7/03 | $512.00 |
| | 10/8/03 | $100.00 |
| | 12/1/03 | $643.00 |
| | 1/12/04 | $780.37 |
| | 3/9/04 | $780.37 |
| | 4/14/04 | $981.17 |
| | 5/24/04 | $936.35 |
| | 6/1/04 | $796.45 |
| | 7/9/04 | $981.17 |
| Gregorio Sandoval | 11/5/03 | $390.19 |

CASE NO.  06-60873-CIV-COHEN

|  |  |  |
|---|---|---|
|  | 11/5/03 | $390.18 |
| John E. Gutierrez | 8/11/03 | $772.10 |
| Keith E. Davis | 10/10/03 | $1,351.72 |
|  | 11/3/03 | $1,351.72 |
| Mark E. Lubbs | 9/17/03 | $791.63 |
|  | 10/1/03 | $772.10 |
|  | 10/6/03 | $780.37 |
| Max A. Jones | 2/20/04 | $402.25 |
|  | 4/13/04 | $974.25 |
|  | 5/3/04 | $750.75 |
|  | 5/11/04 | $750.75 |
| Michael G. Blackley | 10/7/03 | $422.35 |
| Robert L. Mermis | 10/16/03 | $979.30 |
|  | 10/27/03 | $979.30 |
|  | 11/3/03 | $979.30 |
|  | 11/10/03 | $909.35 |
|  | 11/17/03 | $273.10 |
|  | 5/19/04 | $999.80 |
|  | 6/1/04 | $999.80 |
|  | 7/1/04 | $999.80 |
|  | 7/1/04 | $405.00 |
| Timothy M. Hecker | 10/10/03 | $402.25 |
|  | 5/13/04 | $1,189.20 |
|  | 6/14/04 | $796.45 |
| Earl F. Chaney, Jr. | 9/2/03 | $1,924.63 |
| Greg A. Kreifels | 8/25/03 | $402.25 |
| John E. Dunsworth | 5/27/04 | $871.95 |
| Juan E. Santos | 8/21/03 | $1,526.60 |
|  | 9/9/03 | $1,141.38 |
| Larry W. Vickers | 8/13/03 | $1,150.90 |

CASE NO.  06-60873-CIV-COHEN

|  | 8/18/03 | $1,176.85 |
|  | 9/2/03 | $1,141.38 |
| Mark J. Gallegos | 10/3/03 | $710.42 |
|  | 11/3/03 | $472.20 |
|  | 11/7/03 | $966.50 |
|  | 12/1/03 | $966.50 |
|  | 1/2/04 | $1,238.65 |
|  | 1/12/04 | $1,933.00 |
|  | 2/2/04 | $1,238.65 |
| Michael E. Standing | 11/13/03 | $858.70 |
|  | 1/2/04 | $1,663.57 |
|  | 1/9/04 | $790.35 |
|  | 2/2/04 | $790.35 |
| Michael L. Short | 8/27/03 | $402.25 |
|  | 9/16/03 | $402.25 |
|  | 10/31/03 | $402.00 |
|  | 11/3/03 | $402.00 |
|  | 11/20/03 | $689.90 |
|  | 1/2/04 | $689.90 |
| Thomas F. Drewenski | 8/15/03 | $658.70 |
|  | 8/21/03 | $1,233.50 |
|  | 9/12/03 | $529.90 |
|  | 9/30/03 | $529.90 |
|  | 10/20/03 | $529.90 |
|  | 10/29/03 | $1,241.43 |
| Yancy O. Lamb | 10/9/03 | $1,150.90 |

## Sachem Safety Products, Inc./Michael A. Sheehan Transaction Detail

Victims: Union Pacific Railroad Company, including but not limited to the following  Union Pacific employees:

| Charles A. Creasman | 4/9/03 | $502.25 |
| Donald A. Allcorn | 6/24/03 | $1,150.90 |

Page 32 of  45

CASE NO.  06-60873-CIV-COHEN

| | | |
|---|---|---|
| John E. Gutierrez | 6/13/03 | $791.63 |
| | 8/4/03 | $772.10 |
| Keith E. Davis | 7/1/03 | $798.55 |
| Philip G. Schaefer | 10/29/03 | $632.20 |
| | 10/29/03 | $398.55 |
| | 10/29/03 | $398.55 |
| Robert B. Spoon | 6/18/03 | $758.70 |
| | 7/17/03 | $641.40 |
| Thomas F. Drewenski | 7/25/03 | $792.03 |
| | 8/1/03 | $442.80 |
| Darrell A. Ashby | 2/24/03 | $955.90 |
| | 3/5/03 | $955.90 |
| James A. Curtiss | 2/27/03 | $1,358.50 |
| Jose R. Rodriguez | 2/12/04 | $780.37 |
| | 7/23/04 | $646.95 |
| Larry E. Woodford | 3/14/03 | $680.37 |
| Randy J. Golden | 5/1/03 | $855.32 |
| Robert L. Mermis | 4/15/03 | $855.32 |
| | 5/2/03 | $855.32 |
| | 5/14/03 | $855.32 |
| Todd A. Plank | 7/3/03 | $632.20 |

### Granite Industries, Inc./Cynthia Gentner/Cyn-Lex, Inc. Transaction Detail

Victims: Union Pacific Railroad Company, including but not limited to the following  Union Pacific employees:

| | | |
|---|---|---|
| Darrell A. Ashby | 3/25/03 | $587.66 |
| | 4/29/03 | $587.66 |

Page 33 of  45

CASE NO.  06-60873-CIV-COHEN

|  |  |  |
|---|---|---|
|  | 5/15/03 | $671.55 |
|  | 5/28/03 | $587.66 |
|  | 6/11/03 | $1,108.58 |
|  | 6/18/03 | $1,567.53 |
|  | 7/1/03 | $627.02 |
|  | 7/9/03 | $1,330.29 |
|  | 8/28/03 | $2,217.15 |
| Larry W. Nichols | 9/26/02 | $500.00 |
|  | 10/3/02 | $757.78 |
|  | 10/3/02 | $757.78 |
| Terry L. Hurley | 9/4/02 | $693.84 |
| Walter D. Thomson | 12/2/02 | $627.02 |
|  | 12/2/02 | $893.76 |
|  | 12/2/02 | $893.76 |
|  | 12/2/02 | $895.82 |
|  | 12/2/02 | $895.82 |
|  | 1/7/03 | $1,231.78 |
|  | 1/7/03 | $1,231.78 |
|  | 1/8/03 | $950.21 |
|  | 1/9/03 | $950.21 |
|  | 2/12/03 | $998.30 |
|  | 2/13/03 | $998.30 |
| Donald J. Allcorn | 7/17/02 | $895.78 |
|  | 10/1/02 | $799.12 |
|  | 1/10/03 | $1,899.60 |
|  | 1/10/03 | $1,289.70 |
|  | 1/15/03 | $2,015.55 |
|  | 1/28/03 | $1,791.55 |
|  | 2/5/03 | $2,249.50 |
|  | 2/6/03 | $1,925.00 |
|  | 3/10/03 | $1,912.00 |
|  | 3/10/03 | $789.60 |
|  | 4/8/03 | $1,925.00 |
|  | 4/8/03 | $2,217.15 |
|  | 4/8/03 | $671.98 |
|  | 7/22/03 | $2,239.78 |
|  | 7/24/03 | $1,979.60 |
|  | 8/11/03 | $2,217.15 |

CASE NO.  06-60873-CIV-COHEN

|  | 8/18/03 | $1,209.33 |
|---|---|---|
|  | 9/12/03 | $1,679.83 |
|  | 9/22/03 | $1,764.00 |
|  | 9/23/03 | $1,744.00 |
|  | 10/15/03 | $2,015.80 |
|  | 10/23/03 | $1,764.00 |
|  | 11/7/03 | $1,539.72 |
|  | 11/11/03 | $1,764.00 |
|  | 11/13/03 | $1,753.60 |
|  | 11/21/03 | $2,676.58 |
|  | 12/5/03 | $2,418.66 |
|  | 12/8/03 | $1,593.72 |
|  | 12/19/03 | $2,239.78 |
|  | 1/12/04 | $1,780.80 |
|  | 1/13/04 | $1,764.00 |
|  | 1/16/04 | $2,351.75 |
|  | 1/16/04 | $2,237.49 |
|  | 1/28/04 | $1,764.00 |
|  | 1/28/04 | $2,351.75 |
|  | 2/6/04 | $2,352.00 |
|  | 2/19/04 | $924.00 |
|  | 2/27/04 | $924.00 |
|  | 3/16/04 | $2,396.80 |
|  | 3/29/04 | $1,567.44 |
|  | 3/30/04 | $1,567.44 |
|  | 4/12/04 | $1,220.80 |
|  | 4/13/04 | $1,220.80 |
|  | 7/9/04 | $2,015.56 |
| Robert B. Spoon | 1/14/04 | $1,119.72 |
|  | 1/14/04 | $1,119.72 |
| Thomas F. Drewenski | 11/24/03 | $895.78 |
| William D. Held, Jr. | 4/7/03 | $940.53 |
|  | 4/8/03 | $974.50 |
|  | 4/21/03 | $1,119.78 |
|  | 4/25/03 | $783.78 |
|  | 4/29/03 | $783.55 |
|  | 5/12/03 | $1,108.58 |
|  | 5/19/03 | $979.44 |
|  | 6/5/03 | $446.88 |

CASE NO.  06-60873-CIV-COHEN

### University Research, Inc./Boris Vaysman/Frank Grieco/ Mark Zimmerman Transaction Detail

Victims: Union Pacific Railroad Company, including but not limited to the following  Union Pacific employees:

| | |
|---|---|
| Stanley D. Rickertsen | $25,160.39 |

### Industrial Chem Enterprise, Inc./Boris Vaysman/ Frank Grieco/Mark Zimmerman Transaction Detail

Victims: Union Pacific Railroad Company, including but not limited to the following  Union Pacific employees:

| | | |
|---|---|---|
| Bob R. Krell | 12/2/03 | $500.00 |
| | 12/3/03 | $500.00 |
| | 12/4/03 | $500.00 |
| | 12/5/03 | $409.09 |
| | 4/8/04 | $500.00 |
| | 4/8/04 | $500.00 |
| | 4/8/04 | $500.00 |
| | 4/8/04 | $500.00 |
| | 4/8/04 | $423.25 |
| | 4/28/04 | $389.33 |
| | 5/27/04 | $500.00 |
| | 5/27/04 | $500.00 |
| | 5/27/04 | $500.00 |
| | 5/27/04 | $423.25 |
| | 6/18/04 | $459.77 |
| | 6/29/04 | $500.00 |
| | 6/29/04 | $500.00 |
| | 6/29/04 | $500.00 |
| | 6/29/04 | $423.25 |
| | 7/6/04 | $459.73 |
| | 7/13/04 | $459.70 |
| | 7/20/04 | $459.66 |
| | 7/27/04 | $459.47 |
| Desiderio S. Elizondo, Jr. | 4/8/04 | $385.74 |
| | 4/8/04 | $385.74 |

Page 36 of  45

CASE NO.  06-60873-CIV-COHEN

| | | |
|---|---|---|
| James E. Asmussen | 3/8/04 | $243.77 |
| Mark J. Gallegos | 2/5/04 | $1,303.03 |
| | 2/5/04 | $1,303.03 |
| | 4/23/04 | $1,000.00 |
| | 5/7/04 | $888.65 |
| Michael L. Short | 12/1/03 | $251.58 |
| | 1/22/04 | $319.66 |
| | 3/4/04 | $314.75 |
| | 7/9/04 | $333.31 |
| | 7/21/04 | $333.27 |
| | 8/9/04 | $333.24 |
| | 8/9/04 | $333.21 |
| | 8/9/04 | $333.17 |
| | 8/9/04 | $333.15 |
| Steven P. Magee | 2/18/04 | $314.15 |
| Bruce W. Vickers | 2/12/04 | $688.55 |
| | 3/12/04 | $688.52 |
| | 4/22/04 | $699.09 |
| | 6/8/04 | $1,028.13 |
| | 6/29/04 | $1,028.13 |
| Donald J. Allcorn | 2/11/04 | $606.06 |
| | 3/19/04 | $878.56 |
| | 3/26/04 | $1,106.06 |
| | 4/2/04 | $878.51 |
| | 4/16/04 | $1,051.01 |
| | 4/29/04 | $1,051.58 |
| | 5/27/04 | $1,051.53 |
| | 6/8/04 | $1,034.94 |
| | 6/22/04 | $1,034.91 |
| | 6/29/04 | $1,051.47 |
| | 7/6/04 | $1,034.85 |
| | 7/29/04 | $1,051.41 |
| | 8/5/04 | $1,034.80 |
| Jose R. Rodriguez | 3/24/04 | $824.25 |
| Marshall O. Kath | 5/3/04 | $500.00 |

Page 37 of  45

CASE NO.  06-60873-CIV-COHEN

|  |  |  |
|---|---|---|
|  | 5/3/04 | $229.52 |
| Philip G. Schaefer | 1/27/04 | $841.44 |
|  | 2/9/04 | $841.41 |
|  | 2/23/04 | $841.39 |
|  | 3/8/04 | $841.33 |
|  | 3/23/04 | $839.50 |
|  | 3/23/04 | $839.48 |
|  | 4/6/04 | $839.46 |
|  | 4/6/04 | $839.44 |
|  | 4/20/04 | $839.42 |
|  | 4/20/04 | $839.40 |
|  | 5/4/04 | $839.38 |
|  | 5/4/04 | $839.36 |
|  | 5/18/04 | $839.34 |
|  | 5/18/04 | $839.22 |
|  | 5/19/04 | $839.46 |
|  | 5/19/04 | $839.44 |
|  | 6/16/04 | $850.28 |
|  | 6/16/04 | $850.26 |
|  | 6/22/04 | $850.26 |
| Tyson Widler | 12/1/03 | $3,847.25 |
|  | 1/22/04 | $3,847.25 |
|  | 2/13/04 | $3,847.25 |
|  | 2/19/04 | $2,113.53 |
|  | 2/24/04 | $3,847.25 |
|  | 3/19/04 | $3,847.25 |
|  | 4/2/04 | $2,043.54 |
|  | 4/21/04 | $3,497.50 |
|  | 5/14/04 | $3,497.50 |
|  | 6/21/04 | $3,497.50 |
|  | 6/29/04 | $3,497.50 |
|  | 7/13/04 | $3,497.50 |
|  | 7/29/04 | $3,497.50 |
| Dan L. Bohl | 5/3/04 | $500.00 |
|  | 5/3/04 | $229.52 |
| Fred Garcia | 11/18/03 | $868.69 |
|  | 11/18/03 | $868.69 |
|  | 11/18/03 | $868.69 |

CASE NO.  06-60873-CIV-COHEN

| | | |
|---|---|---|
| Karid A. Bauer | 2/5/04 | $3,237.07 |
| Max A. Jones | 3/26/04 | $314.15 |
| Ralph E. Gillen | 2/17/04 | $619.36 |
| | 4/6/04 | $637.38 |
| | 4/20/04 | $637.34 |
| | 5/4/04 | $582.35 |
| | 5/14/04 | $637.40 |
| | 5/27/04 | $637.33 |
| | 6/8/04 | $582.35 |
| William D. Held, Jr. | 2/12/04 | $314.15 |
| | 3/23/04 | $611.57 |
| | 4/23/04 | $611.46 |
| | 4/29/04 | $737.39 |
| | 5/20/04 | $737.34 |
| | 6/17/04 | $682.34 |
| | 7/13/04 | $822.35 |
| | 7/27/04 | $822.31 |
| Darin B. Smith | 2/23/04 | $1,327.07 |
| Glen E. Marshall | 2/18/04 | $314.15 |
| | 4/8/04 | $619.36 |
| | 6/7/04 | $729.34 |
| | 6/18/04 | $729.25 |
| Larry D. Fausnaugh | 11/5/03 | $1,748.75 |
| | 4/19/04 | $384.73 |
| | 4/29/04 | $384.73 |
| | 6/14/04 | $384.73 |
| Michael G. Blackley | 1/29/04 | $404.04 |
| | 2/5/04 | $373.56 |
| | 2/19/04 | $373.51 |
| | 3/4/04 | $757.07 |
| | 3/31/04 | $757.07 |
| | 4/21/04 | $239.33 |
| | 6/7/04 | $319.33 |
| Randall J. Werner | 2/26/04 | $498.90 |

CASE NO.  06-60873-CIV-COHEN

|  |  |  |
|---|---|---|
|  | 2/26/04 | $498.88 |
|  | 3/4/04 | $488.93 |
|  | 3/11/04 | $498.86 |
|  | 3/11/04 | $498.84 |
|  | 3/16/04 | $488.91 |
|  | 4/1/04 | $498.82 |
|  | 4/2/04 | $488.87 |
|  | 4/2/04 | $498.80 |
|  | 4/13/04 | $498.75 |
|  | 4/13/04 | $498.70 |
|  | 4/21/04 | $488.84 |
|  | 4/22/04 | $498.64 |
|  | 4/29/04 | $488.82 |
|  | 5/19/04 | $498.50 |
|  | 5/19/04 | $488.79 |
| Yancy O. Lamb | 3/4/04 | $1,599.77 |
| Dave Finley | 12/2/03 | $1,338.07 |
|  | 01/29/04 | $1,267.99 |
| Gregorio Sandoval | 12/10/03 | $496.04 |
|  | 1/26/04 | $496.04 |
|  | 2/9/04 | $496.04 |
|  | 2/26/04 | $496.04 |
|  | 3/11/04 | $496.04 |
|  | 4/1/04 | $496.04 |
|  | 5/7/04 | $496.04 |
| Mark E. Lubbs | 2/17/04 | $239.33 |
|  | 3/23/04 | $449.17 |
|  | 4/29/04 | $449.72 |
|  | 5/14/04 | $449.61 |
| Michael J. Battista | 1/7/04 | $499.99 |
|  | 1/27/04 | $499.99 |
|  | 2/9/04 | $499.35 |
|  | 2/19/04 | $500.04 |
|  | 3/4/04 | $499.99 |
|  | 3/19/04 | $499.97 |
|  | 4/16/04 | $482.55 |
|  | 5/5/04 | $482.53 |

CASE NO.  06-60873-CIV-COHEN

|  | 5/14/04 | $482.50 |
|---|---|---|
|  | 5/27/04 | $482.46 |
|  | 6/10/04 | $482.43 |
|  | 6/24/04 | $482.40 |
|  | 7/8/04 | $482.35 |
|  | 7/22/04 | $622.11 |
|  | 7/28/04 | $750.80 |
| Samuel R. Garcia | 3/19/04 | $314.15 |
|  | 4/28/04 | $1,101.01 |
|  | 6/11/04 | $937.33 |

**Suntrust Chemical Corp./K.A.P.S. Chemicals, Inc./
Keith Paddyfote Transaction Detail**

Victims: Union Pacific Railroad Company, including but not limited to the following  Union Pacific employees:

| Thomas F. Drewenski | 10/5/03 | $1,000.00 |
|---|---|---|
|  | 10/5/03 | $1,000.00 |
|  | 10/5/03 | $1,000.00 |
|  | 10/5/03 | $1,000.00 |
|  | 10/5/03 | $1,000.00 |
|  | 10/5/03 | $436.75 |
|  | 10/5/03 | $1,000.00 |
|  | 10/5/03 | $1,000.00 |
|  | 10/5/03 | $1,000.00 |
|  | 10/5/03 | $1,000.00 |
|  | 10/5/03 | $1,000.00 |
|  | 10/5/03 | $1,000.00 |
|  | 10/5/03 | $436.75 |
|  | 10/5/03 | $1,000.00 |
|  | 10/5/03 | $1,000.00 |
|  | 10/5/03 | $1,000.00 |
|  | 10/5/03 | $1,000.00 |
|  | 10/5/03 | $436.75 |
| Philip G. Schaefer | 11/4/03 | $1,000.00 |
|  | 11/5/03 | $1,000.00 |

CASE NO.  06-60873-CIV-COHEN

**Ron Camillo Corp. d/b/a Enviro Chemical Research/**
**Ron Camillo Transaction Detail**

Victims: Union Pacific Railroad Company, including but not limited to the following  Union Pacific employees:

| | | |
|---|---|---|
| Alvie C. Keelin | 11/5/03 | $2,434.00 |
| Darrell A. Ashby | 3/5/03 | $334.70 |
| | 1/12/04 | $599.50 |
| Earl F. Chaney, Jr. | 4/28/04 | $1,846.25 |
| | 5/25/04 | $1,896.50 |
| Gregorio Sandoval | 4/14/04 | $479.75 |
| | 5/1/04 | $479.75 |
| | 5/28/04 | $499.00 |
| | 5/28/04 | $499.00 |
| | 5/30/04 | $499.00 |
| | 6/29/04 | $393.00 |
| | 6/30/04 | $499.00 |
| | 7/1/04 | $499.00 |
| | 7/7/04 | $499.00 |
| | 7/28/04 | $499.00 |
| | 7/28/04 | $203.00 |
| James S. Fisher | 6/24/03 | $574.50 |
| Nat Ruiz | 10/22/02 | $538.25 |
| Robert L. Mermis | 4/15/03 | $646.00 |
| | 4/15/03 | $646.00 |
| Ronald J. Nash | 12/26/03 | $337.75 |
| Dean A. Androy | 6/24/03 | $323.50 |
| | 7/4/03 | $323.50 |
| | 9/13/03 | $453.00 |
| | 10/3/03 | $453.00 |

CASE NO. 06-60873-CIV-COHEN

|  |  |  |
|---|---|---|
|  | 12/2/03 | $589.00 |
|  | 1/3/04 | $589.00 |
|  | 1/5/04 | $303.75 |
|  | 6/2/04 | $319.75 |
| Fred A. Burton | | |
|  | 11/21/03 | $499.00 |
|  | 11/21/03 | $499.00 |
|  | 11/21/03 | $480.00 |
| James A. Curtiss | | |
|  | 6/3/03 | $1,596.50 |
|  | 8/7/03 | $1,097.00 |
|  | 10/3/03 | $1,648.50 |
|  | 12/11/03 | $499.50 |
| Larry E. Woodford | | |
|  | 3/28/03 | $1,471.75 |
|  | 4/17/03 | $1,542.30 |
|  | 5/1/03 | $1,542.30 |
|  | 6/2/03 | $1,874.40 |
|  | 1/6/04 | $1,500.00 |
| Nels D. Johnson | | |
|  | 6/20/03 | $697.70 |
|  | 8/1/03 | $607.70 |
|  | 5/7/04 | $731.50 |
| Robert L. Walton | | |
|  | 6/3/03 | $1,874.40 |
|  | 7/3/03 | $2,474.00 |
|  | 9/3/03 | $2,499.50 |
| Simon N. Ybarra | | |
|  | 5/8/03 | $1,275.00 |
|  | 10/2/03 | $2,449.00 |
|  | 12/4/03 | $1,498.75 |
| Daniel L. Lucas | | |
|  | 7/3/03 | $1,311.00 |
|  | 8/4/03 | $1,311.00 |
| Donald J. Allcorn | | |
|  | 6/10/04 | $734.00 |
|  | 6/15/04 | $734.00 |
|  | 7/11/04 | $1,269.50 |
|  | 7/16/04 | $1,269.50 |
|  | 7/28/04 | $1,269.12 |
|  | 7/29/04 | $1,269.13 |

Page 43 of 45

CASE NO.  06-60873-CIV-COHEN

|  |  |  |
|---|---|---|
|  | 8/6/04 | $1,269.12 |
|  | 8/6/04 | $1,269.13 |
| Gilberto Buentello | 9/4/03 | $351.00 |
|  | 9/4/03 | $351.00 |
|  | 9/4/03 | $351.00 |
|  | 1/6/04 | $351.00 |
|  | 1/6/04 | $351.00 |
|  | 1/6/04 | $351.00 |
|  | 1/28/04 | $499.00 |
|  | 1/29/04 | $499.00 |
|  | 1/29/04 | $281.00 |
|  | 3/8/04 | $499.00 |
|  | 3/8/04 | $499.00 |
|  | 3/8/04 | $284.00 |
| James E. Asmussen | 8/19/02 | $207.68 |
|  | 11/14/02 | $426.00 |
|  | 1/21/03 | $612.50 |
|  | 4/29/03 | $488.00 |
|  | 5/9/03 | $488.00 |
|  | 8/26/03 | $350.00 |
|  | 9/19/03 | $350.00 |
|  | 10/22/03 | $400.00 |
|  | 11/3/03 | $400.00 |
|  | 1/14/04 | $780.00 |
|  | 2/2/04 | $780.00 |
| Michael R. Leake | 4/11/03 | $294.00 |
| Philip G. Schaefer | 1/7/03 | $454.75 |
|  | 2/6/03 | $481.50 |
|  | 3/12/03 | $584.00 |
|  | 3/28/03 | $584.00 |
|  | 4/2/03 | $701.70 |
|  | 6/16/03 | $583.00 |
|  | 7/14/03 | $583.00 |
| Rodney G. Flores | 7/12/04 | $319.75 |
|  | 8/19/04 | $324.75 |
|  | 8/19/04 | $324.75 |

CASE NO.  06-60873-CIV-COHEN

| Timothy M. Hecker | 3/28/03 | $877.50 |
| | 4/29/04 | $855.50 |
| | 6/28/04 | $867.50 |

### A-Jem Industries, Inc./Mark Anthony Cantrell Transaction Detail

Victims: Union Pacific Railroad Company, including but not limited to the following  Union Pacific employees:

| Michael E. Standing | 11/19/03 | $471.66 |
| | 11/20/03 | $219.19 |
| | 12/15/03 | $418.16 |
| | 1/14/04 | $445.70 |
| | | |
| Robert B. Spoon | 11/11/03 | $565.16 |
| | | |
| Thomas F. Drewenski | 9/4/03 | $417.12 |
| | 9/9/03 | $417.12 |
| | 9/10/03 | $444.36 |
| | 9/17/03 | $242.28 |
| | 10/6/03 | $219.08 |
| | 10/7/03 | $417.42 |
| | 10/7/03 | $444.92 |
| | 10/14/03 | $417.86 |
| | 10/30/03 | $444.92 |

Page 45 of  45